**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ADVANCED FIBER TECHNOLOGIES
(AFT) TRUST,

        Plaintiff and Counter-Defendant,

    v.                                        No. 07-CV-1191
                                                        (LEK/DRH)
J & L FIBER SERVICES, INC.,

        Defendant and Counter-Claimant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HESLIN ROTHENBERG FARLEY &<br>   MESITI P.C.<br>Attorney for Plaintiff<br>5 Columbia Circle<br>Albany, New York 12203-5160 | NICHOLAS MESITI, ESQ.<br>SHANNA K. O'BRIEN, ESQ. |
| QUARLES & BRADY LLP<br>Attorney for Defendant<br>411 East Wisconsin Avenue<br>Suite 2040<br>Milwaukee, Wisconsin 53202-4497 | DAVID R. CROSS, ESQ.<br>JOHANNA M. WILBERT, ESQ. |
| BOND, SCHOENECK & KING, PLLC<br>Attorney for Defendant<br>One Lincoln Center<br>Syracuse, New York 13202-1355 | EDWARD R. CONAN, ESQ.<br>LILLIAN A. ABBOTT-PFOHL, ESQ. |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

    Plaintiff Advanced Fiber Technologies (AFT) Trust ("AFT") brings this action pursuant to

35 U.S.C. § 271 *et seq.* alleging that defendant, J & L Fiber Services, Inc. ("J & L"), infringed

AFT's screen cylinder patents. Compl. (Docket No. 1). J & L counterclaims for declaratory

relief. Ans. (Docket No. 12) at ¶ 27-36. Presently pending is J & L's motion for a change of venue to the Eastern District of Wisconsin ("Eastern District"). Docket Nos. 21, 28.[1] AFT opposes the motion. Docket No. 22. For the reasons which follow, J & L's motion is denied.

**I. Background**

Both parties manufacture and sell pulp screening components for the pulp and paper industry. Compl. ¶¶ 6, 7. AFT has approximately 186 employees located principally at AFT's facilities in Sherbrooke, Quebec, Canada. Gooding Decl. (Docket No. 22-2) ¶ 9. J & L has approximately 150 employees principally located at its Waukesha, Wisconsin facility of whom five work in the screen cylinder division involving the matters at issued in this case. Lutz Decl. (Docket No. 21-3) ¶ 3.

On April 5, 1993, AFT was granted ownership of United States Letters Patent No. 5,200,072 ("072 Patent") for screening plates which filtered impurities from pulp during paper manufacturing. Compl. ¶¶ 9-10; see also Gooding Decl. ¶ 3. This patent and the plates were conceived, reduced to practice, designed, and developed in Glens Falls, New York and gave rise to AFT's DURASHELL screen cylinder. Id. ¶ 7; Frejborg Decl. (Docket No. 22-4) ¶¶ 3-4. From late 2000 to 2001, J & L developed the alleged infringing product, the V-MAX

---

[1] The reply was filed on October 22, 2008, over four months after the response was filed and six months after the initial motion to change venue was filed. See Docket Nos. 21, 22, 28. In contravention of the local rules, J & L did not request prior Court permission to file said reply. See N.D.N.Y.L.R. 7.1(b)(2) ("Reply papers . . . are not permitted without the Court's prior permission."). Therefore, the reply should not be considered. However, even when taking the response into consideration, it does not change the result ordered herein.

screen cylinder, at its Waukesha facility. Lutz decl. ¶ 4. All documents and materials related to this product remain in Wisconsin. Id.

On September 12, 2003, AFT requested that the 072 Patent be reissued. Compl. ¶ 11. On April 27, 2007, the 072 Patent was reissued as United States Letters Patent No. RE39,940 ("940 Patent"). Id. ¶ 12. On November 9, 2007, AFT filed commenced the present action alleging infringement of AFT's 940 Patent by J & L's manufacture and distribution of the V-MAX screen cylinder. Id. The present motion followed.

