**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————————
ADVANCED FIBER TECHNOLOGIES (AFT) TRUST,    )
                                            )
        *Plaintiff/Counter-Defendant,*    )
                                            )
      v.                                )    Civil Action No.:
                                            )    1:07-CV-1191
J&L FIBER SERVICES, INC.,                   )
                                            )    LEK/DRH
        *Defendant/Counter-Plaintiff.*    )
                                            )
———————————————————————————)


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**


Nicholas Mesiti, Esq.
Alana M. Fuierer, Esq.
Shanna K. O'Brien, Esq.
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle
Albany, New York  12203
Telephone: (518) 452-5600
Facsimile:  (518) 452-5579

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

*TABLE OF AUTHORITIES*..........................................................................................ii

*Introduction* ........................................................................................................... 1

*Statement of Facts* ................................................................................................. 1

    **A. The Parties** ................................................................................................... 1

    **B. The '940 Patent** ........................................................................................... 3

    **C. The Infringing V-Max Screen Cylinder** ...................................................... 6

*Argument* .............................................................................................................. 8

    **SUMMARY JUDGMENT OF INFRINGEMENT IS APPROPRIATE
IN THIS CASE BECAUSE THERE IS NO GENUINE ISSUE OF
MATERIAL FACT FOR TRIAL** ..................................................................... 8

    **A. The Applicable Law on Infringement** ......................................................... 9

    **B. The Applicable Law Regarding Claim Construction** ................................ 10

    **C. The Claim Construction of the '940 Patent** ............................................... 12

    **D. The V-Max Screen Cylinders Infringe the '940 Patent** ............................. 14

        i.  The V-Max Screen Cylinders Infringe Independent Claims 1, 10 and 18...... 14

            **1. Claim 1** ................................................................................... 14

            **2. Claim 10** ................................................................................. 18

            **3. Claim 18** ................................................................................. 22

        ii.  The V-Max Screen Cylinders Infringe Dependant Claims
2, 6, 8, 11-15, 19-20, 23, 27, 29 and 37-39 ............................... 25

*Conclusion* .......................................................................................................... 25

*TABLE OF AUTHORITIES*

**Cases**

*Amhil Enter., Ltd. v. Wawa, Inc.*, 81 F.3d 1554 (Fed.Cir. 1996)......................................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242(1968) ......................................8

*Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.*,
731 F.2d 831 (Fed.Cir. 1984)......................................8

*Bell Communication Research, Inc. v. Vitalink Communications Corp.*,
55 F.3d 615 (Fed. Cir. 1995)......................................10

*Brenner v. United States*, 773 F.2d 306 (Fed.Cir. 1985)......................................8

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed.Cir. 2002)......................................11

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed.Cir. 2005)......................................9

*Cybor Corp. v. FASTechs, Inc.*, 138 F.3d 1448 (Fed.Cir. 1998)......................................8

*DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342 (Fed.Cir. 2008)......................................25

*Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed.Cir. 2001) ......................................10

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950)......................................10

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed.Cir. 1995) *aff'd*, 517 U.S. 370 (1996)......................................8, 10

*Overhead Door Corp. v. Chamberlain Group, Inc.*,
194 F.3d 1261 (Fed. Cir. 1999)......................................10

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir. 2005)......................................11

*Phonometircs, Inc. v. Northern Telecom Inc.*,
133 F.3d 1459 (Fed.Cir. 1998)......................................9

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (Fed.Cir. 2001)......................................11

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed.Cir. 2002) ......................................11

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)......................................10

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed.Cir. 1996) ...................... 10, 11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) .......................... 9

**Statutes**

Fed.R.Civ.P. 56(c).............................................................................................. 8

*Introduction*

Plaintiff Advanced Fiber Technologies (AFT) Trust ("AFT") respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment of Infringement of U.S. Patent No. RE 39,940 ("the '940 Patent") under 35 U.S.C §271. This Memorandum is accompanied by AFT's Statement of Material Facts, the Declaration of Robert Gooding in Support of Plaintiff's Motion for Summary Judgment (referred to herein as "Gooding Decl.") and the Declaration of Nicholas Mesiti, Esq. in Support of Plaintiff's Motion for Summary Judgment (referred to herein as "Mesiti Decl."). By this Motion, AFT seeks judgment of infringement of Claims 1-2, 6, 8, 10-15, 18-20, 23, 27, 29 and 37-39 of the '940 Patent.

The '940 Patent is a reissue of U.S. Patent No. 5,200,072 ("the '072 Patent"), which is directed to screen plates and methods of manufacture. SOMF ¶¶9-10; Gooding Decl., ¶¶7-8; Mesiti Decl., ¶¶4-5, Ex. C, E. The '072 Patent was issued on April 6, 1993 based upon the patent application filed on August 16, 1990. SOMF ¶9, Gooding Decl., ¶7; Mesiti Decl., ¶5, Ex. E. The '072 Patent was reissued into the '940 Patent on September 18, 2007, and this action for infringement of the '940 Patent was commenced shortly thereafter on November 9, 2007. SOMF ¶17, Gooding Decl., ¶15; Mesiti Decl., ¶4, Ex. C.

