**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADVANCED FIBER TECHNOLOGIES (AFT) TRUST, | ) |
| | ) |
| *Plaintiff/Counter-Defendant*, | ) |
| | ) |
| v. | ) |
| | ) |
| J&L FIBER SERVICES, INC., | ) |
| | ) |
| *Defendant/Counter-Plaintiff.* | ) |
| | ) |
| | ) |

Civil Action No.:
1:07-CV-1191

LEK/DRH

**DECLARATION OF ROBERT GOODING IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

Robert Gooding, declares and says as follows:

1.      I am Vice President, Technology of Advanced Fiber Technologies (AFT) Trust (hereinafter "AFT"), the Plaintiff in this case.  I currently reside at 4635 Patricia Avenue, Montreal, Quebec, Canada H4B 1Z2.

2.      I make this Declaration in support of Plaintiff's Motion for Summary Judgment of Infringement made against Defendant J&L Fiber Services, Inc.'s (hereinafter "Defendant" or "J&L").

3.      I have been working and conducting research in the pulp and paper industry since 1977, with my principal focus being in the area of pulp screening, stock preparation and paper forming.  As such, I am fully familiar with the process of pulp screening, screen cylinders, and screen plates.  I received my Bachelor's Degree in Mechanical Engineering from McGill University in Montreal, Canada in 1977, Masters of Applied Science in Chemical Engineering from the University of British Colombia in 1985, and my Ph.D. from the University of British

Colombia in Chemical Engineering in 1996.  My studies have included the flow resistance of pulp screen plates and the passage of fibers through slots in pulp screening.

4.      From 1977 until 1982, I was an Assistant Scientist, and then Associate Scientist, at the Pulp and Paper Research Institute of Canada.  From 1984 until 2001, I held a series of positions of increasing responsibility at the Pulp and Paper Research Institute of Canada, including positions as Research Engineer, Project Supervisor and Group Leader.  In 2001 I joined AFT, first as Director, Technology and then as Vice President, Technology, which is my current position.  I have held university appointments and responsibilities concurrent with my employment at the Pulp and Paper Research Institute of Canada and AFT.  From 1986 until 1995, I was an industrial lecturer at the University of British Colombia where I conducted lectures in undergraduate and post-graduate pulp and paper courses.  From 1998 until present, I have served as Adjunct Professor at McGill University in Montreal, Canada, conducting lectures in undergraduate and post-graduate pulp and paper courses.  From 1986 until present, I have participated in the supervision of graduate student research at the University of British Columbia.

5.      I have been granted numerous awards and scholarships and have published at least 44 articles relating to pulp screening, pulp processing and other pulp and paper topics.  A true and accurate copy of my curriculum vitae is attached hereto as **Exhibit "A"**.

6.      AFT is a Trust organized and existing under the laws of Canada with a principal place of business at 72 Queen Street, Sherbrooke, Quebec, Canada, J1M 2C3, and with a technology office at 5890 Monkland Avenue, Suite 400, Montreal, Quebec, Canada H4A 1G2.

7.      AFT owns U.S. Patent No. RE39,940 ("the '940 Patent"), which is the subject of this patent infringement case.  The '940 Patent is a reissue of U.S. Patent No. 5,200,072 ("the

'072 Patent").  The '072 Patent was issued on April 6, 1993 based upon a patent application filed on August 16, 1990.

8.      The '940 Patent is directed to screen plates and screen cylinders.  Screen plates and screen cylinders are used in the pulp and paper industry to screen impurities from pulp.

9.      Screening is a well known process where impurities such as shives, wood fiber bundles, plastic specks, grit and other oversize contaminants contained within the pulp stock are separated from desirable wood pulp fibers used to make paper products.  The stock that is screened during the screening process is a mixture of pulp and water which may also include non-fibrous additives.  Pulp is a fibrous material produced chemically and/or mechanically from wood or other cellulosic raw material and is used as the principal raw material for paper making. Screening involves the passage of stock through some form of perforated barrier to remove oversize, troublesome and unwanted particles from good fiber which is used to make a paper product.  Screening is performed using a screen which is a separation device utilizing some type of perforated barrier for removing unwanted material from a stock stream.  This screening process effectively separates the accept and reject portions of the pulp.

