IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

ADVANCED FIBER TECHNOLOGIES
(AFT) TRUST,

            Plaintiff,

    -against-

J&L FIBER SERVICES, INC.,

            Defendant.

Civil Action No. 07-01191 LEK/DRH

## J&L FIBER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

David R. Cross
Johanna M. Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI  53202-4497
(414) 277-5000

Edward R. Conan
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202-1355

*Attorneys for Defendant*
*J&L Fiber Services, Inc.*

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I.    SUMMARY JUDGMENT IN FAVOR OF J&L IS APPROPRIATE UNDER
      THE APPLICABLE LEGAL STANDARDS .................................................. 2

II.   CLAIMS 1, 10, 18 AND 2-5, 15, 24-25 AND 31-36 ARE INVALID AS EITHER
      ANTICIPATED BY OR OBVIOUS IN VIEW OF THE PRIOR ART ........................... 3

      A.    The Law of Patent Validity ................................................................. 3

            1.    The Standard of Anticipation Under 35 U.S.C. § 102(a) ........................... 3

            2.    The Standard of Obviousness Under 35 U.S.C. §103 ............................. 4

      B.    Claim 1 of the '940 Patent is Invalid Because it is Anticipated by the
            Johnson Screens Brochure ................................................................. 5

      C.    Claim 10 is Invalid Under 35 U.S.C. §103 Based on the Johnson Screens
            Brochure in combination with Yoshida .............................................. 9

      D.    Claims 18, 19, 20, 22 and 23 of the '940 Patent are Invalid as Anticipated
            by Yoshida ............................................................................................ 11

      E.    Dependent Claims Reciting "Welds, Rivets, Adhesives, Screws, and
            Solder" for Connecting Two Elements Together are Obvious ........................... 13

            1.    Dependent claims 2-5, 24-25, and 31 are obvious and invalid ............... 13

            2.    Dependent claims 15, and 32-36 are Obvious and Invalid ..................... 14

III.  CLAIM 25 IS INVALID UNDER 35 U.S.C. SECTION 112. ........................................ 15

IV.   J&L'S PRODUCT, THE V-MAX, DOES NOT INFRINGE THE '940 PATENT ........ 16

      A.    The V-MAX Does Not Infringe Independent Claims 1, 10, and 18 .................. 16

      B.    The V-MAX Does Not Infringe Any Claim Reciting a "Means for
            Releasably Connection," Claims 2-5, 25, and 32-35 Because It Does Not
            Have Such a "Means." ........................................................................ 17

**TABLE OF CONTENTS**
**(continued)**

Page

V.   THE UNDISPUTED MATERIAL FACTS DO NOT SATISFY THE
     STRINGENT SEAGATE REQUIREMENTS FOR WILLFUL INFRINGEMENT ...... 20

     1.   There Is No Evidence That J&L Ignored An Objectively-Defined
          Risk .......................................................................................................... 20

     2.   In addition, J&L Cannot Willfully Infringe Claims Added or
          Changed During the Reissue Prosecution Process.................................. 23

QB\8906707.3

# TABLE OF AUTHORITIES

**Page**

**Cases**

Abbott Labs. v. Sandoz, Inc.,
    532 F. Supp. 2d 996, 999-1000 (N.D.Ill. 2007)........................................................ 20

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)............................................................................................... 2

Bates v. Coe,
    98 U.S. 31, 33-34(U.S. 1878) ............................................................................... 4

Black & Decker, Inc. v. Robert Bosch Tool Corp.,
    260 Fed. Appx. 284, 291, 2008 US App. LEXIS 207 (Fed. Cir. Jan. 7, 2008) ....... 21

Canron, Inc. v. Plasser American Corp.,
    474 F. Supp 1010, 1023 (E.D. Va. 1978) .............................................................. 3

Canton Bio-Medical, Inc. v. Integrated Liner Technologies, Inc.,
    216 F.3d 1367, 1370 (Fed. Cir. 2000)................................................................... 12

Celotex Corp. v. Catrett,
    477 U.S. 317, 323 (1986)....................................................................................... 2

Cohesive Tech. v. Waters Corp.,
    543 F.3d 1351, 1374 (Fed. Cir. 2008).................................................................... 21

Constant v. Advanced Micro-Devices, Inc.,
    848 F.2d 1560, 1568 (Fed. Cir. 1988).................................................................... 3, 4

Curtiss-Wright Flow Control Corp.,
    438 F.3d 1374, 1380 (Fed. Cir. 2006).................................................................... 16

Franklin Elec. Co., Inc. v. Dover Corp.,
    No. 05-C-598-S, 2007 WL 5067678, *8 (W.D.Wis. Nov. 15, 2007)...................... 21

In re Hall,
    781 F.2d 897, 899 (Fed. Cir. 1986)....................................................................... 3

KSR Int'l Co. v. Teleflex, Inc.,
    127 S.Ct. 1727, 1745-46 (2007)............................................................................ 4, 9, 13

QB\8906707.3

## TABLE OF AUTHORITIES
### (continued)

Page

Mahurkar v. Bard,
    79 F.3d 1572, 1576 (Fed. Cir. 2001)........................................................................... 4

Malta v. Schulmerich Carillons, Inc.,
    952 F.2d 1320, 1327 (Fed. Cir. 1991)...................................................................... 19

NetMoneyin Inc. v. Verisign Inc.,
    545 F.3d 1359 (Fed. Cir. 2009).......................................................................... 8, 16

Pfizer, Inc. v. Ranbaxy Labratories, Ltd.,
    457 F.3d 1284, 1292 (Fed. Cir. 2006)...................................................................... 16

ResQNet.com, Inc. v. Lansa, Inc.,
    533 F. Supp. 2d 397 (S.D.N.Y. 2008)...................................................................... 21

In re Seagate Tech., LLC,
    497 F.3d 1360 (Fed. Cir. 2007)........................................................................ 20, 24