## II. Discussion

Under federal law, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); see also Tigercat Indus., Inc. v. Deere & Co., No. 05-CV-761S, 2007 WL 1087564, at *1 (W.D.N.Y. Apr. 9, 2007) (citing §1400(b) and stating that "the test for venue for a corporate defendant in a patent infringement case is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced.") (citations and quotation marks omitted); Walker v. Jon Renau Collection, Inc., 423 F. Supp. 2d 115, 116-17 (S.D.N.Y. 2005); Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263, 267-68 (N.D.N.Y. 2003) (holding that "§§ 1391(c) and 1400(b) should be read coextensively instead of the latter being the exclusive authority for determination of venue in patent infringement cases . . . [and that the district in question] will be deemed a proper venue if it is determined that [defendant] is subject to personal jurisdiction there . . . .") (internal citations and

3

quotation marks omitted).  However, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a).  Thus, motions to transfer venue are subject to "a two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer."  Rescuecom Corp. v. Chumley, 522 F. Supp. 2d 429, 448 (N.D.N.Y. 2007).

The decision to transfer a case is committed to the discretion of the court.  Dixon v. Fischer, No. 9:07-CV-1157 (DNH)(DRH), 2008 WL 141786, at *1 (N.D.N.Y. Jan. 11, 2008) (citations omitted).  In determining the first prong of the analysis, "the court must first decide whether . . . venue [in the transferee forum] was proper . . . at the time that the suit was initiated."  Id. (citations omitted).  Determination of the second prong requires a court to consider

> (1) the convenience of witnesses; (2) the convenience of the parties;
> (3) the location of relevant documents and the relative ease of
> access to those sources of proof; (4) the situs of the operative
> events in issue; (5) the availability of process to compel the
> attendance of unwilling witnesses; (6) the relative means of the
> parties; (7) the comparative familiarity of each district with the
> governing law; (8) the weight accorded a plaintiff's choice of forum;
> and (9) judicial efficiency and the interests of justice

Rescuecom Corps., 522 F. Supp. 2d at 449 (citations omitted).  The party seeking transfer bears the burden of proof and, "therefore, it is his or her responsibility "to establish in [the] pleadings and affidavits the conditions necessary to justify transfer."  Id. (citations omitted).  Ultimately, any transfer must serve "to prevent the waste of time, energy and money and to

4

protect litigants, witnesses and the public against unnecessary inconvenience and expense." Id. at 448.

### A. Proper Venue Upon Initiation of Suit

In this case, venue in the Eastern District of Wisconsin would have been proper at the time the suit was initiated. Under § 1400, venue existed in the Eastern District if (1) the defendants resided in the Eastern District, or (2) the alleged infringing action and a regular place of business was located in the Eastern District. J & L was both headquartered and the development and manufacturing of the V-MAX screen cylinder occurred at the factory, in Waukesha in the Eastern District. See Lutz Decl. ¶¶ 2-4. Thus, venue would have been proper in the Eastern District of Wisconsin and J & L has satisfied the first prong of the analysis.[2]

### B. Balance of Parties' Interests

#### 1. Convenience of Witnesses

While "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted," this inquiry is more than a "mere[] tally of witnesses who reside in the current forum in

---

[2] While J & L argues that AFT's choice of forum is not controlling, J & L does not contend that AFT's choice of venue was improper. Defs. Mem. of Law (Docket No. 21-2) at 3-4. Additionally, even if J & L is raising this affirmative defense here, that defense was waived when J & L filed an answer which did not raise the issue of venue. See Fed. R. Civ. P. 12(h).

comparison to the number located in the proposed transferee forum.  Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." Fuji Photo Film Co., Ltd v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (internal citations and quotations omitted); see also Neil Brothers Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006).  Accordingly, "[t]he key issues in a patent infringement suit involve the technology of the inventions claimed in the patents-in-suit." Fuji Photo Film, 415 F. Supp. 2d at 373.  Thus, considerations must be given to those party and non-party witnesses with knowledge pertinent to the conception, design, manufacture, and marketing of the patented products.