*Statement of Facts*

**A. The Parties**

AFT is a Trust organized and existing under the laws of Canada with a principal place of business at 72 Queen Street, Sherbrooke, Quebec, Canada, J1M 2C3, and with a technology office at 5890 Monkland Avenue, Suite 400, Montreal, Quebec, Canada H4A 1G2. SOMF ¶7; Gooding Decl., ¶6.

Defendant J&L Fiber Services, Inc. is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business at 809 Philip Drive, Waukesha, Wisconsin 53186. SOMF ¶8.  Both AFT and J&L are in the business of providing screen cylinders for use in the pulp and paper industry. SOMF ¶¶14, 16; Gooding Decl., ¶¶12, 14.

The dispute between the parties began in March 2002, immediately after AFT purchased the '072 Patent from its predecessors-in-interest. SOMF ¶13; Gooding Decl., ¶11.  However, in February of 2000, AFT's predecessor-in-interest previously notified J&L of its infringement. SOMF ¶13; Gooding Decl., ¶11, Ex. B.  Moreover, after purchasing the '072 Patent, AFT also notified J&L on multiple occasions of its infringing activities. SOMF ¶13; Gooding Decl., ¶11, Ex. C.  However, J&L has continued to infringe the '072 Patent even though it has been aware of the infringement since 2000. SOMF ¶13; Gooding Decl., ¶11.

In 2003, AFT applied to the U.S. Patent Office for reissue of the '072 Patent. *Id.*  During the reissue, AFT submitted numerous prior art references to the Patent Office, including prior art references which J&L contends invalidate the '940 Patent. *See*, Mesiti Decl., Ex. D.  Despite all the prior art, the Patent Office reissued the '072 Patent as the '940 Patent without any substantive amendments to the independent claims. *Id.* at Ex. C, D, E.  After this successful reissue, AFT further notified J&L of the same and commenced the instant action against J&L for infringement of the '940 Patent. SOMF ¶¶13, 17; Gooding Decl., ¶¶11, 15.  Despite this additional notice and the reissue, J&L has still refused to cease its infringing activities. SOMF ¶13; Gooding Decl., ¶11.

J&L's conduct has continued even though it has admitted that it infringes the '940 Patent. Specifically, AFT served J&L with an Interrogatory in this case requesting it to state the legal

and factual basis for any allegations of non-infringement in detail sufficient for this Court to decide whether to grant or deny a Motion for Summary Judgment. Mesiti Decl., ¶6, Ex. G, Interrogatory No. 11.  The Interrogatory requested J&L to include a claim chart setting forth the limitation of each claim, the proposed claim construction, and an explanation of why there may be no infringement. *Id.*  J&L did not object to this Interrogatory but rather in its answer stated "**See the attached preliminary claim chart.**" *Id.* at ¶7, Ex. H.  In the claim chart, when J&L contended that a limitation of any claim was not present in its V-Max screen cylinder, it stated "**not in V-Max**" and then proceeded to provide an explanation of why such a limitation was not present in the V-Max screen cylinder. *Id*; SOMF ¶51; Gooding Decl., ¶35, Ex. H.  For independent claims 1 and 10 of the '940 Patent, as well as many other dependant claims, J&L did not set forth any basis that the V-Max cylinder did not infringe. Mesiti Decl., Ex. H; SOMF ¶51; Gooding Decl., ¶35, Ex. H.  Rather, J&L admitted that the V-Max infringes these claims.[1] *Id.*  This admission along with the proof herein is more than sufficient for the Court to grant Summary Judgment of infringement.

**B.  The '940 Patent**

The '940 Patent is directed to screen plates and specifically screen cylinders for use in the pulp and paper industry for screening pulp. SOMF ¶10; Gooding Decl., ¶8.  In the formation of paper products, stock (which is a mixture of pulp, water and possibly non-fibrous additives) is typically screened so that impurities, such as shives, wood fiber bundles, plastic specks, grit and other oversize contaminants , are removed. SOMF ¶11; Gooding Decl., ¶9.  This screening process effectively separates the accept and reject portions of the pulp. *Id.*  Screening is generally performed using screen cylinders, or flat plates, which are provided with openings therethrough

---

[1] J&L's case is based upon the defense of invalidity rather than non-infringement of the '940 Patent. *See*, SOMF ¶51; Gooding Decl., ¶35, Ex. H; Mesiti Decl., Ex. H.