10.      Screening is generally performed using screen cylinders, or flat plates, which are provided with openings therethrough for separating the accept and reject portions of the pulp.  A screen plate is used on many designs of pulp screening equipment to perform screening.  A screen plate is typically a perforated metal plate that impedes pulp flow and is instrumental in causing a separation between entrained particles on the basis of their size, shape and/or flexibility.

11.      The dispute between the parties began in March 2002 when AFT purchased the '072 Patent from one or more predecessors-in-interest.  However, J&L has had knowledge of its

infringement of the '072 Patent since at least as early as February 2000, when AFT's predecessor-in-interest provided J&L with notice of its infringement of the '072 Patent. A true and accurate copy of the notice of infringement of the '072 Patent dated February 8, 2000 and provided by AFT's predecessor-in-interest, CAE ScreenPlates, Inc. ("CAE"), to J&L is attached hereto as **Exhibit "B."** Despite receiving this notice from CAE, J&L continued to infringe the '072 Patent after AFT's acquisition thereof. After purchasing the '072 Patent, AFT provided additional notice of infringement to J&L on multiple occasions. For example, a true and accurate copy of one such notice from AFT to J&L dated January 17, 2003 is attached hereto as **Exhibit "C."** However, J&L continued to infringe the '072 Patent, and in 2003, AFT filed for reissue of the '072 Patent, which resulted in the issuance of the '940 Patent on December 18, 2007. After successful reissue, AFT further notified J&L of the same and commenced the instant action against J&L for infringement of the reissued '940 Patent. Despite this additional notice and the reissue, J&L continued its infringing activities.

12.   AFT, through its wholly owned subsidiary, Advanced Fiber Technologies, Inc., manufactures and sells screen cylinders used in the pulp and paper industry to screen impurities from pulp used to make paper products.

13.   Advanced Fiber Technologies, Inc. manufactures screen cylinders at its facility in Sherbrooke, Quebec, Canada including screen cylinders manufactured in accordance with the '940 Patent under the name "Durashell™."

14.   According to their websites, J&L is owned by Precision Castparts Corp. ("PCC"), which recently reported upwards of $1.7 billion in total sales in the fourth quarter of fiscal 2008. J&L has been making, using, selling, offering for sale, importing and/or exporting screen cylinders for use in the pulp and paper industry to screen pulp under the designation "V-Max"

within the United States.  A true and accurate copy of relevant excerpts from J&L's website advertising its V-Max screen cylinder is attached hereto as **Exhibit "D"**.

15.    The '072 Patent was reissued into the '940 Patent on September 18, 2007, and this action was commenced on November 9, 2007 against J&L for infringement of the '940 Patent. As set forth in the Complaint in this case, AFT asserts that J&L's V-Max screen cylinders infringe the '940 Patent.  A true and accurate copy of the Complaint is attached hereto as **Exhibit "E"**.

16.    In accordance with the '940 Patent, the invention includes a screen cylinder formed of at least two pieces:  a screening plate having narrow openings therethrough, and a backing plate, which functions in part to provide the screening plate with structural strength to withstand the high pressures of screening pulp.  A depiction of a portion of  such a screen cylinder is shown in Fig. 2 of the '940 Patent and is represented below.