Wahpeton Canvas Co., Inc. v. Frontier, Inc.,
    870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).............................................................. 17

**Statutes**

35 U.S.C. § 102............................................................................................... 3, 4, 6, 7

35 U.S.C. § 103...................................................................................................... 4, 9

35 U.S.C. § 112........................................................................................................ 19

**Treatises**

3-8 Chisum on Patents § 8.06 ................................................................................. 16

5A-18 Chisum on Patents § 18.06. ......................................................................... 17

## SUMMARY OF ARGUMENT

The public has an absolute right to use and improve technology that is in the public domain – which is exactly what J&L has done with the creation of its V-MAX.  J&L has combined three elements well-know in the industrial screening industry:  (1) a cylindrical screen; (2) a frame for supporting the screen; and (3) recesses between the screen and the backing plate, which run around the circumference of the cylinder.  J&L then improved upon these elements with its own patented design feature that allows the screen to be easily disconnected from the frame allowing the screen to be replaced without the need for a new frame.  (Cross Decl., Ex. V, U.S. Patent No. 6,915,910)[1]

AFT is attempting to prevent J&L from using these design of elements, which have been known in the industry for years.  In fact, the '940 Patent was issued in an area of technology that had previously spawned dozens of patents.  For example, both flat and cylindrical screens made of perforated metal plates and other screening media appear in patents dating at least to 1918. (e.g., Cross Decl., Ex. T, U.S. Pat. No. 1,287,031)  Likewise, backing and supporting structures used to add strength to screens have appeared in patents since at least the 1920's.  (See e.g., Cross Decl., Ex. U, U.S. Pat. No. 1,615,559)  The allegedly novel and patentable aspects of the '940 patent, therefore, are at best simply well-known component parts that have been used for decades by others in the industry.

Given the simplicity of the '940 Patent and its combination of known design elements, the claims of the '940 Patent are invalid for several reasons.  Primary among those reasons is that key elements claimed in the '940 Patent were disclosed in a prior art brochure published by

---

[1] Unless explicitly stated, all references to "Cross Decl." or "Cross Declaration" within this memorandum are references to the Declaration of David R. Cross in Support of J&L's Motion for Summary Judgment filed on October 1, 2009.

Johnson Screens.  There is no genuine dispute about any material fact concerning the invalidity of these claims.  Summary judgment should be entered declaring them invalid.

Summary judgment should be granted in J&L's favor on non-infringement as well.  Even if all of the claims of the '940 Patent were valid, J&L's V-MAX does not infringe any properly construed claim of the '940 Patent.  Specifically, the V-MAX's frame is different than the "backing plate" claimed in the '940 Patent, and J&L does not use the method claimed to construct the V-MAX.

Finally, given the legitimate and reasonable invalidity and non-infringement issues before this Court, summary judgment should also be granted in J&L's favor on the issue of willfulness. As J&L has expressed to AFT over the course of the past nine years, J&L has believed from the beginning that the '940 Patent is invalid and not infringed by the V-MAX.  Under the Federal Circuit's recent <u>Seagate</u> decision, there is no willfulness where, as here, the accused infringer has reasonable invalidity and non-infringement defenses.

<u>ARGUMENT</u>

I.   <u>**SUMMARY JUDGMENT IN FAVOR OF J&L IS APPROPRIATE UNDER THE APPLICABLE LEGAL STANDARDS.**</u>

Summary judgment is appropriate when the undisputed facts show "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  To determine which facts are "material," a court must look to the substantive law on which each claim rests. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  <u>Celotex</u>, 477 U.S. at 322.  The movant, has the initial burden of showing the "absence of evidence to support the nonmoving party's" case.  <u>Celotex</u>, 477 U.S. at 325.  The

burden then shifts to the non-movant to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)) This burden cannot be met with conclusory statements by experts, arguments by lawyers or speculation, but only by admissible evidence. Id.

## II.     CLAIMS 1, 10, 18 AND 2-5, 15, 24-25 AND 31-36 ARE INVALID AS EITHER ANTICIPATED BY OR OBVIOUS IN VIEW OF THE PRIOR ART.

### A.     The Law of Patent Validity.

#### 1.     *The Standard of Anticipation Under 35 U.S.C. § 102(a).*

Invalidity by anticipation is premised upon 35 U.S.C. § 102(a).  Under 35 U.S.C. § 102(a), a person is entitled to a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."  For purposes of Section 102(a), a printed publication is a publication that is sufficiently accessible to the public interested in the art and is enabling, so that "one by examining the reference could make the claimed invention without further research or experimentation."  In re Hall, 781 F.2d 897, 899 (Fed. Cir. 1986).  Dissemination and public accessibility are the keys to the legal determination of whether a prior art reference was "published."  Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1568 (Fed. Cir. 1988).

The Section 102(a) publication bar is a legal determination based on underlying fact issues.  In re Hall, 781 F.2d at 899.  Distribution to commercial organizations without restriction on their use of the document or injunction of secrecy constitutes publication.  Canron, Inc. v. Plasser American Corp., 474 F. Supp 1010, 1023 (E.D. Va. 1978).  Evidence of routine business

practice can be sufficient to prove that a reference was made accessible before a critical date. Constant v. Advanced Micro-Devices, 848 F.2d at1568.

For purposes of novelty and anticipation under 35 U.S.C. § 102(a), the invention date is presumed to be the date an applicant files a complete patent application in the United States Patent and Trademark Office.  Bates v. Coe, 98 U.S. 31, 33-34 (U.S. 1878); Mahurkar v. Bard, 79 F.3d 1572, 1576 (Fed. Cir. 2001).  An inventor, however, can avoid a reference under 35 U.S.C. § 102(a) if the inventor can prove an earlier date of invention.  Id.  The evidence, which needs to be corroborated, must prove either a reduction to practice prior to the effective date of the reference or conception of the invention prior to the effective date coupled with due diligence from said date to a subsequent reduction to practice or to the filing of the application.  See 37 C.F. R. 1.131; Mahurkar, at 1577.