AFT argues that venue in this district is appropriate because (1) the key non-party witness, the named inventor of the DURASHELL screen cylinder, resides in this district; (2) a significant infringing sale of J & L's cylinder was made to a company in this district; (3) a non-party witness and consultant with knowledge pertaining to the demand, performance, and maintenance of both cylinders resides in this district; and (4) multiple non-party witnesses reside in this district and can testify to the unmet need and commercial success of AFT's cylinder.  Gooding Decl. ¶¶ 5, 7, 13, 15-17.  The most pertinent of these witnesses is the named inventor for AFT's patents, who has intimate knowledge of the conception, reduction to practice, design, and development of the AFT cylinder and resides in this district.

J & L proffers four party and six non-party witnesses.  Lutz Decl. ¶¶ 5-15.  Of these, most pertinent are the three party witnesses who were involved with the preliminary designs and development of J & L's cylinder and the two non-party witnesses who assisted in its development.  Id.  ¶¶ 5-7. 10-11.  Additionally, J & L's cylinder, was designed, developed,

and tested entirely at its facility in Waukesha and all relevant documents and materials are located there. Id. ¶ 4.

It appears from these proffers that neither party has demonstrated that either district affords significantly greater convenience to the witnesses in the case. Both parties have established that those witnesses with the best substantive knowledge of the patents-in-issue are located in the each party's preferred venue. Therefore, this factor weighs in favor of neither party.

### 2. Convenience of Parties

"[A] transfer of venue should not merely shift the burden of inconvenience from one party to the other." Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000). AFT asserts that Albany in the Northern District provides a more convenient forum because its employees can easily commute between Albany and Quebec by car, the majority of the non-party witnesses are located in the Northern District, and the remainder are within the Court's subpoena power. Gooding Decl. ¶¶ 11, 13-17.[3] AFT witnesses will spend approximately five hours traveling to this district and at least six hours flying to the Eastern District. J & L's witnesses would travel a comparable distance if venue

---

[3] Albany in the Northern District is located approximately 300 miles, or a five-hour drive from Sherbrooke, Quebec and 230 miles, or a four-hour drive from Montreal, Quebec. See Yahoo Driving Directions (visited Nov. 6, 2008), <http://maps.yahoo.com/dd>. The driving distance from Sherbrooke to Kenosha is approximately 1,000 miles, or 18-20 hours driving time. Id. A flight from Montreal to Wisconsin (including one connecting flight) ranges from four to six hours to which must be added at least two hours for time incidental to modern air travel. See Expedia Flights Only (visited Nov. 6, 2008), <http://www.expedia.com>.

remains in this district.

It thus appears that AFT's employees must travel a significant distance whether the venue is New York or Wisconsin but that the travel to Wisconsin would require 6-9 hours while the travel to Albany in this district will require 4-5 hours. On the other hand, travel for the J & L employees would be negligible for a Wisconsin venue but approximately seven hours travel time to Albany.[4] Thus, the travel time for AFT employees from Canada would be increased by approximately one-third if venue is transferred to Wisconsin and the travel time for J & L employees would be virtually obviated. This factor, therefore, weighs in favor of J & L's motion.

### 3. Location of Relevant Documents

The location of relevant documents once carried significant weight in this analysis and "[i]n patent infringement cases . . . [is] usually [produced] from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." Fuji Photo Film, 415 F. Supp. 2d at 374. It is undisputed that all of the J & L documents are located in Wisconsin. However, "[i]n today's era of photocopying, fax machines and Federal Express," the geographic location of documents becomes a factor with only minimal weight. Walker v. The Jon Renau Collection, Inc., 423 F. Supp. 2d 115, 118 n.3 (S.D.N.Y. 2005) (internal citations and quotations omitted); see also Neil Bros. Ltd.,

---

[4]A flight from Milwaukee, Wisconsin to Albany, New York (including one connecting flight) takes approximately five hours to which must be added at least two hours for time incidental to modern air travel. See Expedia Flights Only (visited Nov. 6, 2008), <http://www.expedia.com>.

8

425 F. Supp. 2d 325 at 330-31; Fuji Photo Film, 415 F. Supp. 2d at 374-75. Thus, this factor weighs in favor of transfer.