3

for separating the accept and reject portions of the pulp. SOMF ¶12; Gooding Decl., ¶10.  In

accordance with the '940 Patent, the invention includes a screen cylinder formed of at least two

pieces:  a screening plate having narrow openings therethrough, and a backing plate, which

functions in part to provide the screening plate with structural strength to withstand the high

pressures of screening pulp. SOMF ¶18; Gooding Decl., ¶16.  A depiction of a portion of such a

screen cylinder is shown in Fig. 2 of the '940 Patent and is represented below.



SOMF ¶19; Gooding Decl., ¶16; Mesiti Decl., Ex. C.

In accordance with the '940 Patent, the screening plate (12) and backing plate (14) are

formed as cylinders lying concentrically within one another. SOMF ¶20; Gooding Decl., ¶17.

The backing plate (14) contains openings (28) therein and structurally supports the screening

plate (12), which acts as a screening medium having a plurality of openings (26) therethrough.

*Id.*  The openings are formed as elongated slots (26). *Id.*  The backing plate (14) and screening

plate (12) have opposed surfaces in engagement with one another at an interface therebetween.

*Id.*  A plurality of circumferentially extending recesses (22) are formed in one of the opposing

surfaces by axially spaced projections (24) to establish fluid communication between the

4

openings (26) of the screening medium (12) and the backing plate (14) to allow the flow of material therethrough. *Id.*  In addition to providing structural support, such a construction maximizes the "open area" of the openings (26) in the screening medium (12).  Without the circumferentially extending recesses (22), a considerable portion of the openings (26) would face directly onto a solid portion of the backing plate (14) and not be available for flow passage.*Id.*

During operation of the screen cylinder, stock (pulp) flows within the center of the screening plate (12). SOMF ¶21; Gooding Decl., ¶18.  A pressure differential causes the pulp stock to flow through the inner surface of the screening plate (12). *Id.*  The stock within the screen cylinder is typically subjected to a rotor which: 1) backflushes the openings (28) to keep them clear, 2) imparts turbulence to the stock to break up entanglements of pulp fibres, and 3) develops a flow field supportive of optimal operation of the screening plate (12). *Id.*  The screening plate (12), due in part to its contoured grooves (shown in Fig. 8 of the '940 Patent reproduced below) allows fibers of a certain size to pass through the grooves, then radially through the screen plate openings (26) and then through the openings (28) in the backing plate (14). *Id.*  This "accept" portion of the pulp is collected and retained to make paper products. *Id.*  The constituents in the pulp which remain in the center of the screen plate (12), referred to as the "reject" portion of the pulp is discarded or reprocessed. *Id.*  Because screen cylinders are subject to high wear rates, this two-piece construction allows the replacement of the screening plate without the necessity of replacing the backing plate. *Id.*



*FIG. 8*

SOMF ¶22; Gooding Decl., ¶19; Mesiti Decl., Ex. C.

## C. The Infringing V-Max Screen Cylinder

Like the invention of the '940 Patent, the V-Max screen cylinder is for use in the pulp

and paper industry for screening pulp. SOMF ¶24; Gooding Decl., ¶23. The V-Max includes

two functional components, a screening plate (12)[2] which has narrow openings therethrough, and

a backing plate (14), which functions in part to provide the screening plate with structural

support to withstand the pressures of pulp screening. *Id.* Like the '940 Patent, the V-Max

screening plate (12) is cylindrical and lies concentrically within the V-Max backing plate (14)

(which is also cylindrical). SOMF ¶25; Gooding Decl., ¶23. A plurality of circumferentially

extending recesses (22) are formed by axially spaced projections (24) at the interface between

the V-Max screening plate (12) and the backing plate (14) to establish fluid communication

between the openings of the screening plate and the backing plate to allow the flow of material

therethrough. SOMF ¶¶26-27, 35-36; Gooding Decl., ¶¶24, 28.

Shown below are photos of a V-Max screen cylinder from J&L's brochure. SOMF ¶23;

Gooding Decl., Ex. F. The backing plate (14), which is located on the outside of the V-Max, and

the screen plate (12), which is located inside the backing plate, can be clearly seen. SOMF ¶25;

Gooding Decl., ¶23, Ex. F. The parallel grooves or slots (26) in the screen plate and axially

spaced projections (24) forming circumferentially recesses (22) can also be clearly seen. SOMF

¶26; Gooding Decl., ¶24, Ex. F. During operation of the V-Max, stock flows through the center

of the screen cylinder. SOMF ¶25; Gooding Decl., ¶23. The accept portion of the pulp flows

radially through the screen cylinder and the reject portion of the pulp flows out the distal (reject)

end. *Id.*

---

[2]  For the Court's convenience, the reference numbers used herein to describe the V-Max are the same as the
reference numbers used to describe the corresponding feature of the '940 patented screen cylinder.



Mounting Flange

STOCK

ACCEPT
PORTION

Backing Plate (14)

REJECT
PORTION

Screen Plate (12)



Backing plate



axially spaced projections (24)

backing
plate (14)

screen
plate (12)

circumferential
recesses (22)

parallel grooves (26)

In addition, the grooves (26) in the V-Max screening plate are contoured grooves which are inclined on the in-flow side of the screening plate.  These contoured grooves are shown in the V-Max brochure, a portion of which is reproduced below. SOMF ¶28; Gooding Decl., ¶25, Ex. F.