17.     In accordance with the '940 Patent, the screening plate (12) and backing plate (14) are formed as cylinders lying concentrically within one another.  The backing plate (14) contains openings (28) therein and structurally supports the screening plate (12), which acts as a screening medium having a plurality of openings therethrough.  The openings are formed as elongated slots (26).  The backing plate (14) and screening plate (12) have opposed surfaces in engagement with one another at an interface therebetween. A plurality of circumferentially extending recesses (22) are formed in one of the opposing surfaces by axially spaced projections (24) to establish fluid communication between the openings (26) of the screening medium (12) and the backing plate (14) to allow the flow of material therethrough.  In addition to providing structural support, such a construction maximizes the "open area" of the openings (26) in the screening medium (12).  Without the circumferentially extending recesses (22), a considerable portion of the openings (26) would face directly onto a solid portion of the backing plate (14) and not be available for flow passage.

18.     During operation of the screen cylinder, stock (pulp) flows within the center of the screening plate (12).  A pressure differential causes the pulp stock to flow through the inner surface of the screening plate (12).   The stock within the screen cylinder is typically subjected to a rotor which: 1) backflushes the openings (28) to keep them clear, 2) imparts turbulence to the stock to break up entanglements of pulp fibers, and 3) develops a flow field supportive of optimal operation of the screening plate (12).  The screening plate (12), due in part to its contoured grooves, allows fibers of a certain size to pass through the grooves, then radially through the screen plate openings (26) and then through the openings (28) in the backing plate (14).  This "accept" portion of the pulp is collected and retained to make paper products.  The

constituents in the pulp which remain in the center of the screen plate (12), referred to as the "reject" portion of the pulp, are discarded or reprocessed.  Because screen cylinders are subject to high wear rates, this two-piece construction allows the replacement of the screening plate without the necessity of replacing the backing plate.

19.    In accordance with one embodiment of the '940 Patent, the openings within the screening plate (12) (shown below) may be formed with elongated parallel grooves (30) on a first face, as well as elongated contoured grooves which form ridges which are inclined on the second face of the screening plate (12).  An opening (26a) is formed in the bottom (20a) of the contoured grooves which terminates short of the first face.  A cross-sectional view of such a contoured groove configuration is shown in Fig. 8 of the '940 Patent and is represented below.



FIG. 8

20.     In my capacity as Vice President, Technology of AFT, I was extensively involved in the investigation into Defendant's infringing conduct and the preparation and commencement of the instant action.  As such, I am fully familiar with the facts of this case.

21.     A true and accurate copy of J&L's marketing brochure entitled "V-Max$^{TM}$ Rebuildable Continuous Slotted Screen Cylinder Technology" is attached hereto as **Exhibit "F"**. In this brochure, J&L describes its V-Max screen cylinders and includes photographs of the V-Max screen cylinders and other representations of the features thereof, including the V-Max's contoured grooves.

22.     I have also personally inspected and viewed the V-Max screen cylinder and am thus familiar with its features on this basis as well.  True and accurate copies of photographs taken by AFT of a V-Max screen cylinder are attached hereto as **Exhibit "G"**.

23.     Like the invention of the '940 Patent, the V-Max screen cylinder is for use in the pulp and paper industry for screening pulp.  V-Max includes two functional components, a screening plate which has narrow openings therethrough, and a backing plate, which functions in part to provide the screening plate with structural support to withstand the pressures of pulp screening.  Like the '940 Patent, the V-Max screening plate is cylindrical and lies concentrically within the V-Max backing plate (which is also cylindrical).  During typical operation of the V-Max, stock flows through the center of the screen cylinder.  The accept portion of the pulp flows radially through the screen cylinder and the reject portion of the pulp flows out the distal (reject) end.  Shown below are photos of a V-Max screen cylinder from J&L's brochure attached hereto as Exhibit "F".  The backing plate and screen plate can be clearly seen.



And, as shown below, the backing plate may be removed.



See, Exhibit "F".

24.    As can also be seen below, the V-Max screen cylinder contains parallel groves within the screening medium of the screening plate as openings therethrough, circumferentially

9

extending recesses are formed by axially spaced projections located between the screening medium and backing plate.  During operation, stock flows into the center of the V-Max screen cylinder.  The accept portion of the pulp flows radially through the grooves, then radially into the circumferential recesses and then through the openings in the backing plate (14).