### 2.    *The Standard of Obviousness Under 35 U.S.C. §103.*

A patent claim is also invalid if the subject matter claimed would have been obvious to a person of ordinary skill in the relevant art at the time that the application was filed. 35 U.S.C. §103.  Under 35 U.S.C. §103, a patent cannot issue "when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'"  KSR Int'l Co. v. Teleflex, Inc., 127 S.Ct. 1727, 1745-46 (2007) (quoting 35 U.S.C. § 103(a)).  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  KSR, 127 S. Ct. at 1740 (emphasis added).

**B.**     **Claim 1 of the '940 Patent is Invalid Because it is Anticipated by the Johnson Screens Brochure.**

One well-known example of a screen cylinder that has the same three essential features as

the '940 patent has been sold for many years by Johnson Screens.  This Johnson Screens' screen

cylinder is depicted in a widely-distributed brochure (the "Johnson Screens Brochure") that J&L

knew about as early as the late 1990s.  (Lutz Dep. 175-76)[2]  The same brochure was also in a

collection of materials that were produced in this case by AFT.  (Earle Dep. 130-35)

The Johnson Screens Brochure discloses a screen assembly with the same essential

elements as the design claimed in the '940 patent--a screening element, a backing plate, and

recesses between the screening element and the backing plate.  An example of this Johnson

Screens design taken from the Brochure is reproduced at left, below, shown with the

corresponding Figure 1 from the '940 Patent on the right, and with reference numbers added:



[2] Copies of excepts from the depositions of Mark Lutz and Harold Earle, are attached as Exhibits W and J to the Cross Declaration filed on October 1, 2009.

QB\8906707.3

The screen assemblies depicted in both the Johnson Screens Brochure and the '940 Patent include a screening medium (12) and a backing plate (14). The screening medium (12) includes openings or grooves (16), and the backing plate (14) includes openings (28). Axially spaced projections (24) are provided between the screening medium (12) and backing plate (14), defining recesses (22) between the these two main components.

The only distinction between the screen cylinder shown in the Johnson Screens Brochure and the one shown in the '940 patent is that Brochure shows an "inflow" configuration and the '940 Patent shows an "outflow" configuration. (In the Brochure, the fluid would flow from the outside into the cylinder, and in Figure 1 of the '940 Patent the fluid would flow from the inside of the cylinder outward.) Even that, however, is a distinction without a difference. The '940 Patent itself states that it would be readily understood by a person in this field that "the arrangement of cylindrical screening and backing plates may be reversed where an inflow configuration is desired." (Col. 4 lns. 55-58) In addition, the words of key independent claims 1 and 10 are written to include either configuration.

The Brochure is an invalidating prior art reference because it was published and sufficiently accessible to the public interested in the art at the time of the invention of the '940 Patent, and it is a printed publication under 35 U.S.C. §102(a). The Brochure constitutes prior art because AFT cannot prove an earlier date of invention. The uncontroverted deposition testimony of disinterested non-party witnesses proves that the Johnson Screens Brochure was printed in August of 1989, and distributed to customers soon thereafter. (Becker Dep. 11:24-12:1)[3] The routine practice and procedure of the advertising company that prepared the Brochure was to print brochures immediately after the last

---

[3] A copy of the transcript from the deposition of Judy Becker is attached to the Cross Declaration as Exhibit K.

edits were made, and then to date the document, which in this case is August, 1989. (Becker Dep. 21:20-25)  According to the routine practice of Johnson Screens, the Brochure was distributed to the sales force almost immediately after printing.  (Flansburg Dep. 18:3-19)[4]  The Brochure was distributed both to employees and non-employee sales representatives (Flansburg Dep. 18:17-19:3)  The sales force also distributed the Brochure to end user customers. (Flansburg Dep. 19:7)

AFT cannot prove invention earlier than January of 1990 and therefore cannot antedate the Brochure as a reference.  The application for the '940 Patent's predecessor, the '072 Patent, was filed on August 16, 1990.  During prosecution of the '940 Patent, AFT submitted an affidavit under 37 C.F.R. 1.131 establishing a date of conception of the invention of January 16, 1990, and evidence of "preparation of an embodiment" on January 23, 1990.  AFT has produced no documentation that establishes an earlier date of invention.  The first named inventor, Mr. Freborg, admitted that January of 1990 was the earliest date of invention that he could swear to under oath.  (Frejborg Dep. 74:7-15)[5]  The date of the '940 "invention," therefore, did not occur until after publication of the Brochure.  It follows that the Brochure is prior art under 35 U.S.C. §102(a).

The Brochure specifically states that the screens described in the Brochure can be used for "pulp and paper … processing" (Cross Decl., Ex. H at 3), and more specifically for "pulp and paper fiber removal." (Id. at 12)  Furthermore, Johnson Screens' Global Director of Sales, an employee of the company for over 38 years, testified that Johnson Screens sold screens to the pulp and paper industry throughout his entire career in sales, since at least as early as 1976. (Flansburg Dep. 7:4-25, 9:10-14, 20:19-24)  These devices were so well known in the pulp and

---

[4] A copy of the transcript from the deposition of Charles Flansburg is attached to the Cross Declaration as Exhibit I.

paper screening industry, in fact, that employees of AFT and its predecessor, CAE, subscribed to

Johnson Screens publications and requested copies of their catalogs. (Earl Dep: 93:24-94:8;

118:7-119:11)

A prior art reference anticipates and therefore invalidates the claim of a patent when the

reference discloses "all of the limitations arranged or combined in the same way as recited in the

claim." NetMoneyin Inc. v. Verisign Inc., 545 F.3d 1359, 1367 (Fed. Cir. 2009).  The Johnson