### 4. Situs of Operative Facts

"Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product." Invivo Research, Inc., 119 F. Supp. 2d at 439; compare Neil Brothers Ltd., 425 F. Supp. 2d at 331 (holding that "[t]he locus of operative facts in patent . . . cases usually lies where the allegedly *infringing product* was designed, developed, and produced.") (emphasis added). Additionally, "[w]here a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." Invivo Research, Inc., 119 F. Supp. 2d at 439-40; see also Neil Bros. Ltd., 425 F. Supp. 2d at 331; Walker, 423 F. Supp. 2d at 119.

As discussed supra, the locus of the operative facts concerning the patents and devices in question are located in each party's respective requested venue. Since AFT's product was created in New York, there is a stronger connection to this district than simply the commercial sale of the AFT cylinder. Because both products here were designed, developed, and manufactured in the continental United States, it appears that weighs equally in favor of both districts. The site of operative facts is both in New York and Wisconsin.

### 5. Ability to Compel Witnesses to Testify

"[A] district court only can subpoena witnesses within the district or within 100 miles of the

9

district.**"** Fuji Photo Film, 415 F. Supp. 2d at 375 (citing Fed. R. Civ. P. 45(b)(2)).  Thus, any unwilling witness who does not fall within one of these categories cannot be compelled to testify at trial.  However, "parties can compel the testimony of their own employees without the need for subpoena . . . . " Id.; see also Invivo Research, Inc., 119 F. Supp. 2d at 438.  Thus, any employees of a party, despite their geographic location, can reasonably be expected to testify as witnesses at trial and their availability is not a consideration here.  Additionally, a court may consider the statements from non-party witness indicating whether that they are willing to travel to the location of the trial.  Fuji Photo Film, 415 F. Supp. 2d at 375.

If venue is transferred, AFT's primary witness with knowledge of the creation of AFT's cylinder cannot be compelled to testify as he is not an employee of AFT.  Gooding Decl. ¶ 13.  Additionally, this witness has already expressed his intentions not to travel to Wisconsin voluntarily if the litigation is moved there.  Frejborg Decl. ¶ 5.  AFT has also demonstrated the same refusal to travel voluntarily to Wisconsin with other material non-party witnesses.  See O'Brien Decl., Ex. C at 25-33; Earle Decl. ¶¶ 1, 3-5; Frejborg Decl. ¶¶ 3-5; Butler Decl. ¶ 5; McCool Decl. ¶ 5.

However, if the venue remains in this district, although six non-party witnesses could not be compelled to testify at trial, J & L could still compel the testimony of (1) the individual that developed the primary design for J & L's cylinder, (2) the major contributor to the design of the J & L cylinder, (3) another engineer who assisted in the development of the J & L cylinder, and (4) the head of J & L's financial operations.  Lutz Decl. ¶¶ 5-8.  These four individuals remain employees of J & L and thus can be compelled to testify at trial.  It

appears that three of the six material non-party witnesses for J & L have indicated that they are willing to travel to Albany in the event of a trial, whereas "[t]he other witnesses have expressed no interest in volunteering to get involved in this case by providing a sworn statement [indicating their willingness to travel to Albany], let alone by volunteering to travel to Albany to testify at a trial." Lutz Supp. Decl. (Docket No. 28-5) ¶ 5.

On this record, then, it appears that critical witnesses for AFT would be unwilling to appear to testify at trial but that only less critical witnesses to J & L's case would be similarly unwilling. Accordingly, this factor weighs against transfer to Wisconsin.

### 6. Financial Resources of the Parties

"Where a disparity exists between the means of the parties . . , the court may consider the relative means of the parties in determining whether to transfer." Miller v. Bombardier, Inc., No. 93-CV-376 (PKL), 1993 WL 378585, at *5 (S.D.N.Y. Sept. 23, 1993). Where transfer would alleviate hardship for defendants, "while the hardship of travel on plaintiff will only slightly be increased," transfer has been favored. See Walker, 423 F. Supp. 2d at 118. However, as previously noted, transferring venue is not appropriate in cases where the only result is a "mere shifting of inconveniences." Id.