**Two Plane (T) Contour**

The V-Max includes all the features of the independent claims of the '940 Patent and, thus, as explained below, infringes the same.

*Argument*

### SUMMARY JUDGMENT OF INFRINGEMENT IS APPROPRIATE IN THIS CASE BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT FOR TRIAL

Summary judgment should be granted where the Court concludes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1968). Summary judgment pursuant to Rule 56 is appropriate in the patent case as in any other type of case. *Brenner v. United States*, 773 F.2d 306, 307 (Fed.Cir. 1985). "[T]he Court should utilize the statutory procedure of Rule 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984). In a patent infringement case, determining whether infringement has occurred is a two-step process. First, the claims must be construed, and second, the construed claims compared to the accused device. *See, Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995) *aff'd*, 517 U.S. 370 (1996). The first part, namely, claim construction is a question of law. *Cybor Corp. v. FASTechs, Inc.*, 138 F.3d 1448, 1456 (Fed.Cir. 1998). The

second part, namely, the comparison of the claims to the accused device is a question of fact.

However, when there is no dispute about the configuration or function of the accused device,

then summary judgment on the issue of infringement is appropriate, as no triable issue of fact

exists. *Phonometircs, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1464 (Fed.Cir. 1998).  In

this case, since the claims are construed as a matter of law and there is no dispute as to the

configuration of Defendant's accused V-Max screen cylinders, summary judgment of

infringement is appropriate.

## A.  The Applicable Law on Infringement

To prove infringement, a plaintiff may show that only one claim of the patent is

infringed. *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311

(Fed.Cir. 2005).  It is not necessary to show that more than one patent claim is infringed.

However, infringement requires that every limitation of a claim be present in the accused

structure either literally or under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton*

*Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  There is literal infringement of a claim when every

claim element is found in the accused device, i.e., when the properly construed claim reads on

the accused device exactly. *Amhil Enter., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed.Cir.

1996).

Under the doctrine of equivalents, "a product or process that does not literally infringe

upon the express terms of a patent claim may nonetheless be found to infringe if there is

'equivalence' between the elements of the accused product or process and the claimed elements

of the patent invention." *Warner-Jenkinson*, 520 U.S. at 21.  The doctrine of equivalents is

intended to prevent an accused infringer from avoiding infringement by making only

"unimportant and insubstantial changes and substitutions" to the claimed invention while still

9

appropriating the "benefit of the invention." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607-08 (1950). "An element in the accused product is equivalent to a claim element if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261 (Fed. Cir. 1999).

## B.  The Applicable Law Regarding Claim Construction

The object of claim construction is to determine what sometimes terse or unfamiliar words in patent claims mean. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed.Cir. 2001); *Markman*, 52 F.3d at 979. The claims of a patent serve a public notice function by defining and limiting the patentee's statutory right to exclude. *Markman*, 52 F.3d at 987. The exercise of judicial claim construction serves to aid the fact finder in understanding the scope of the patent:

> Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

The primary sources to be consulted when construing a patent claim are: (i) the language of the claim, (ii) the patent's specification, and (iii) the prosecution history of the patent. *Gart*, 254 F.3d at 1340; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed.Cir. 1996); *Markman*, 52 F.3d at 979-80. These sources are called the "intrinsic evidence," as they are public record available for all to consult when determining the meaning and scope of a patent claim.

Claim interpretation begins with the actual words of the claims. *Bell Communication Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995). Generally, the words, phrases, and terms in patent claims should receive their ordinary and accustomed meaning of the words amongst artisans of ordinary skill in the relevant art at the

time of the invention. *Philips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed.Cir. 2005); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir. 2001).  Normal rules of usage suggest a "heavy presumption" that claim terms carry their accustomed meaning in the relevant community at the relevant time. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed.Cir. 2002). In assessing the intrinsic evidence, the Court should rely upon the actual words of the claims, the patent specification, and the prosecution history. *Philips*, 415 F.3d. at 1313.

A court may receive extrinsic evidence to educate itself about the invention and the relevant technology; although it may not use extrinsic evidence to arrive at a claim construction that is "clearly at odds with the construction mandated by the intrinsic evidence." *Vitronics*, 90 F.3d at 1583-84.  Dictionaries, are one type of extrinsic evidence which can be useful in claim construction. *Philips* 415 F.3d at 1318.  In determining the ordinary meaning of claim terms, the Court may freely consult dictionaries, encyclopedias, or treatises that were publicly available at the time the patent was issued, as objective and reliable sources of the established meanings that would have been attributed at that time to the terms of the claims by those of skill in the art. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202-3 (Fed.Cir. 2002).  In fact, these resources are often considered the most meaningful in determining the ordinary meaning of claim terms. *Id.* at 1203.