*See*, Exhibit "F".

     25.    The parallel grooves in the V-Max screening plate are formed as contoured grooves which are inclined on the in-flow side of the screening plate.  These contoured grooves are shown in the V-Max brochure attached hereto as Exhibit "F", a portion of which is reproduced below.



26.     I have compared the V-Max screen cylinder to the claims of the '940 Patent for the purposes of comparing the limitations of the claims to the V-Max screen cylinder. Set forth below are claim charts which include a comparison of each of the independent claims of the '940 Patent (claims 1, 10 and 18) with the V-Max screen cylinder, as well as dependent claims 2, 6, 8, 11-15, 19-20, 23, 27, 29 and 37-39. In each of these charts, the claims are compared to the V-Max screen cylinder. In the left column of the chart, is the claim parsed into its limitations. On the right side of the chart, is a photograph of the V-Max cylinder (*see*, Exhibit "G" hereto), and/or a representation of the V-Max screen cylinder grooves, from J&L's brochure (*see*, Exhibit "F" hereto). As can be seen from the charts below, each of the elements of the independent claims of the '940 Patent are present in the V-Max screen cylinder, as well as each of the elements of dependent claims 2, 6, 8, 11-15, 19-20, 23, 27, 29 and 37-39. For the Court's convenience, I have inserted reference numbers into the claims and photos to identify the corresponding structure.

27.    A claim chart for claim 1 is set forth below:

| Claim 1's Limitations | J&L's V-Max |
|---|---|
| 1)  A screen cylinder (10) comprising: |  |
| a generally cylindrical screening medium (12) having a plurality of openings (26) therethrough; |  |
| a generally cylindrical structural backing plate (14) for structurally supporting said screening medium and having a plurality of openings (28) therethrough; |  |

said screening medium and said structural backing plate lying concentrically one within the other and having respective opposed surfaces in engagement with one another at an interface (15) therebetween whereby said backing plate structurally supports said screening medium;



one of said screening medium (12) and said backing plate (14) having a plurality of circumferentially extending recesses (22) formed in its opposing surface and opening at the opposing surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the respective openings of said screening medium and said backing plate;



a plurality of axially spaced projections (24) spaced one from the other in the axial direction defining said recesses and projecting radially from one of said screening medium and said backing plate at said interface;



the openings (26) in said screening medium being elongated and extending in a generally axial direction substantially normal to the circumferential extent of said recesses.



28.     As can be seen from the above information, J&L's V-Max contains all elements of claim 1.  Specifically, the V-Max is a screen cylinder (10) which has a cylindrical screening medium (12) with a plurality of openings (26) therethrough.  The screen cylinder (10) also includes a structural backing plate (14) for structurally supporting the screening medium (12) and having a plurality of openings therethrough (28).  The screening medium (12) and the backing plate (14) lie concentrically one within the other and have opposed surfaces in engagement with one another at an interface (15) therebetween whereby the backing plate (14) structurally supports the screening medium (12).  The screening medium (12) has a plurality of circumferentially extending recesses (22) formed in its surface open to the opposing surface of the backing plate (14) at the interface (15) thereof establishing communication between the openings (26, 28) of the screening medium and the backing plate.  A plurality of axially spaced projections (24) spaced one from the other in the axial direction define the recesses (22) and project radially from the screening plate.  The openings (26) in the screening medium are

14

elongated and extend in a generally axial direction substantially normal to the circumferential extent of the recesses.