Screens Brochure includes all of the elements of claim 1, as shown in the text of claim 1

reproduced below, annotated to include the numerical references shown in the figures above:

> 1.  A screen cylinder comprising:
>       a generally cylindrical screening medium (12) having a
> plurality of openings (16) therethrough;
>       a generally cylindrical structural backing plate (14) for
> structurally supporting said screening medium (12) and having a
> plurality of openings (28) therethrough;
>       said screening medium (12) and said structural backing
> plate (14) lying concentrically one within the other and having
> respective opposed surfaces in engagement with one another at an
> interface therebetween whereby said backing plate structurally
> supports said screening medium;
>       one of said screening medium (12) and said backing plate
> (14) having a plurality of circumferentially extending recesses (22)
> formed in its opposing surface and opening at the opposing surface
> of the other of said screening medium and said backing plate at the
> interface thereof establishing communication between the
> respective openings of said screening medium and said backing
> plate; and
>       a plurality of axially spaced projections (24) spaced one
> from the other in the axial direction defining said recesses and
> projecting radially from one of said screening medium (12) and
> said backing plate (14) at said interface;
>       the openings in said screening medium (12) being
> elongated and extending in a generally axial direction substantially
> normal to the circumferential extent of said recesses (22).

---

[5] A copy of experts of the transcript of the deposition of Frey Frejborg is attached to the Cross Declaration as
Exhibit N.

The Johnson Screens Brochure has a screening medium (2), which is the exterior slotted structure that has openings, namely the slots (16).  It has a backing plate (14), which also has openings (28).  The backing plate is positioned to support the screening medium.  The Johnson Screens' design also has projections spaced in an axial direction (24), which form recesses (22) that go around the circumference of the cylinder between the backing plate and screening medium.

It follows that the Johnson Screens Brochure has all of the elements of Claim 1, and pre-dates the earliest date of invention of the '940 Patent.  Summary judgment should therefore be entered declaring Claim 1 invalid because it is anticipated by the Johnson Screens Brochure.

### C.    Claim 10 is Invalid Under 35 U.S.C. §103 Based on the Johnson Screens Brochure in combination with Yoshida.

"The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  KSR, 127 S. Ct. at 1740.  Claim 10 of the '940 Patent  is exactly this type of combination and is invalid as an obvious combination of the Johnson Screens Brochure and U.S. Pat. No. 4,764,277, which issued in 1988 to Yoshida ("Yoshida").  (Cross Decl., Ex. Q)

Claim 10 of the '940 Patent, reproduced below, recites a screen assembly very similar to that discussed above with respect to claim 1, but further including a "contoured portion" on an inflow side of the screening medium (which is underscored in the text):

> 10. A screen plate for screening pulp flowing therethrough comprising:
>      a screening medium (12) having a plurality of slots (16) therethrough and extending generally parallel to one another, said slots (16) having contoured portions on an inflow side of said screening medium; and
>      a structural backing plate (14) having a plurality of openings (28) therethrough;
>      said screening medium (12) and said structural backing plate (14) lying in registration one with the other and having

respective opposed surfaces in engagement with ne[sic] another at an interface therebetween whereby said backing plate (14) structurally supports said screening medium (12);

one of said screening medium (12) and said backing plate (14) having a plurality of recesses (22) formed in its opposing surface and opening at the opposite surface of the other of said screening medium (14) and said backing plate (12) at the interface thereof establishing communication between the openings of said backing plate and said slots of said screening medium (12); whereby pulp may flow sequentially through said slots (16), said recesses (22) and said openings (28) in said backing plate (14).

(emphasis added)

The Johnson Screens Brochure, again, discloses all of the structural components of the claim (as shown by the numerical annotations), with the exception of slots having a "contoured portion." AFT's own expert, however, admits that the use of contours was common at least as early as the 1980's (Gooding Dep. 145:1-3; 145:25-146:1)[6] and that a person of ordinary skill in the art would have known about contours and their utility at the time of the invention. (Gooding Dep. 147:1-7)

The missing "contour" element, moreover, is clearly shown in the Yoshida reference, a patent that issued on August 16, 1988, which illustrates a screen plate with a contour on the groove in the inflow side of the screen plate, as shown in Figure 9 reproduced below:



The arrow indicates the inflow side of the screen plate 1, which receives a slurry including pulp fibers. The slot 2 has a "downstream side edge" that "is lower than the upstream side edge in the direction of flow of pulp slurry … so that leading ends of the pulp fibers flowing

-10-

over in parallel with the screen plate may easily enter the slots 2" (col. 2, lines 3 - 7), and which, therefore, includes an "inclined surface." AFT's own expert again verified that the Yoshida reference discloses a contour (Gooding Dep. 153:13) at the inflow side of the screen (Gooding Dep. 155:9 - 11).

It would have been obvious to one having ordinary skill in the art to have added contoured portions, such as those disclosed in the prior art Yoshida reference, to the slots in the Johnson Screens Brochure. Countours of this sort have long been known to facilitate leading ends of pulp fibers to enter slots in a screen plate, as suggested by Yoshida. (see Gooding Dep. 145-146) The result is a common sense combination of known elements that provides a highly predictable result. It follows that claim 10 is obvious under Section 103 and therefore invalid.

### D.    Claims 18, 19, 20, 22 and 23 of the '940 Patent are Invalid as Anticipated by Yoshida.

AFT contends that J&L infringes the method of manufacturing recited in claims 18, 19, 20, 22 and 23 of the '940 Patent. If the claims can be construed as J&L contends, however, claim 18 is invalid. Claim 18 describes three specific steps, steps (a), (b) and (c), of a method of manufacturing a "screening plate":

> 18. A method of manufacturing a screen for use in screening for pulp, said screen being formed of a screening plate and a backing plate, said screening plate having first and second opposite faces, comprising the steps of:
> (a) forming elongated, substantially parallel, grooves in said first face, each groove having a side face and a bottom;
> (b) forming openings through the bottom of the grooves in said first face and into the screening plate to terminate within the screening plate short of said second face thereof;
> (c) forming elongated grooves in the second face of said screening plate inclined relative to the longitudinal extent of the grooves formed in step (a) and to a depth to expose the openings formed in step (b) so that the openings extend entirely through said screening plate, and leave a plurality of ridges in the second face

---

[6] Excerpts from the deposition of Robert Gooding are attached to the Cross Declaration as Exhibit R.