Both parties appear to have comparably sized industrial operations. Without more, this factor would have no effect. However, AFT cites the presence of a small staff of "key employees who work with the technical issues related to the design and manufacture of AFT's . . . cylinder." Gooding Decl. ¶ 9. J & L states that:

11

> There are only five employees in the screen cylinder division that are directly working on the V-MAX . . . and . . . related products [and i]f any or all of those five employees [we]re required to be in Albany for trial [for] any significant length of time, . . . operations would be greatly impaired, if not shut down, resulting in a loss of business.

Lutz Decl. ¶ 3. On this record, then, it appears that after considering matters beyond the mere size of the two parties, the relative resources of those parties remains comparable and that the net effect of considering this factor yields no benefit to either party on this motion.

### 7. Familiarity of Forum with Governing Law

"Where, as here, the law to be applied is federal patent law, the factor is neutral." Neil Bros. Ltd., 425 F. Supp. 2d at 333; see generally Wechsler v. Macke Inter. Trade, Inc., No. 99-CV-5725 (AGS), 1999 WL 1261251, at *9 (S.D.N.Y. Dec. 27, 1999) ("Patent law is federal law and any district court may handle a patent case with equal skill.") (internal quotations and citations omitted). Therefore, this factor does not favor either jurisdiction.

### 8. Weight Accorded Plaintiff's Choice of Forum

Generally, "[a] plaintiff's choice of forum is . . . entitled to considerable weight and should not be disturbed unless other factors weight strongly in favor of transfer." Neil Bros. Ltd., 425 F. Supp. 2d at 333; see also Iragorri v. United Technologies Corp., 274 F.3d 65, 70-71 (2d Cir. 2001) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). "However, the plaintiff's choice of forum is not entitled to great weight when the operative facts have little or no connection with the transferor forum, or when the plaintiff

does not reside in his chosen forum." Neil Bros. Ltd., 425 F. Supp. 2d at 333; see also Walker, 423 F. Supp. 2d at 118 ("While a plaintiff's choice of forum is entitled to some amount of deference, a foreign resident's choice of a U.S. forum should receive less consideration than a plaintiff suing in his or her home forum.") (internal citations and quotations omitted); Invivo Research Inc., 119 F. Supp. 2d at 438 (decreasing deference accorded a plaintiff's choice of forum "where . . . the plaintiff has chosen a foreign forum.").

At first blush, because AFT is a foreign plaintiff, it appears to have little or no connection with New York. However, since the patent and product at issue were designed in this forum by an individual who currently resides in this forum, and AFT's cylinder is widely purchased and utilized in this district, AFT thus has multiple connections to the present venue. These connections to the northern District entitle AFT's choice of forum to considerable weight.

### 9. Judicial Efficiency and the Interests of Justice

"Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." Neil Bros. Ltd., 425 F. Supp. 2d at 334 (quoting Miller v. Bombardier Inc., 1993 WL 378585, at *5).

It appears that the Eastern District of Wisconsin has a less congested docket and a faster rate of disposition. Def. Mem. of Law at 11-12. However, a scheduling order has already been issued in this case, see Docket No. 12, and the parties have commenced discovery. At this point, there appears no appreciable advantage to be gained from transferring this action.

Accordingly, this factor carries negligible weight.

### III. Conclusion

Thus, the operative facts surrounding J & L's allegedly infringing cylinder and the comparative convenience of the parties and most witnesses weigh in favor of transferring the venue to Wisconsin.  On the other hand, the operative facts surrounding AFT's cylinder and patent as well as availability of the creator of AFT's cylinder to testify at trial weigh in favor of venue remaining in this district.  Other factors carry either little or no weight in the circumstances presented here.  Additionally, none of the aforementioned factors weigh so heavily in J & L's favor to outweigh the deference accorded to AFT's choice of the Northern District.  Accordingly, it is hereby

**ORDERED** that J & L's motion for transfer of venue (Docket No. 21) is **DENIED**.

DATED:  November 12, 2008
        Albany, New York

David R. Homer
United States Magistrate Judge