Here, the intrinsic evidence resolves the construction of the claim terms.  The specification of the '940 Patent and its prosecution history confirm that the terms of the claims in this case are used in accordance with their ordinary meaning to a person of ordinary skill in the art of pulp screening.

**C.     The Claim Construction of the '940 Patent**

The '940 patent claims are not currently in dispute and should be interpreted in accordance with their ordinary meaning in the pulp and paper industry.  Each of the claims are directed to a screen cylinder, a screen plate or a method of manufacturing a screen for screening pulp. *See*, Mesiti Decl., Ex. C.  In this regard, The specification of the '940 Patent describes the invention as "screen plates, e.g., screen cylinders and flat screen plates, for use, for example, in the pulp and paper industry for screening pulps ... ." Mesiti Decl., Ex. C, Col. 1, lines 11-15. The specification goes on to describe that "in accordance with the present invention, there are provided screen plates for use in the pulp and paper industry having substantially increased efficiency..." *Id.* at Col. 2, lines, 12-14.  The specification also describes screening as follows:

> In the formation of paper products from pulp, the pulp is typically screened such that impurities, such as sticks, shives and other undesirable pulp constituents, are removed. This screening process effectively separates the accept and reject portions of the pulp. Screening is generally performed using screen cylinders or flat plates, each of which is provided with openings therethrough for separating the accept and reject portions of the pulp.

*Id.* at Col. 1, lines 16-23.

The specification also discusses the advantages of the invention in avoiding the problems associated with pulp screening including the stress caused by high frequency pulses and heavy vibrations common with screening of pulp. *Id.* at Col. 1, lines 42-58.  The specification also describes an embodiment of this invention "preferably for screening high consistency pulp..." (*id.* at Col. 4, lines 63-65), and "a screen plate for screening pulp flowing therethrough comprising a contoured screening medium..." (*id.* at Col. 5, lines 58-61); and a "screening cylinder for communicating pulp between inflow and outflow sides thereof... and enables flow of pulp through the contoured grooves..." *Id.* at Col. 7, lines 4-10.

12

The "Detailed Description of the Drawing Figures" of the specification describes an embodiment of the invention "useful for screening generally low consistency pulp…" (*id.* at Col. 7, lines 57-60); as well as another embodiment for screen "high consistency pulps." *Id.* at Col. 10, lines 38-40.  In fact, the entire specification of the '940 Patent is directed to screening pulp and describes the features and benefits the invention provides for efficient pulp screening.

In addition, the prosecution history of the '940 Patent shows that the terms "screen cylinder," "screening" and "screen plate" were used in accordance with their customary meaning in the pulp and paper industry.  Specifically, during prosecution it was recognized that:

> The terms "screen", "screening", and "screen plate" are terms of the pulp treatment art, having specific meanings to those of ordinary skill in the pulp treatment art.  For example, as shown in the attached excerpt from the <u>Handbook of Pulp and Paper Technology</u>, pp. 153-155 (Smook, 1990), these terms have the following definitions in this art:
>
> SCREEN:  Separation device utilizing some type of perforated barrier for removing unwanted material from a stock[*] stream.
>
> SCREENING:  Process step involving passage of stock[*] through some form of perforated barrier to remove oversize, troublesome and unwanted particles from good fiber.
>
> SCREEN PLATE:  Perforated metal plate utilized on many designs of pulp screening equipment that impedes pulp flow and is instrumental in causing a separation between suspended particles on the basis of their size, shape, and/or flexibility.
>
> [*] STOCK:  A mixture of <u>pulp</u> and water with or without non-fibrous additives. [Emphasis added.]
>
> Clearly, as explained in this well-recognized reference on pulp and paper technology, these terms have specific meaning in the art of the present invention and would be understood by those of skill in the art to have such meanings as presented in the present specification.  The Applicant submits that this meaning of the term "screen plate" in claim 1 is consistent with this meaning in the art.

Mesiti Decl., Ex. D.

The Patent Office recognized these definitions and allowed the '940 Patent claims on the basis of the meanings of these terms to a person of ordinary skill in the pulp and paper art. *Id.* Thus, in accordance with the specification and prosecution history, the claim terms of the '940 Patent, including the terms "screen cylinders," "screen plates" and "screening" should be given their ordinary meaning to a person of ordinary skill in the art in the pulp and paper industry.  In this regard, a "screen" is recognized in the art as a separation device utilizing some type of perforated barrier for removing material from a stock stream to separate the accept and reject portions of pulp.[3] *Id.*  "Screening" is recognized in the art as a process for separating accept and reject portions of the pulp involving the passage of stock through some form of perforated barrier to remove oversize, troublesome and unwanted particles from good fiber. *Id.*  A "screen plate" is recognized in the art as a perforated metal plate utilized on pulp screening equipment that impedes pulp flow and is instrumental in causing a separation between suspended particles on the basis of their size, shape and/or flexibility for separating the accept and reject portions of the pulp. *Id.*  Other terms in the claims of the '940 Patent should be given their ordinary meaning.