29.   A claim chart for claim 10 is set forth below:

| Claim 10's Limitations | J&L V-Max |
|---|---|
| 10.  A screen plate for screening pulp flowing therethrough comprising:<br><br>a screening medium (12) having a plurality of slots (26) therethrough and extending generally parallel to one another, |  |
| said slots having contoured portions (16) on an inflow side of said screening medium; and |  |

|     |     |
| --- | --- |
|      a structural backing plate (14) having a plurality of openings (28) therethrough; |  |
|      said screening medium (12) and said structural backing plate (14) lying in registration one with the other and having respective opposed surfaces in engagement with one another at an interface (15) therebetween whereby said backing plate structurally supports said screening medium; |  |

| | |
|---|---|
| one of said screening medium (12) and said backing plate (14) having a plurality of recesses (22) formed in its opposing surface and opening at the opposite surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the openings of said backing plate and said slots of said screening medium; |  |
| whereby pulp may flow sequentially through said slots, said recesses and said openings in said backing plate.* | * The V-Max is used to screen pulp which flows through the slots, recesses and openings.  (*See*, Exhibit "D" hereto). |

30.    As is shown above, the V-Max screen cylinder includes all the elements of claim 10 of the '940 Patent.  The V-Max comprises a screen plate for screening pulp flowing therethrough.  The screen plate comprises a screening medium (12) having a plurality of slots (26) therethrough and extending generally parallel to one another.  The slots (26) have contoured portions (16) on the in-flow side of the screening medium.  The screen plate includes a structural backing plate (14) having a plurality of openings (28) therethrough.  The screening medium (12) and the backing plate (14) lie in registration one within the other and have respective opposed surfaces in engagement with one another at an interface (15) therebetween whereby the backing plate (14) structurally supports the screening medium (12).  This screening medium (12) has a plurality of recesses (22) formed in its surface opposing the backing plate (14) at the interface thereof establishing communication between the openings (28) of the backing plate and the slots

17

(26) of the screening medium.  This configuration allows pulp to flow sequentially through the slots (26) the recesses (22) and the openings in the backing plate (28).

31.    A claim chart for claim 18 is set forth below:

| Claim 18's Limitations | J&L V-Max |
|---|---|
| 18.  A method of manufacturing a screen for use in screening for pulp, said screen being formed of a screening plate (12) and a backing plate (14), said screen plate having first and second opposite faces, comprising the steps of: |  |
| (a) forming elongated, substantially parallel grooves (26) in said first face (11), each groove having a side face and a bottom;<br><br>(b) forming openings (26(a)) through the bottom (20(a)) of the grooves in said first face and into the screening plate to terminate within the screening plate short of said second face (13) thereof;<br><br>(c) forming elongated grooves (21) in the second face of said screening plate inclined relative to the longitudinal extent of the grooves formed in step (a) and to a depth to expose the openings formed in step (b) so that |  |

| | |
|---|---|
| the openings extend entirely through said screening plate, and leave a plurality of ridges (23) in the second face spaced one from the other there-along and extending in a direction inclined relative to the longitudinal extent of said grooves. | |

32.     As shown above, the V-Max screen cylinder is manufactured to include all the elements of claim 18.  The V-Max is manufactured to include a screen for use in screening pulp and includes a screening plate (12) and a backing plate (14).  The screen plate has first (11) and second (13) opposite faces.  The screen is formed with substantially parallel grooves (26) in a first face; each groove has a side face and a bottom (20(a)).  The screen is also formed with openings (26(a)) through the bottom of the grooves (21) in the first face, into the screening plate which terminate within the screening plate short of the second face.  The grooves in the second face of the screening plate are inclined (23) relative to the longitudinal extent of the grooves formed in the first face and to a depth to expose the openings formed through the bottom of the grooves in the first face.  The result is a plurality of ridges in the second face faced one from the other there along and extending in a direction inclined relative to the longitudinal extent of the grooves.