> spaced one from the other there-along and extending in a direction
> inclined relative to the longitudinal extent of said grooves.

Claims such as claim 18 that describe a process of manufacture are infringed only if "each of the claimed <u>steps of the patented process</u>" are performed.  <u>See</u> <u>Canton Bio-Medical, Inc.</u> <u>v. Integrated Liner Technologies, Inc.</u>, 216 F.3d 1367, 1370 (Fed. Cir. 2000)(emphasis added). Proof that an end product looks similar to a product made pursuant to a patented process does not establish infringement of a method claim.  The test, rather, is whether each and every step of the patented process is performed when the product is manufactured.  <u>See</u> <u>id</u>.

The same holds true when assessing the validity of method claims.  That is, method claims are valid unless the prior art discloses, or renders obvious, each of the claimed steps of the patented process.

However, to counter the flawed infringement analysis presented by AFT, which results from comparison of the accused product to the product resulting from the claimed method, rather than comparison of the process by which the accused product is made to the claimed method steps, a corresponding analysis must be made in assessing the validity of these claims.  In other words, under AFT's view, the <u>product resulting from the claimed method</u> must be compared to the <u>prior art product</u>.

Under this analysis, the Yoshida reference anticipates claims 18, 19, 22 and 23.  As shown below, Yoshida discloses a screening plate having two opposite faces.  One face has long, parallel grooves, each with a side face and bottom, as recited in step (a) above. Openings extend through the bottoms of these grooves, as recited in step (b) above.  The second face has long grooves that extend to a depth so that the openings in (b) go entirely through the thickness of the screening plate, as recited in step (c), above.  The grooves in the second face leave a plurality of

spaced-apart ridges on the second face, and are inclined relative to the longitudinal extent of the groove.



Claim 18, therefore, is anticipated by Yoshida. It follows that summary judgment should be entered in J&L's favor declaring that claim 18 is invalid as anticipated by Yosida.

### E.   Dependent Claims Reciting "Welds, Rivets, Adhesives, Screws, and Solder" for Connecting Two Elements Together are Obvious.

The '940 Patent includes many dependent claims that recite nothing more than welds, rivets, screws, adhesives, and solder limitations and their equivalents for connecting two elements together. These claims recite "familiar elements" that are combined to "yield predictable results." KSR, 127 S.Ct at 1739. AFT's expert again admits that all of these devices are "methods of attaching one piece of metal to another" and are commonly known in the field of assembling pulp and paper screens. (Scott, page 157 line 11 -- page 158 line 2) It would have been obvious to one of ordinary skill in the art to use any of these connecting elements to connect two components together, making these dependent claims invalid.

#### 1.   Dependent claims 2-5, 24-25, and 31 are obvious and invalid.

Dependent claims 2-5, 24-25, and 31 depend from claim 1. Claim 2 recites "means for releasably connecting said screening medium and said backing plate one to the other." As set forth in J&L's Memorandum in Support of its Motion to Construe Claim Terms (Doc. No. 45), the term "means for releasably connecting" should be construed as limited to welds, rivets,

adhesives, screws, and solder, as defined in the '940 Patent, and equivalents.  Claims 3-5, 24-25, and 31 recite various combinations of welds, screws, rivets, and adhesives, in both means-plus-function and other claim language formats.

These elements are all commonly-used structures for connecting two components.  One of ordinary skill in the art, familiar with the admitted prior art described in the background section of the '940 patent (in which "rings are … secured on the … screen cylinder … by welding them circumferentially around the cylinder," Col 1, Lns 51-55) and faced with the disclosure of the Johnson Screens Brochure stating that the center pipe shown is intended to "increase collapse strength," would readily know that the two elements are intended to be connected together.  A person of ordinary skill would also know to use any of the cited elements to connect the components together.  Absolutely nothing unpredictable would occur.  The resultant combination is obvious.  It follows that summary judgment should be granted declaring claims 2-5, 24-25 and 31 invalid.

### 2.   Dependent claims 15, and 32-36 are Obvious and Invalid.

Claims 15, and 32-36 depend  from claim 10, and are formatted similarly to the dependent claims 2-5, 21-25, and 31.  Claim 15 recites "means for releasably connecting said cylindrical screening medium and said cylindrical backing plate one to the other."  Claims 32-36 more specifically recite "means" that include welds, screws, rivets, adhesives, and solders. These claims are also obvious based on the Johnson Screens Brochure and Yoshida, as explained above with respect to claim 10, and for the same reasons explained above with respect to claims 2-5, 24-25, and 31.  Summary judgment should therefore be granted declaring claims 15, 30-36 invalid.

QB\8906707.3

III.    **CLAIM 25 IS INVALID UNDER 35 U.S.C. SECTION 112.**

Claim 25 depends from dependent claim 2, which recites a "means for releasably connecting said screening medium and said backing plate."  As used in an apparatus claim, such as claims 2 and 25, a means-plus-function clause is construed to cover the corresponding structure of materials described in the specification.  To "specify a further limitation of the subject matter claimed" under 35 U.S.C. §112, claim 25 must therefore recite a structure.  Claim 25 is invalid because it fails to do so.  That is because shrink fit, as described more fully in J&L's memorandum on claim construction is a step – not a <u>structure</u> that properly limits the means-plus-function language of claim 2.  (Doc. No. 45, Ex. 2)

Claims including "shrink fit" language, in fact, had been rejected by the Examiner during the prosecution of both the '072 Patent and the '940 Patent for failing to comply with 35 U.S.C. U.S.C. § 112.  The original claims of the '072 Patent included two dependent claims, claims 5 and 16, which required "connecting means include[ing] a shrink-fit one of said screening medium and said backing plate within the other of said screening medium and backing plate."  The Examiner rejected these claims because "the process recitation 'shrink-fit' fails to structurally further limit previously recited apparatus."  (Cross Decl. Ex. C, Rejection dated September 17, 1991)  In response to this rejection, the prosecuting attorney cancelled both claims.