**D.     The V-Max Screen Cylinders Infringe the '940 Patent**

   i.      The V-Max Screen Cylinders Infringe Independent Claims 1, 10 and 18

      **1.     *Claim 1***

Claim 1 of the '940 Patent reads as follows:

   1. A screen cylinder comprising:

         a generally cylindrical screening medium having a plurality of openings therethrough;

         a generally cylindrical structural backing plate for structurally supporting said screening medium and having a plurality of openings therethrough; **[and]**[4]

---

[3] "Stock" is recognized as a mixture of pulp and water with or without nonfibrous particles as additives.
[4] In the '940 Patent, bracketed terms have been removed from the original '072 Patent, while italicized words have been added. *See,* Mesiti Decl., Ex. C.

said screening medium and said structural backing plate lying concentrically one within the other and having respective opposed surfaces in engagement with one another at an interface therebetween whereby said backing plate structurally supports said screening medium;

one of said screening medium and said backing plate having a plurality of circumferentially extending recesses formed in its opposing surface and opening at the opposing surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the respective openings of said screening medium and said backing plate; *and*

a plurality of axially spaced projections spaced one from the other in the axial direction defining said recesses and projecting radially from one of said screening medium and said backing plate at said interface;

the openings in said screening medium being elongated and extending in a generally axial direction substantially normal to the circumferential extent of said recesses.

Mesiti Decl., Ex. C.

J&L has admitted in its interrogatory responses including its claim chart that the V-Max infringes claim 1. *Id.* at Ex. H; SOMF 51; Gooding Decl., ¶35, Ex. H. Moreover, as set forth in the claim chart set forth in the Gooding Decl., J&L's V-Max contains all elements of claim 1. SOMF ¶30; Gooding Decl., ¶27. For the Court's convenience, the claim chart for claim 1 is represented below.

| Claim 1's Limitations | J&L's V-Max |
|---|---|
| 1)  A screen cylinder (10)* comprising:<br><br><br>*Reference numbers have been added to the claim charts for the Court's convenience. |  |

15

| | |
|---|---|
| a generally cylindrical screening medium (12) having a plurality of openings (26) therethrough; |  |
| a generally cylindrical structural backing plate (14) for structurally supporting said screening medium and having a plurality of openings (28) therethrough; | |
| said screening medium and said structural backing plate lying concentrically one within the other and having respective opposed surfaces in engagement with one another at an interface (15) therebetween whereby said backing plate structurally supports said screening medium; | |

| | |
|---|---|
| one of said screening medium (12) and said backing plate (14) having a plurality of circumferentially extending recesses (22) formed in its opposing surface and opening at the opposing surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the respective openings of said screening medium and said backing plate; | "circumferentially extending recesses" (24)<br><br>"screening medium" (12)<br><br>"structural backing plate" (14) |
| a plurality of axially spaced projections (24) spaced one from the other in the axial direction defining said recesses and projecting radially from one of said screening medium and said backing plate at said interface; | "circumferentially extending recesses" (22)<br><br>"screening medium" (12)<br><br>"plurality of axially spaced projections" (24) |
| the openings (26) in said screening medium being elongated and extending in a generally axial direction substantially normal to the circumferential extent of said recesses. | "circumferentially extending recesses" (22)<br><br>"screening medium" (12)<br><br>"openings in said screening medium being elongated" (26) |

*Id.*

Based upon a comparison of the V-Max with claim 1 (as shown above), the V-Max infringes this claim.  The V-Max is a screen cylinder (10) which used to screen stock and pulp, has a cylindrical screening medium (12) with a plurality of openings (26) therethrough. SOMF ¶32; Gooding Decl., ¶28.  The screen cylinder (10) also includes a structural backing plate (14) for structurally supporting the screening medium (12) and having a plurality of openings therethrough (28). SOMF ¶33; Gooding Decl., ¶28.  The screening medium (12) and the backing plate (14) lie concentrically one within the other and have opposed surfaces in engagement with one another at an interface (15) therebetween whereby the backing plate (14) structurally supports the screening medium (12). SOMF ¶34; Gooding Decl., ¶28.  The screening medium (12) has a plurality of circumferentially extending recesses (22) formed in its surface open to the opposing surface of the backing plate (14) at the interface (15) thereof establishing communication between the openings (26) of the screening medium and the openings of backing plate (28). SOMF ¶35; Gooding Decl., ¶28.  The V-Max includes a plurality of axially spaced projections (24) spaced one from the other in the axial direction which define the recesses (22) and project radially from the screening plate. SOMF ¶36; Gooding Decl., ¶28.  The openings (26) in the screening medium are elongated and extend in a generally axial direction substantially normal to the circumferential extent of the recesses. *Id.*

Moreover, J&L has not denied or contested, but rather has admitted in its interrogatory responses, that its V-Max screen cylinder infringes claim 1. SOMF ¶51; Gooding Decl., ¶35, Ex. H; Mesiti Decl., Ex. H.  Thus, the proof herein as well as J&L's admission that its V-Max includes all the limitations of claim 1, mandates summary judgment of infringement.