33.    A claim chart for the relevant dependent claims is set forth below:

| Dependent Claim's Limitations | J&L's V-Max |
|---|---|
| **Claim 2's limitations:**<br><br>A screen cylinder according to claim 1,<br><br>including means for releasably connecting said screening medium (12) and said backing plate (14) one to the other. | As means for releasably connecting the screening medium and backing plate, the V-max uses a vertical wedge together with a weld to releasably secure the screening medium to the backing plate.<br><br>The V-Max's use of a vertical wedge, which is the structural equivalent of the shrink-fit method disclosed in the patent specification, and a weld, which is specifically disclosed in the specification, act as a means for releasably connecting the screening medium and the backing plate one to the other. |
| **Claim 6's limitations:**<br><br>A screen cylinder according to claim 1 wherein<br><br>said recesses (22) are formed in the surface of said screening medium (12). |  |

| | |
|---|---|
| **Claim 8's limitations:**<br><br>A screen cylinder according to claim 1 wherein<br><br>said recesses (22) extend axially more than the axial extent of said projections (24),<br><br>said openings (26) in said screening medium (12) having an extent sufficient to span in the axial direction two or more recesses (22). |  |
| **Claim 11's limitations:**<br><br>A screen plate according to claim 10 wherein<br><br>said screening medium (12) and said backing plate (14) are cylindrical and lie one within the other,<br><br><br><br><br><br>said recesses (22) extending circumferentially and substantially uninterruptedly about said one of said screening medium (12) and said backing plate (14),<br><br>said slots (26) in said screening medium (12) extending in a generally axial direction and in a direction substantially normal to the circumferential extent of said recesses (22). |  |

| | |
|---|---|
| Claim 12's limitations:<br><br>A screen cylinder according to claim 11 wherein<br><br>said slots (26) have an extent sufficient to span, continuously and without interruption, in the axial direction two or more recesses (22). |  |
| Claim 13's limitations:<br><br>A screen plate according to claim 11 wherein<br><br>said cylindrical screening medium (12) has elongated outflow slots (30) formed in the opposing surface of said screening medium (12) in radial registry with said contoured slot portions (16) and substantially coextensive therewith, reduced slots (26a) in registry with said contoured slot portions (16) and said outflow slots (30) and communicating therebetween,<br><br>said recesses (22) and said contoured slot portions (16) being formed on the inflow sides of said backing plate (14) and said cylindrical screening medium (12), respectively,<br><br>whereby pulp may flow sequentially through said contoured slot portions (16), said reduced slots (26a) and said outflow slots (30) of said screening medium (12) and then through said recesses (22) and said openings (28) of said backing plate (14). | <br><br><br><br>* The V-Max is used to screen pulp which flows through the slots, recesses and openings in the backing plate. See Gooding Dec., Ex. D. |

| | |
|---|---|
| Claim 14's limitations:<br><br>A screen plate according to claim 11 wherein<br><br> said cylindrical screening medium (12) has reduced slots in registry with said contoured slot portions (16) and in communication therewith,<br><br><br><br>said contoured slot portions (16) and said recesses (22) being formed on inflow and outflow sides of said screening medium (12), respectively,<br><br><br><br>whereby pulp may flow sequentially through said contoured slot portions (16), said reduced slots, and said recesses (22) of said screening medium and then through said openings (26) of said backing plate (14). | <br><br>* The V-Max is used to screen pulp, which flows through the slots, recesses and openings in the backing plate. See Gooding Dec., Ex. D. |

| Claim 15's limitations: | |
|---|---|
| A screen cylinder according to claim 11<br><br>including means for releasably connecting said cylindrical screening medium (12) and said cylindrical backing plate (14) one to the other. | <br><br>As means for releasably connecting the cylindrical screening medium (12) and cylindrical backing plate (14) one to the other, the V-max uses a vertical wedge together with a weld to releasably secure the screening medium and backing plate one to the other.<br><br><br><br>The V-Max's use of a vertical wedge, which is the structural equivalent of the shrink-fit method disclosed in the patent specification, and a weld, which is specifically disclosed in the specification, act as a means for releasably connecting the screening medium and the backing plate one to the other. |
| Claim 19's limitations:<br><br>A method according to claim 18 wherein<br><br>said screening plate (12) is formed of metal. | From V-Max brochure:<br><br>- All components are made from high strength stainless steel alloys<br><br>(*See* Gooding Dec., Ex. F, p. 3) |
| Claim 20's limitations: | |