When the reissue patent application that became the '940 Patent was filed by AFT in 2003, more than ten years after this initial rejection, AFT filed a similar dependent claim as claim 25.  Rather than using the term "shrink fit," the claim read "wherein said connecting means includes shrink-fi<u>tting</u> one of said screening medium and said backing plate to the other."  This claim was, again, properly rejected by the Examiner, for the same reason.  The examiner stated that "the act of 'shrink-fitting' is not 'structure' for performing the 'releasably connecting'

-15-

function defined in the means-plus-function clause of claim 2." (Cross Decl., Ex. D, Rejection dated Jan. 5, 2006) In response, AFT amended "shrink fitting" to "shrink fit," the original language rejected in 1991. In explicably, the claim was then allowed.

The allowance of claim 25 is clearly an error. The Examiners of both the '072 and '940 Patents had it right the first time, when they rejected the claim. Claim 2 recites a means for performing a function, which can only be properly limited by a structural limitation. A violation of §112 for failing to identify a corresponding structure in a means-plus-function claim "renders a patent invalid just as violations of other paragraphs of §112 would." Pfizer, Inc. v. Ranbaxy Labratories, Ltd., 457 F.3d 1284, 1292 (Fed. Cir. 2006) (citing Curtiss-Wright Flow Control Corp., 438 F.3d 1374, 1380 (Fed. Cir. 2006); see also NetMoneyin Inc. v. Verisign Inc., 545 F.3d 1359 (Fed. Cir. 2009). It follows that summary judgment should be entered declaring that claim 25 is invalid.

## IV.    J&L'S PRODUCT, THE V-MAX, DOES NOT INFRINGE THE '940 PATENT.

### A.    The V-MAX Does Not Infringe Independent Claims 1, 10, and 18.

Even if the '940 Patent were valid in all respects, summary judgment should be granted in J&L's favor because the V-MAX does not infringe any properly construed claim. The V-MAX does not infringe claims 1 and 10 because it does not have a "backing plate" and does not infringe claim 18 because J&L does not practice the claimed method when manufacturing the V-MAX. These issues were discussed in detail in J&L Fiber's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and for that reason will not be readdressed here. (Docket No. 39).

It is a fundamental tenet of patent law that "[o]ne who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." 3-8 Chisum on Patents § 8.06 (citing Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870

F.2d 1546, 1552 n.9 (Fed. Cir. 1989)).   Therefore, because J&L does not infringe the only three

independent claims of the '940 Patent, J&L does not infringe <u>any</u> of the dependent claims of the

patent.

> **B.**   **<u>The V-MAX Does Not Infringe Any Claim Reciting a "Means for Releasably Connection," Claims 2-5, 25, and 32-35 Because It Does Not Have Such a "Means."</u>**

In addition, J&L's V-MAX does not infringe any of claims 2-5, 15, 25, and 32-35,

because they require a "means for releasably connecting" the screening medium and the backing

plate.  As set forth more fully in J&L's Memorandum of Law In Support of Its Motion for the

Construction of Claim Terms (Docket No. 45, Ex. 2), these claims are means-plus-function

claims.  Interpreting and applying means-plus-function claims requires a four step analysis:  (1)

determining whether a clause is a means-plus-function clause and therefore governed by Section

112 ¶ 6; (2) determining what the function is; (3) identifying the corresponding structure

disclosed in the specification that carries out that function; and (4) determining whether the

accused product contains a structure for carrying out the function that is the same or equivalent

to the corresponding structure in the patent.  5A-18 <u>Chisum on Patents</u> § 18.06.  The first three

steps are issues of law related to claim construction and have been addressed in J&L's claim

construction memorandum.  The fourth step is generally considered a question of fact, yet does

not preclude summary judgment here because there is no genuine issue of material fact regarding

the structural make up of the V-MAX.

As explained in detail in J&L's memorandum on claim construction, as properly

construed, the "means for releasably connecting" requires "a structure directly connected to two

parts and which is broken or removed to permit separation of the two parts."  Claim 2 is thus

properly construed to mean "a structure directly connected to the screening medium and the

-17-

backing plate that must be broken or removed to permit separation of the screening medium from the backing plate."

J&L's V-MAX device does not include a structure that connects the V-MAX's screen panels to the frame that must be broken or removed to separate the two pieces. Instead, the V-MAX is constructed so that a flange extending from the screen panels clips into a groove located on the frame creating an interlocking joint. This flange/groove construction is actually a patented improvement over the invention claimed in the '940 Patent because nothing needs to be broken or removed to separate the screen panels from the frame, making replacement of the screen panels easier and cheaper. (Cross Decl., Ex. V, U.S. Patent No. 6,915,910)

Specifically, the flange is an inherent part of the construction of the V-MAX's screen panels, not a separate "means." The screen panels of the V-MAX are assembled from individual long, thin metal bars called "wires," which are assembled into elongated clips that are generally U-shaped in cross-section and therefore known as "U-clips." (Lutz Decl. ¶¶9-10)[7] These U-clips are constructed with a flange extending from the top of the U. (Lutz Decl. ¶21) The U-clips include parallel slots that are sized to receive the wires. (Lutz Decl. ¶10) The wires are secured to the U-clips by elongated pins that fit through openings in the wires and are captured within the U-shaped channel of the U-clip. (Lutz Decl. ¶ 11) After the screen panels are assembled, they are inserted into a cast cylindrical frame. The screen panels are clipped to the frame by inserting flanges extending from the U-clips into grooves in the frame, and thereby creating the interlocking joint. (Lutz Decl. ¶ 23)

The U-clips are the only components that connect the screen panels to the frame in the V-

---

[7] The Lutz Declaration cited herein was filed on April 24, 2009, as Docket Number 39, exhibit 8 and is titled Declaration of Mark Lutz in Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issue of Infringement.