2.   *Claim 10*

Claim 10 reads as follows:

10.  A screen plate for screening pulp flowing therethrough comprising:

a screening medium having a plurality of slots therethrough and extending generally parallel to one another, said slots having contoured portions on an inflow side of said screening medium; and

a structural backing plate having a plurality of openings therethrough;

said screening medium and said structural backing plate lying in registration one with the other and having respective opposed surfaces in engagement with one another at an interface therebetween whereby said backing plate structurally supports said screening medium;

one of said screening medium and said backing plate having a plurality of recesses formed in its opposing surface and opening at the opposite surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the openings of said backing plate and said slots of said screening medium;

whereby pulp may flow sequentially through said slots, said recesses and said openings in said backing plate.

Mesiti Decl., Ex. C

Like claim 1, J&L has admitted that the V-Max includes all the limitations of claim 10 and thus infringes the same. SOMF ¶51; Gooding Decl., ¶35, Ex. H; Mesiti Decl., Ex. H. Moreover, as set forth in the claim chart below, the V-Max screen cylinder includes all the elements of claim 10 of the '940 Patent.

| Claim 10's Limitations | J&L V-Max |
| --- | --- |
| 10.  A screen plate for screening pulp flowing therethrough comprising:<br><br>a screening medium (12) having a plurality of slots (26) therethrough and extending generally parallel to one another, |  |

19

| | |
|---|---|
| said slots having contoured portions (16) on an inflow side of said screening medium; _and_ |  |
| a structural backing plate (14) having a plurality of openings (28) therethrough; |  |
| said screening medium (12) and said structural backing plate (14) lying in registration one with the other and having respective opposed surfaces in engagement with one another at an interface (15) therebetween whereby said backing plate structurally supports said screening medium; |  |

| | |
|---|---|
| one of said screening medium (12) and said backing plate (14) having a plurality of recesses (22) formed in its opposing surface and opening at the opposite surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the openings of said backing plate and said slots of said screening medium; |  |
| whereby pulp may flow sequentially through said slots, said recesses and said openings in said backing plate.* | * The V-Max is used to screen pulp which flows through the slots, recesses and openings. (Gooding Decl., Ex. D). |

SOMF ¶¶37-38; Gooding Decl., ¶¶29-30.

As shown above, the V-Max contains all the limitations or features recited in claim 10. The V-Max comprises a screen plate for screening pulp flowing therethrough. SOMF ¶39; Gooding Decl., ¶30.  The screen plate comprises a screening medium (12) having a plurality of slots (26) therethrough and extending generally parallel to one another. *Id.*  The slots (26) have contoured portions (16) on the in-flow side of the screening medium (12). *Id.*  The screen plate includes a structural backing plate (14) having a plurality of openings (28) therethrough. SOMF ¶40; Gooding Decl., ¶30.  The screening medium (12) and the backing plate (14) lie in registration one within the other and have respective opposed surfaces in engagement with one another at an interface (15) therebetween whereby the backing plate (14) structurally supports the screening medium (12). *Id.*  This screening medium (12) has a plurality of recesses formed in its surface opposing the backing plate (14) at the interface thereof establishing communication between the openings (28) of the backing plate and the slots (26) of the screening medium (12).

SOMF ¶41; Gooding Decl., ¶30.  This configuration allows pulp to flow sequentially through the

slots (26) the recesses (22) and the openings (28) in the backing plate (14). *Id.*  Like claim 1,

J&L has not denied or contested infringement of claim 10. SOMF ¶51; Gooding Decl., ¶35, Ex.

H; Mesiti Decl., Ex. H.  Rather, J&L has admitted that its V-Max infringes claim 10. *Id.*  Thus,

summary judgment of infringement of claim 10 is appropriate.

### 3. *Claim 18*

Claim 18 reads as follows:

18.  A method of manufacturing a screen for use in screening for pulp, said screen being
formed of a screening plate and a backing plate, said screening plate having first and second
opposite faces, comprising the steps of:

(a) forming elongated, substantially parallel, grooves in said first face, each
groove having a side face and a bottom;

(b) forming openings through the bottom of the grooves in said first face and into
the screening plate to terminate within the screening plate short of said second face
thereof;

(c) forming elongated grooves in the second face of said screening plate inclined
relative to the longitudinal extent of the grooves formed in step (a) and to a depth to
expose the openings formed in step (b) so that the openings extend entirely through said
screening plate, and leave a plurality of ridges in the second face spaced one from the
other there-along and extending in a direction inclined relative to the longitudinal extent
of said grooves.