| | |
|---|---|
| A method according to claim 19 including,<br><br>subsequent to steps (a), (b) and (c), hardening or plating the metal of said screening plate (12). | From V-Max brochure:<br><br>**Chrome Plating Options**<br>Four standard options are available for customer specific applications to optimize mill needs and minimize screen plating costs<br>• Thin = 75 micron<br>• Standard = 150 micron<br>• Heavy = 300 micron<br>• Extreme = 450 micron<br><br>V- MAX Chrome Thickness Selection<br><br>J&L provides for chrome plating options for its V-max (*See* Ex. F, p. 2) |
| Claim 23's limitations:<br>A method according to claim 19 including<br><br>the step of forming the screening plate (12) into a cylindrical shape to form a metal screen cylinder. | "screening plate" (12)<br><br>"metal screen cylinder" |
| Claim 27's limitations:<br>A screen cylinder according to claim 1,<br><br>wherein the screen cylinder comprises an axial length, and wherein the openings (26) in said screening medium (12) extend an axial distance substantially corresponding to at least 85% of the axial length of the screen cylinder. |  "axial length" of screen cylinder<br><br> "axial distance" of openings (26) |

25

| | |
|---|---|
| **Claim 29's limitations:**<br><br>A screen cylinder according to claim 1,<br><br>wherein the screen cylinder comprises an axial length, and<br><br>wherein said screening medium (12) utilizes 85-95% of the screen cylinder axial length. | <br><br> |
| **Claim 37's limitations:**<br><br>A screen cylinder according to claim 1,<br><br>wherein the screening medium comprises a screening plate (12) having the plurality of openings (26). |  |
| **Claim 38's limitations:**<br><br>A screen cylinder according to claim 37,<br><br>wherein the screening plate (12) includes a plurality of contoured grooves (16). | V-MAX Contour Selection<br><br>In Flow Side<br><br>plurality of contoured grooves (16)<br><br>screening plate (12) |

| Claim 39's limitations:<br><br>A screen plate according to claim 10,<br><br>wherein the screening medium comprises a screen plate (12) having the plurality of slots (30) therethrough. |  |
| --- | --- |

34.    I have reviewed the video found at www.jlfiberservices.com/resources_videolibrary.asp#, which is entitled *Screen Production Video*.  Based on my review of this video, a V-Max cylinder and other J&L materials, I have determined that J&L's V-Max uses a vertical wedge together with a weld to releasably secure the screening medium to the backing plate.  The V-Max's use of a vertical wedge, which is the structural equivalent of the shrink-fit method disclosed in the specification, and a weld, which is specifically disclosed in the specification, act as a means for releasably connecting the screening medium and backing plate.

35.    In response to AFT's First Set of Interrogatories, J&L provided Defendant's Answers to Plaintiff's First Set of Interrogatories dated May 16, 2008 and verified by J&L on May 20, 2008.  In these answers, J&L provided a chart entitled "**Preliminary Claims Chart for the U.S Reissue Patent 39,940 to Frejborg,**" which states the basis for Defendant's allegations of non-infringement.  In this chart, Defendant sets forth each limitation of each claim of the '940 Patent, and where J&L contended that a limitation of any claim was not present in its V-Max screen cylinder, it stated "**not in V-Max**" and then provided an explanation of why such a limitation was not present in the V-Max cylinder.  A true and accurate copy of Defendant's

Answers to Plaintiff's First Set of Interrogatories, including the Defendant's preliminary claim chart, is attached hereto as **Exhibit "H"**.

36.   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Declaration is true and correct.

Dated: March 13, 2009

Robert Gooding