MAX device.  (Lutz Decl. ¶ 24)  J&L uses no additional connecting element.  Id.  The frame is

neither welded nor soldered to the screen panels.  (Lutz Decl. ¶¶ 24-26)  No rivets or screws are

used to connect the screen panels to the frame.  (Lutz Decl. ¶ 24)  Epoxy is used as a filler to fill

the space within the valley of each U-clip, but it is not used as an "adhesive," which is properly

defined as a "substance used to bond two or more solids so that they act or can be used as a

single piece," as discussed in detail in J&L's memorandum on claim construction.  (Doc. No. 45,

Ex. 2)  The epoxy placed within the valley of the U-clips does not bond the screen panels to the

frame so that they can act as a single piece.  (Lutz Dep. 225:3-15; 236-40)

　　　　Importantly, to disassemble the screen panels from the frame in the V-MAX device, the

panels are simply un-clipped from the frame by sliding the flanges of the U-clips free of the

grooves in the frame.  The U-clips do not have to be broken or removed to separate the screen

panels from the frame.

　　　　Furthermore, the U-clips are not "equivalents" of the various "means" described in the

'940 Patent (i.e., welds, solder, screws, rivets and adhesives).  See 35 U.S.C. § 112 ¶ 6.  To

prove infringement under the equivalents language of Section 112 ¶ 6, AFT has the burden of

proving "substantial identity as to each of the function, way and result prongs of the doctrine of

equivalents."  Malta v. Schulmerich Carillons, Inc., 952 F.2d 1320, 1327 (Fed. Cir. 1991).  AFT

can not satisfy this burden.  There is no genuine dispute that the V-MAX's U-clips permit

separation without being either removed or broken.  They are therefore not equivalents to the

recited means because they do not provide the required function of directly connecting the

screening element to the frame via a structure that must be broken or removed to permit their

separation.

It follows that the V-MAX does not have a "means for releasably connecting."  Summary

judgment of non-infringement should be entered for claims 2-5, 15, 25, and 32-35 of the '940

Patent.

**V.     THE UNDISPUTED MATERIAL FACTS DO NOT SATISFY THE STRINGENT
        SEAGATE REQUIREMENTS FOR WILLFUL INFRINGEMENT.**

       **1.     There Is No Evidence That J&L Ignored An Objectively-Defined Risk**

It is axiomatic that because summary judgment should be granted on invalidity and non-

infringement, there can be no willful infringement.  Even absent summary judgment of invalidity

and non-infringement, however, summary judgment should be entered dismissing AFT's claim

of willful infringement.

The Federal Circuit's recent decision in <u>In re Seagate Tech., LLC</u>, 497 F.3d 1360 (Fed.

Cir. 2007) established a new and stringent standard for proving willful infringement.  Patentees

must now prove by clear and convincing evidence that the infringer acted despite an objectively

high likelihood that its actions constituted infringement.

The Federal Circuit intentionally set a very high bar for proving "objective recklessness."

The Federal Circuit has made clear that the risk of infringement need not be "eliminated" or

required a "standing final determination" that "conclusively resolves the issue of invalidity."

<u>Seagate</u>, 497 F.3d at 1371; <u>Abbott Labs. v. Sandoz, Inc.</u>, 532 F. Supp. 2d 996, 999-1000 (N.D.Ill.

2007) ("a showing of objective reasonableness … does not require that the would-be infringer

know conclusively, i.e., with one hundred percent certainty, that his actions are legitimate.").

Rather, all that is needed to negate willfulness is a reasonable, non-reckless basis on which an

objective observer could conclude that the asserted patents could be held invalid or not infringed.

<u>Seagate</u>, 497 F.3d at 1371.  Nothing more need be shown than this minimal level of "objective

reasonableness (which negates the existence of recklessness)."  Abbott Labs., 532 F. Supp. 2d at

999-1000.

"Objective reasonableness" can be shown in any number of ways.  An accused infringer

can avoid a finding of willfulness by showing that any one of its defenses is or was reasonable,

even if they are ultimately unsuccessful at trial:

> Under this objective standard, both legitimate defenses to
> infringement claims and credible invalidity arguments demonstrate
> the lack of an objectively high likelihood that a party took actions
> constituting infringement of a valid patent.

Black & Decker, Inc. v. Robert Bosch Tool Corp., 260 Fed. Appx. 284, 291, 2008 US App.

LEXIS 207 (Fed. Cir. Jan. 7, 2008); Accord, Cohesive Tech. v. Waters Corp., 543 F.3d 1351,

1374 (Fed. Cir. 2008) ("because 'rigid' was susceptible to a reasonable construction under which

Waters's products did not infringe, there was not an objectively high likelihood that Waters's

actions constituted infringement"); ResQNet.com, Inc. v. Lansa, Inc., 533 F. Supp. 2d 397

(S.D.N.Y. 2008) (refusing to find willfulness where defendant's arguments were "substantial,

reasonable and far from the sort of easily-dismissed claims that an objectively reckless infringer

would be forced to rely upon").

J&L has set forth more than credible theories of invalidity and non-infringement.  That

J&L's non-infringement and invalidity defenses are reasonable is by itself sufficient to preclude

willful infringement:  "Given the significant support in the language of the patent, the

specification and prosecution history for defendant's non-infringement position, [the patentee]

cannot meet its burden to prove objective recklessness by clear and convincing evidence."