Mesiti Decl., Ex. C.

As shown in the below chart, the V-Max screen cylinder is manufactured to include all

the elements of claim 18.

| Claim 18's Limitations | J&L V-Max |
|---|---|
| 18.  A method of manufacturing a screen for use in screening for pulp, said screen being formed of a screening plate (12) and a backing plate (14), said screen plate having first and second opposite | |

| | |
|---|---|
| faces, comprising the steps of: |  |
| (a) forming elongated, substantially parallel, grooves (26) in said first face, each groove having a side face and a bottom;<br><br>(b) forming openings (26(a)) through the bottom (20(a)) of the grooves in said first face and into the screening plate to terminate within the screening plate short of said second face (13) thereof;<br><br>(c) forming elongated grooves (21) in the second face of said screening plate inclined relative to the longitudinal extent of the grooves formed in step (a) and to a depth to expose the openings formed in step (b) so that the openings extend entirely through said screening plate, and leave a plurality of ridges (23) in the second face spaced one from the other there-along and extending in a direction inclined relative to the longitudinal extent of said grooves. |  |

SOMF ¶¶42-43; Gooding Decl., ¶¶31-32.

23

A comparison of the V-Max with claim 18, as set forth above, shows that V-Max infringes claim 18.  The V-Max is manufactured to include a screen for use in screening pulp and includes a screening plate (12) and a backing plate (14). SOMF ¶44; Gooding Decl., ¶32.  The screen plate has first (11) and second (13) opposite faces. SOMF ¶45; Gooding Decl., ¶32.  The screen is formed with substantially parallel grooves (26) in a first face, each groove has a side face and a bottom (20(a)). *Id.*  The screen is also formed with openings (26(a)) through the bottom of the grooves in the first face, into the screening plate which terminate within the screening plate short of the second face. SOMF ¶46; Gooding Decl., ¶32.  The grooves (21) in the second face of the screening plate are inclined (23) relative to the longitudinal extent of the grooves formed in the first face and to a depth to expose the openings formed through the bottom of the grooves in the first face. SOMF ¶47; Gooding Decl., ¶32.  The result is a plurality of ridges in the second face faced one from the other there along and extending in a direction inclined relative to the longitudinal extent of the grooves. *Id.*

Although J&L admits infringement of claims 1 and 10, J&L contests infringement of claim 18. Gooding Decl., ¶35, Ex. H; Mesiti Decl., Ex. H.  However, J&L's basis of non-infringement of claim 18 is without merit.  J&L's only basis for non-infringement is that it does not "form" grooves or openings in the V-Max.  According to J&L, the V-Max is "assembled not milled, and therefore grooves are not formed." *Id.*  This argument, however, is without merit because "forming" includes assembling and is not limited to milling.

The term "forming" should be given its ordinary and customary meaning.  According to its ordinary meaning, the word "form" means "to give a particular shape to: shape or mold into a certain state or after a particular model", "to give form or shape to: FASHION, CONSTRUCT".  *See*, Merriam-Webster's Online Dictionary.  No where does the definition of "form" or

"forming" require milling.  And, no where in the specification or prosecution history is "forming" defined as exclusively milling.  J&L's attempt to define "forming" as exclusively milling is an attempt to read limitations, which are not present, into claim 18.  However, it is improper for the Court's to read limitations into a claim. *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed.Cir. 2008).  Thus, "forming" should be construed according to its ordinary meaning "to give a particular shape to: FASHION, CONSTRUCT".  Under this proper claim construction, the V-Max clearly infringes claim 18 because the claimed grooves and openings are formed. SOMF ¶¶42, 45-47, Gooding Decl., ¶¶31-32.  Thus summary judgment of infringement of claim 18 is appropriate.

ii.    The V-Max Screen Cylinders Infringe Dependant Claims 2, 6, 8, 11-15, 19-20, 23, 27, 29 and 37- 39

In addition to independent claims 1, 10 and 18, the V-Max Screen Cylinders also infringe dependant claims 2, 6, 8, 11-15, 19-20, 23, 27, 29 and 37- 39.  A detailed infringement analysis and claim chart of claims 2, 6, 8, 11-15, 19-20, 23, 27, 29 and 37- 39 is set forth in the Gooding Decl., ¶¶33-34. SOMF 48-49.

### *Conclusion*

Based upon the foregoing, AFT respectfully request that summary judgment on the issue of infringement be granted in favor of AFT against J&L.

Respectfully submitted,

Dated:  March 13, 2009          _____/s/ Nicholas Mesiti_____
                                Nicholas Mesiti, Esq.
                                Alana M. Fuierer, Esq.
                                Shanna K. O'Brien, Esq.
                                HESLIN ROTHENBERG FARLEY & MESITI P.C.
                                5 Columbia Circle
                                Albany, New York  12203-5160
                                Telephone: (518) 452-5600
                                *Attorneys for Plaintiff*