Franklin Elec. Co., Inc. v. Dover Corp., No. 05-C-598-S, 2007 WL 5067678, *8 (W.D.Wis. Nov.

15, 2007).

-21-

J&L has from the very beginning believed that it did not infringe any valid claim of the AFT patent.  As one veteran J&L employee explained at his deposition, J&L long believed that the AFT patent was invalid, based on the Johnson Screens Brochure and other similar designs. (Lutz Dep. 29-32; 175-76)  J&L first became aware of AFT's accusations of infringement in correspondence from CAE, AFT's predecessor-in-interest, in February of 2000.  (Wasikowski Decl., Ex. A)[8]  J&L promptly investigated the matter, and in December of 2001, after a thorough investigation, J&L informed CAE that the patent was invalid and that J&L's screen cylinders did not infringe the patent.  (Id., Ex. A, B)  J&L requested a detailed explanation and claim chart, and stated that it would consider the matter closed if it did not hear from AFT within 10 days. (Id., Ex. C)  No further correspondence was received for over a year.  Throughout this period, therefore, J&L reasonably believed that the matter was closed.

J&L first became aware that AFT did not consider the matter closed in December of 2002, when AFT accused J&L of infringing the Canadian patent that corresponds to the '072 Patent.  On January 16, 2003, J&L wrote to AFT, reiterating its belief that the matter was closed in December of  2001.  (Id., Ex. D)  In the response, J&L also provided to AFT the page of the Johnson Screens Brochure that includes the figure reproduced in Section II.B. above, in establishing invalidity of many of the claims of the '940 Patent.  J&L verified that it had confirmed with Johnson Screens that similar screening products had been produced in the past in the pulp and paper industry.  (Id., Ex. F)  J&L reasonably concluded that prior commercial use of such filtering and screening elements invalidated the patents.

AFT's response failed to differentiate the Johnsons Screens brochure from any of the independent claims of the '072 patent, the initial version of the '940 Patent.  This failure could

---

[8] All references to the Wasikowski Declaration are to the Declaration of Paul Wasikowski in Support of J&L's Motion for Summary Judgment filed on October 1, 2009.

reasonably be seen as an admission that the Johnson Screens Brochure invalidated at least the independent claims of AFT's patent.  AFT's response, rather, emphasized that "a key point in our patent … is 'means for releasably connecting said screening medium with said backing plate.'"  (Wasikowski Decl., Ex. G)  J&L, again, responded explaining that means for releasably connecting a screen with a support were known, citing another prior art reference.  In addition, J&L correctly stated "we do not use the means described in your patent (bolts, rivets, welding, or adhesives) to secure our filter screen material in place."  (Id., Ex. H)  Again, J&L reasonably believed that the independent claims of the '940 Patent were invalid, and that the remaining claims were not infringed.

AFT then waited another five years before actually starting a lawsuit on its patent.  This long delay speaks for itself as to the supposed merits of AFT's claim and the reasonableness of J&L's belief that the V-MAX does not infringe any valid claim of the '940 Patent.

### 2.      In addition, J&L Cannot Willfully Infringe Claims Added or Changed During the Reissue Prosecution Process.

On September 12, 2003, AFT filed the reissue application that became the '940 Patent. The Patent Office issued an office action in January of 2006 rejecting all of the claims.  In particular, the Examiner cited U.S. Patent 4,276,265 ("Gillespie") and described it as "structurally indistinguishable" from the claimed screen device.  (Cross Decl. Ex. D, Rejection Dated Jan. 5, 2006)

On May 5, 2006, in response to the office action rejecting the claims based on Gillespie, AFT altered the meaning of the claim terms by introducing extrinsic evidence, specifically introducing the dictionary definitions which AFT now relies upon as critical to claim construction.  (See AFT's Response No. 2 to Defendant's Interrogatory no. 2, specifically stating that the "claim limitations should be construed in accordance with … the books noted in

response to Office Action submitted during the reissue application")  An objective observer reviewing the intrinsic evidence associated with the '072 Patent, before the reissue occurred, could not have known about these references, nor expected the construction and issuance of the claims to have hinged on these definitions.  J&L, therefore, cannot willfully infringe any claim that is construed in accordance with these definitions for the same reason J&L cannot willfully infringe the new claims that did not issue until <u>after</u> AFT sued.

In addition, an objective observer, reviewing the specification and file history of the '072 Patent, would have concluded that claim 18 was directed to a manufacturing method for cutting grooves into a plate.  Indeed, AFT stated in response to an office action that a particular prior art reference that it was attempting to distinguish, Jameson et al., disclosed no "manufacturing steps . . . whatsoever" other than "the general concept of cutting the gooves."  (Cross Decl. Ex. C at 8-9, Response to Sept. 17, 1991 Office Action)  As explained above and in connection with AFT's previous motion for summary judgment, J&L does not cut any grooves in the process of manufacturing its V-MAX screens. It was therefore reasonable for J&L to believe its V-MAX would not infringe these method claims.

It follows that J&L reasonably believed that claims 1-23 of the '072 Patent were invalid or not infringed.  It therefore cannot willfully infringe any of these claims.  AFT added dependent claims 24-39 during the reissue prosecution.  J&L obviously could not and did not willfully infringe any of these claims, since these claims were not issued until after this lawsuit was filed, and ordinarily willfulness depends only on pre-litigation conduct.  <u>Seagate</u>, 497 F.3d at 1374.  It follows that summary judgment should be entered dismissing AFT's claim for willful infringement.

Dated:  October 1, 2009

Respectfully submitted,

/s/ David R. Cross
David R. Cross
Johanna M. Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI  53202-4497
(414) 277-5000

Edward R. Conan
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202-1355

*Attorneys for Defendant*
*J&L Fiber Services, Inc.*

QB\8906707.3