# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

ADVANCED FIBER TECHNOLOGIES (AFT) TRUST,　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　*Plaintiff/Counter-Defendant,*　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　　　　)　　　Civil Action No.:
　　　　　　　　　　　　　　　　　　　　　　)　　　1:07-CV-1191
J&L FIBER SERVICES, INC.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)　　　LEK/DRH
　　　　　　*Defendant/Counter-Plaintiff.*　　)
　　　　　　　　　　　　　　　　　　　　　　)
_____)


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR THE CONSTRUCTION OF CLAIM TERMS


Nicholas Mesiti, Esq.
Brett Hutton, Esq.
Alana M. Fuierer, Esq.
Shanna K. O'Brien, Esq.
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle
Albany, New York  12203
Telephone: (518) 452-5600
Facsimile:  (518) 452-5579

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iii

**INTRODUCTION** ................................................................................................ 1

**SUMMARY OF ARGUMENT** ........................................................................ 1

**BACKGROUND OF THIS CASE** ................................................................. 3

    **I.**    **History Of The Dispute And Discovery** .............................................. 3

**ARGUMENT** .......................................................................................................... 6

    **I.**    **Defendant's Request For Any New Claim Construction Should Be Denied As Untimely And Prejudicial To AFT** ................................. 6

    **II.**    **Defendant's Proposed Claim Construction Is Contrary To The Intrinsic Evidence** ................................................................................. 8

        **A.**    **The Applicable Law Regarding Claim Construction** ......................... 8

        **B.**    **Defendant's New Proposed Claim Construction** ................................. 9

            1.    AFT Has Consistently Interpreted The Term "Screening" Throughout Prosecution And This Case ....................................... 9

                i.    The Claim Term Screen Plate Is For Screening Pulp Flowing Therethrough .................................................... 10

                        a.  The Proper Construction Of "Screen Plate" As Proposed By AFT ..................................................... 11

                ii.    A "Screening Medium" Is Not A Filter Or A Flat Piece Of Perforated Metal ........................................................... 12

                        a.  A "Screening Medium" Is Not A Filtering Medium" ................................................................... 12

                        b.  As Properly Construed, A "Screening Medium" Need Not Be "Flat", And Includes A Wedgewire Screen.... 13

c.   The Proper Construction Of "Screening Medium" As Proposed By AFT ..................................................... 14

2.   The Claim Term "Backing Plate" Recited In Claim 18 Cannot Be Ignored ......................................................................... 14

3.   "Slots" And "Openings" Are Not Limited To Widths Of 0.2 mm ....................................................................................... 16

4.   The Claim Element "Means for Releasably Connecting" Does Not Require A Break Or Removal Of A Structure To Permit Separation ................................................................................. 18

5.   "A Shrink-Fit" Is Structure ......................................................... 20

6.   "A Shrink-Fit" Does Not Require Heating Or Cooling .............. 22

7.   Defendant Improperly Combines Two Definitions Into One In Defining Rivet ........................................................................... 23

8.   Defendant Improperly Reads In Additional Limitations Regarding The Claim Term "Adhesive" ...................................................... 24

**CONCLUSION** ................................................................................................. 25

# TABLE OF AUTHORITIES

*Cases:*

*Bell Communication Research, Inc. v. Vitalink Communications Corp.*,
    55 F.3d 615 (Fed. Cir. 1995)................................................................................ 8, 15

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002) ...................................... 9

*Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001)................................................................. 8

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989)................................. 21

*Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed. Cir. 1995).................................................. 8

*O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ................................................................................... 6

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir. 2005) ......................................................... 9, 20

*Pitney-Bowes, Inc. v. Hewlett-Packard, Co.*, 182 F.3d 1298 (Fed.Cir. 1999)...................... 15, 16

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336  (Fed.Cir. 2001) ............................................. 9

*Sandisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)....................... 6

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed.Cir. 2002)................................. 8

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ........................................ 8

*Vardon Golf Co. Inc. v. Karsten Mfg. Corp.*, 2002 WL 1424567 (N. D. Ill. 2002)...................... 6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed.Cir. 1996)......................................... 8

*Statutes:*

35 U.S.C. §112 ........................................................................................................................ 20

Fed.R.Civ.P. 26(a)..................................................................................................................... 5

**Introduction**

Plaintiff Advanced Fiber Technologies Trust ("AFT") respectfully opposes Defendant J&L Fiber Services, Inc.'s Motion for the Construction of Claim Terms ("Claim Construction Motion") (Docket Entry ("D.E.") 45).  Defendant's Claim Construction Motion is untimely and prejudicial to AFT.  By its motion, Defendant is asserting for the first time, two months after the close of all discovery, that nine purportedly new claim terms are in dispute and that two prior identified disputed claim terms, namely, "screening medium" and "screen plate" should be construed differently than previously requested.  Defendant is using this motion to improperly re-argue or propose changes to its previous claim construction positions asserted long ago.

AFT requested Defendant's position on claim construction for all disputed claim terms over a year and a half ago (i.e., April 2008).  Defendant admittedly never disclosed any of the purportedly nine new claim terms in dispute, and/or its support for their proposed definitions, to AFT during discovery.  Yet, now, in its recent motion, Defendant asserts that construction of these new claim terms is necessary because it is "*central* to [its] invalidity and infringement arguments."  Defendant fails to offer any explanation of why it decided to wait two months after the close of discovery to make its request or inform AFT that these new nine claim terms were in dispute.  Defendant's assertion that common everyday terms such as "opening", "slot" or "adhesive", for example, now require this Court's interpretation is not credible.  Defendant's filing of the present motion is merely a ruse to reargue and change its prior claim construction arguments for the term "screening medium" and "screen plate", in a desperate attempt to salvage its case.

**Summary Of Argument**

AFT is prejudiced by Defendant's failure to identify these "new" disputed claim terms because AFT conducted discovery, including expert and fact depositions, based upon the

disputed claim terms that Defendant identified in opposition to AFT's Motion for Partial Summary Judgment of Infringement of the '940 Patent ("AFT's Infringement Motion") and in response to AFT's interrogatories.  Accordingly, AFT respectfully requests that Defendant's Claim Construction Motion be denied as untimely and prejudicial.

In addition, the constructions proposed by Defendant are legally incorrect because they are contrary to the intrinsic evidence, including the plain language of the '940 Patent claims, the specification and prosecution history.  For example, Defendant improperly asserts a new definition for the term "screening medium" arguing that it should be construed as a "filtering medium".  However, this newly proposed definition is inconsistent with the claim language itself, which recites a "screening medium", and the other intrinsic evidence of the '940 Patent.  Also, for example, Defendant asserts that the claim terms "openings" and "slots" should be limited to "widths of 0.2 mm".  However, neither the claims, specification or the prosecution history limit these claim terms to any specific width.  Throughout its claim construction argument, Defendant characterizes its proposed definitions as the "ordinary meaning" of the terms.  However, in each instance, its purported "ordinary meaning" contradicts the plain language of the claims and understanding of those terms to people of ordinary skill in the art.  Accordingly, Defendant's Claim Construction Motion should be denied, and any claim terms raised by Defendant therein should be construed as previously set forth in AFT's Infringement Motion papers and/or herein.  A summary of AFT's proposed claim construction is set forth below:

| Claim Term | AFT's Proposed Claim Construction |
|---|---|
| "screen plate" | a perforated plate utilized on many designs of pulp screening equipment that impedes pulp flow and is instrumental in causing a separation between suspended particles on the basis of their size, shape, and/or flexibility |

| "screening medium" | a barrier with openings or perforations for passing stock therethrough, which removes oversized, troublesome and unwanted particles from good fiber |
| "rivet" | a headed pin or bolt of metal used for uniting two or more pieces by passing the shank through a hole in each piece and then beating or pressing down the plain end so as to make a second head. |
| "adhesive" | an adhesive substance (as glue or cement) |
| "opening" | something that is open |
| "slot" | a narrow opening or groove |
| "shrink fit" | an assembly of parts where one part is made smaller relative to the other |
| "means for releasably connecting" | structure and/or materials which allows the backing plate to be releasably connected to the screening medium.<br><br>The structure and/or materials include welds, adhesives, solder, rivets, shrink fit, heat fit and equivalents thereof |

**Background Of This Case**

## I.  History Of The Dispute And Discovery

AFT commenced this case on November 9, 2007 for infringement of the '940 Patent.
Declaration of Shanna K. O'Brien in Support of Plaintiff's Opposition to Defendant's Motion for
the Construction of Claims ("O'Brien Decl."), ¶2.  Defendant submitted an Answer and
Counterclaim (D.E. 12) pleading that the '940 Patent was invalid, unenforceable and not
infringed. *Id*. at ¶3.  During discovery, Defendant identified only the claim terms "backing plate"
and "screening medium" as being in dispute. *Id*. at ¶12.  AFT proceeded to conduct fact and
expert discovery, including depositions, based on the understanding that Defendant did not
dispute any other claim term in the '940 Patent.

More than a year and a half ago in April 2008, AFT served its First Set of Interrogatories
on Defendant. *Id*. at ¶5, Ex. C.  These interrogatories included requests seeking the legal and
factual basis for Defendant's allegations of invalidity and non-infringement regarding all of the
claims, including Defendant's "proposed claim construction". *Id*. at ¶¶5-6, Ex. C.  Specifically,
Interrogatory Nos. 5 and 11 request:

INTERROGATORY NO. 5:  State the legal and factual basis for Defendant's allegations of invalidity and unenforceability set forth in the Answer, including paragraphs 24 and 34 thereof, in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment, including a claim chart setting forth the limitations of each claim of the '940 Patent, **your proposed claim construction of each such limitation,** and the Prior Art or other information that you believe invalidates each claim, and state the identity and location of any documents supporting Defendant's said Affirmative Defense and Counterclaim of invalidity and unenforceability.

INTERROGATORY NO. 11:  State the legal and factual basis for Defendant's allegations of non-infringement set forth in the Answer, including paragraphs 23 and 35 thereof, in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment, including a claim chart setting forth the limitations of each claim of the '940 Patent, **your proposed claim construction of each such limitation**, and an explanation of why you contend that Defendant has not infringed, contributed to infringement of, or induced infringement of, each claim (both literally and under the doctrine of equivalents), and state the identity and location of any documents supporting Defendant's said Affirmative Defense and Counterclaim of non-infringement.

*Id*. at Ex. C (emphasis added).

Defendant responded to Interrogatory Nos. 5 and 11 on May 16, 2008, without asserting a single specific objection, by attaching a Preliminary Claim Chart. *Id*. at ¶7, Ex. D.  Defendant later supplemented its responses to Interrogatory Nos. 5 and 11 on April 23, 2009 by including a First Amended Preliminary Claim Chart. *Id*. at ¶9, Ex. E.  Neither claim chart identified any of the "new" claim terms introduced for the first time by Defendant's Claim Construction Motion as being in dispute or included any of the proposed definitions of these "new" claim terms. *See*, *id*. at Ex. D, E.

On March 13, 2009, AFT filed a Motion for Partial Summary Judgment of Infringement of the '940 Patent "(AFT's Infringement Motion") (D.E. 33). *Id*. at ¶11.  As part of this motion, AFT offered its proposed construction of certain claim terms in the '940 Patent.  *Id*. at ¶11, Ex. F.  Defendant opposed this motion on April 24, 2009 (D.E. 39) and offered its own construction for the claim terms "screening medium" and "backing plate." *Id*. at ¶12, Ex. H.  Defendant never

identified any other claim terms in dispute, including any of the "new" disputed claim terms raised in its recent request. *Id.*

On May 1, 2009, the parties exchanged initial expert reports under Rule 26(a) of the Federal Rules of Civil Procedure. *Id.* at ¶13.  Defendant submitted the Expert Report of Peter Seifert ("Seifert Report") in support of its defense of invalidity. *Id.* at ¶13, Ex. I.  In this expert report, Mr. Seifert relies on the claim construction proposed by Defendant in opposition to AFT's Infringement Motion. *Id.*  On June 15, 2009, Defendant also submitted the Expert Report of Richard Venditti on the Non-Infringement of U.S. Patent RE39,940 ("Venditti Report") in opposition to AFT's initial expert report directed to infringement.[1] *Id.* at ¶14, Ex. J.  Neither the Seifert Report nor the Venditti Report identified any of the "new" claim terms introduced for the first time by Defendant's Claim Construction Motion as being in dispute or included any of the proposed definitions of these "new" claim terms. *Id.* at ¶¶13-14, Ex. I, J.

Discovery in this case ended on August 1, 2009. *Id.* at ¶24.  On September 16, 2009, Defendant informed AFT that it intended to file a motion requesting claim construction of new terms. *Id.* at ¶17, Ex. L.  However, Defendant admitted that it "never indicated that all of the claim terms that are disputed in this case [by Defendant] have been identified" during discovery. *Id.* at Ex. L.  Five days later, on September 21, 2009, Defendant forwarded AFT a list of eleven claim terms and its proposed definitions, which included a different definition for the claim term "screening medium" than previously argued by Defendant. *Id.* at ¶18, Ex. M.  Nine of the eleven claim terms identified on September 21, 2009 were never identified in any discovery response as being "in dispute" by Defendant. *Id.*  Defendant then filed this motion on September 31, 2009, which included four additional claim terms that were not identified ten days earlier. *Id.* at ¶19.

---

[1] Defendant also designated both Mr. Seifert and Mr. Venditti as corporate representatives to testify on Defendant's behalf under Rule 30(b)(6) for invalidity. O'Brien Decl., ¶17, Ex. K

These four additional claim terms were also never identified by Defendant in any discovery response as being in dispute.  Specifically, the claim terms or new definitions that Defendant never previously identified are:

| New Claim Term or Definition | Patent Claim in Which it Appears |
| --- | --- |
| adhesive | 4, 31, 34 |
| removal of "and a backing plate" | 18 |
| means for releasably connecting | 2-5, 15 and 32-35 |
| openings | 1 |
| rivets | 7 and 31 |
| shrink-fit | 25 |
| slots | 10 |
| screen plate | 10-11, 13-17, 32-36 and 39 |
| new definition for "screening medium" | 1-8, 10-11, 13-16, 27-32, 36-37 and 39 |

## Argument

**I.   Defendant's Request For Any New Claim Construction Should Be Denied As Untimely And Prejudicial To AFT**

Defendant admits that it "never indicated that all of the claim terms that are disputed in this case have been identified [by Defendant]" during discovery. O'Brien Decl., Ex. L.  Despite this admission, Defendant now attempts, two months after the close of discovery, to identify and propose new or alternative definitions to certain claim terms.  However, this request is made over a year and a half after AFT requested identification of the same in its interrogatories. *Id*. at ¶¶5-6.  Thus, Defendant's motion requesting construction of claim terms two months after the close of discovery is untimely and prejudicial to AFT. *See*, *Vardon Golf Co. Inc. v. Karsten Mfg. Corp.*, 2002 WL 1424567, *5 (N.D. Ill. 2002) (denying motion for claim construction because the motion was untimely, unnecessary, and with no explanation why the party had waited until the trial was approaching before requesting the court to clarify claim construction); *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (upholding district court's refusal to hear claim construction arguments after the relevant cut-off dates); *O2 Micro Int'l. Ltd. v.*

*Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006) ("[E]xclusion of evidence is often an appropriate sanction for the failure to comply with [disclosure] deadlines".).

Defendant could have informed AFT of the "new" claim terms in dispute, or provided AFT with the purported support for these definitions during discovery.  However, Defendant fails to provide any explanation of why it waited two months after the close of discovery to identify claim terms that are purportedly "central" to its case.  In support of these new or alternative definitions, Defendant relies on the prosecution history of the '940 Patent.[2]  However, AFT produced the prosecution history of the '940 Patent early on during discovery on March 21, 2008. O'Brien Decl., ¶4, Ex. B.

Since Defendant failed to inform AFT that these "new" claim terms were in dispute or "central" to its defenses, Defendant has precluded AFT from conducting discovery regarding these "new" disputed claim terms.  AFT conducted discovery, including depositions of both Defendant's purported experts and corporate representatives, based on the representations made by Defendant in response to the timely discovery requests served by AFT.  Although Defendant supplemented its answers to AFT Interrogatory Nos. 5 and 11 three months before the end of discovery, it did not identify new or alternative definitions for any claim terms. *Id*. at ¶¶9-10, Ex. E.  Had Defendant identified these new claim terms earlier, AFT could have questioned Defendant's experts and other witnesses on the purportedly corresponding features present in the V-Max and/or prior art.  Since AFT can no longer do so, it is prejudiced by Defendant's new arguments and contentions.

Therefore, AFT respectfully requests that Defendant's Motion for the Construction of Claim Terms be denied in its entirety as untimely and prejudicial to AFT.

---

[2] Defendant also relies upon certain definitions from the "*McGraw Hill Dictionary*", which Defendant failed to produce or otherwise rely upon during discovery. O'Brien Decl., ¶24.

**II.    Defendant's Proposed Claim Construction Is Contrary To The Intrinsic Evidence**

In addition to being untimely and prejudicial to AFT, Defendant's proposed construction

for certain claim terms is contrary to the intrinsic evidence of the '940 Patent.

**A.    The Applicable Law Regarding Claim Construction**

The object of claim construction is to determine what sometimes terse or unfamiliar

words in patent claims mean. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001);

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  The claims of a

patent serve a public notice function by defining and limiting the patentee's statutory right to

exclude. *Markman*, 52 F.3d at 987.  The exercise of judicial claim construction serves to aid the

fact finder in understanding the scope of the patent:

> Claim construction is a matter of resolution of disputed meanings and technical
> scope, to clarify and when necessary to explain what the patentee covered by the
> claims, for use in the determination of infringement.

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

The primary sources consulted when construing a patent claim are: (i) the language of the

claim, (ii) the patent's specification, and (iii) the prosecution history of the patent. *Gart*, 254 F.3d

at 1340; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed.Cir. 1996);

*Markman*, 52 F.3d at 979-80.  These sources are called the "intrinsic evidence," as they are

publicly available for all to consult when determining the meaning and scope of a patent claim.[3]

Claim interpretation begins with the actual words of the claims. *Bell Communication

Research, Inc. v. Vitalink Communication Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995).

---

[3] A court may also receive extrinsic evidence to educate itself about the invention and the relevant technology;
although it may not use extrinsic evidence to arrive at a claim construction that is "clearly at odds with the
construction mandated by the intrinsic evidence". *Vitronics*, 90 F.3d at 1583-84.  In determining the ordinary
meaning of claim terms, the Court may freely consult dictionaries, encyclopedias, or treatises that were publicly
available at the time the patent was issued, as objective and reliable sources of the established meanings that would
have been attributed at that time to the terms of the claims by those of skill in the art. *Texas Digital Sys., Inc. v.
Telegenix, Inc.*, 308 F.3d 1193, 1202-3 (Fed.Cir. 2002).  In fact, these resources are often considered the most
meaningful in determining the ordinary meaning of claim terms. *Id.* at 1203.

Generally, the words, phrases, and terms in patent claims should receive their ordinary and accustomed meaning of the words amongst artisans of ordinary skill in the relevant art at the time of the invention. *Philips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Normal rules of usage suggest a "heavy presumption" that claim terms carry their accustomed meaning in the relevant community at the relevant time. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). In assessing the intrinsic evidence, the Court should rely upon the actual words of the claims, the patent specification, and the prosecution history. *Philips*, 415 F.3d. at 1313. Here, the intrinsic evidence resolves the construction of the claim terms. The specification of the '940 Patent and its prosecution history confirm that the terms of the claims in this case are used in accordance with their ordinary meaning to a person of ordinary skill in the art of pulp screening.

## B. Defendant's New Proposed Claim Construction

Defendant requests construction of nine claim terms and the preamble of claim 18. Out of these claim terms, only <u>two</u>, namely "screening medium" and "backing plate," were previously identified as being in dispute during discovery. However, Defendant now proposes an alternative, new definition for the term "screening medium" that it never previously proposed. Specifically, Defendant, for the first time, proposes that a "screening medium" should be construed as a "filtering medium for liquid-solid separation." However, this and all the other proposed interpretations of the claim terms by Defendant are not supported by the intrinsic evidence, namely the claims themselves, the specification and prosecution history of the '940 Patent.

### 1. AFT Has Consistently Interpreted The Term "Screening" Throughout Prosecution And This Case

Throughout the prosecution of the '940 Patent and this case, including discovery, AFT has consistently interpreted the terms "screen," "screening," and "screen plate" as used in the '940 Patent and by one of ordinary skill in the pulp treatment art.  Specifically, in AFT 's Infringement Motion papers and herein, AFT proposes these terms be defined as follows:

| | |
|---|---|
| Screen | Separation device utilizing some type of perforated barrier for removing unwanted material from a stock stream. |
| Screening | Process step involving passage of stock through some form of perforated barrier to remove oversize, troublesome and unwanted particles from good fiber. |
| Screen Plate | Perforated plate utilized on many designs of pulp screening equipment that impedes pulp flow and is instrumental in causing a separation between suspended particles on the basis of their size, shape, and/or flexibility. |

O'Brien Decl., ¶11, Ex. F, G.  *See also*, *id.* at Ex. B-29, Reply to Office Action 5/5/06 at pgs. 21-22.

In fact, these are the same definitions recognized by the Patent Office during the prosecution of the '940 Patent. *Id*. at Ex. B-29, Reply to Office Action 5/5/06 at pg. 22. Therefore, the intrinsic evidence confirms that the '940 Patent is directed to screening pulp, which is a type of solid-solid separation, rather than filtration, which involves liquid-solid separation, as proposed by Defendant.  In addition, Defendant agrees that a person of ordinary skill in the art is a person with education and experience in pulp and paper processing and screen cylinders, not filtration. *Id*. at Ex. I, Seifert Report at pg. 11; Ex. J, Venditti Report at pg. 8.

### i.     The Claim Term "Screen Plate" Is For Screening Pulp Flowing Therethrough

Defendant attempts to reargue its proposed construction of the term "screen plate" after the parties fully briefed this claim term in connection with AFT's Infringement Motion.  At that time, Defendant argued that a screen plate must be flat. *Id*. at ¶12, Ex. H.  Of course, AFT argued that such a proposed claim construction is improper, particularly since the claims recite that the

plate may be "cylindrical". *Id*. at Ex. F, G.  By its recent motion, Defendant now agrees with

AFT that a "screen plate" can be either cylindrical or non-cylindrical. *See*, Defendant's

Memorandum of Law in Support of its Claim Construction Motion ("Defendant's

Memorandum") at fn.4.  For the first time, Defendant now proposes to interpret "screen plate" in

claims 10-11, 13-17, 32-36 and 39 as "an assembly of a screening medium and a backing plate".

However, in proposing such a claim construction Defendant ignores other limitations explicitly

recited in the claims.

Claims 10-11, 13-17, 32-36 and 39 are all directed to a "screen plate for screening pulp

flowing therethrough".  Although Defendant is correct to point out that a "screen plate" recited in

these claims includes a "screening medium" and a "backing plate," the other limitations recited

in these claims cannot be ignored, including the limitation that the recited "screen plate" is

specifically used "for screening pulp flowing therethrough".[4]

### a.     The Proper Construction Of "Screen Plate" As Proposed By AFT

As discussed in AFT's Infringement Motion papers, the term "screen plate" is a specific

term in the pulp treatment art, having a specific meaning to those of ordinary skill in this art.

Even though the recited claims provide additional structure for a "screen plate," this claim term

has a well recognized meaning.  As set forth in AFT's Infringement Motion papers, a "screen

plate" is "a perforated plate utilized on many designs of pulp screening equipment that impedes

pulp flow and is instrumental in causing a separation between suspended particles on the basis of

their size, shape, and/or flexibility." O'Brien Decl., ¶11, Ex. F (D.E. 33-2 at pgs. 12-14), Ex. G

(D.E. 44 at pgs. 3-7). This definition is consistent with the plain language of the claim, the

intrinsic evidence and the understanding of one of ordinary skill in the art.

---

[4] Defendant never argued or proposed, during discovery or in its motion, that the phrase "for screening pulp flowing therethrough" is not a limitation of claim 10.

### ii.     A "Screening Medium" Is Not A Filter Or A Flat Piece Of Perforated Metal

Defendant previously proposed to define the term "screening medium" as "a screening element made of a perforated metal plate, which is a flat piece of metal" in opposition to AFT's Infringement Motion. *Id*. at ¶12, Ex. H (D.E. 39).  With its recent request, Defendant proposes a new, alternative definition for "screening medium".  Specifically, Defendant proposes that "screening medium" be defined as a "a filtering medium for liquid-solid separation" in an attempt to salvage its invalidity position.  However, neither Defendant's old or new proposed definition is supported by the intrinsic evidence of the '940 Patent.

### a.     A "Screening Medium" Is Not A "Filtering Medium"

Defendant now proposes defining "screening medium" as a filter because at least two of the purported prior art references relied upon by Defendant in support of its invalidity defense, including its primary reference the Johnson Screens Brochure, are directed exclusively to filters, not pulp screens.  Thus, in order to salvage its invalidity argument, Defendant has now chosen to change its proposed claim construction for "screening medium" to "filtering medium".  However, the intrinsic evidence, namely the claims themselves, the patent specification and prosecution history, does not support Defendant's proposed definition.

The '940 Patent is directed to screen plates and screen cylinders for use in the pulp and paper industry for screening pulp.  As recognized by the Patent Office and by those of ordinary skill in the art, screening removes particles, which are solids, from good fiber, which is also a solid.  Thus, screening is for solid-solid separation, which is a different process from filtration, which is for liquid-solid separation. *Id*. at Ex. Q, Venditti 71:16-23; Ex. P, Seifert 46:2-5.  In fact, the '940 Patent claims and specification do not mention or discuss "filtration", "filter", "filtering" or "liquid-solid separation".  The '940 Patent claims recite a "screening medium" not

"filtering medium".  Thus, Defendant's proposed construction is contrary to the plain meaning of the claims, specification and prosecution history.

The Patent Office, during prosecution, recognized that the '940 Patent was not directed to a filtration device.  For example, the Patent Examiner initially rejected the asserted claims during prosecution based on a screen for collection and distribution of process streams, i.e., a filtration device, disclosed in Gillespie. *Id*. at Ex. B-25, Non-Final Office Action 1/5/06 at pgs. 16-17.  In response, AFT's argued that the patent claims are directed to screens, screening and screen plates, which have specific meanings to those of ordinary skill in the art in the pulp treatment art. *Id*. at Ex. B-29, Reply to Office Action 5/5/06 at pgs. 21-22.  Based on AFT's arguments, the Patent Office withdrew the rejection of the claims based on Gillespie, e.g. filtration devices, and allowed the patent to issue. *Id*.  Therefore, Defendant's new proposed construction for the term "screening medium" is contrary to the specification and prosecution history of the '940 Patent.

        **b.**       **As Properly Construed, A "Screening Medium" Need Not Be "Flat", And Includes A Wedgewire Screen.**

Defendant previously argued, and its current alternative proposed claim construction for the term "screening medium" is "a screening element made of a perforated metal plate, which is a flat piece of metal."  However, this proposed construction was fully briefed by both parties in response to AFT's Infringement Motion.  Thus, the Court is invited to review AFT's Memorandum of Law (D.E. 33-2) and AFT's Reply (D.E. 44), submitted in connection therewith. *Id*. at Ex. F, G.  In short, Defendant's proposed definition is improper and inconsistent with the intrinsic evidence of the '940 Patent because, for example, Defendant's proposed interpretation is inconsistent with the ordinary meaning of the words of the claims, which recite a "screening medium" (claim 10) and a "generally cylindrical screening medium" (claim 1).  Thus, the claims themselves contradict Defendant's requirement that the medium be flat.  In addition,

the specification of the '940 Patent specifically discloses that the screening medium or plate can be made of "wedgewire," which Defendant asserts is not a "flat piece of metal". *Id*. at Ex. A, col. 11 lns. 64-65.

### c. The Proper Construction Of "Screening Medium" As Proposed By AFT

As set forth, AFT's Memorandum of Law in Support of Its Infringement Motion (D.E. 33-2) and AFT's Reply to Defendant's Opposition thereto (D.E. 44) the term "screening medium" is properly construed as "<u>a barrier with openings or perforations for passing stock therethrough, which removes oversized, troublesome and unwanted particles from good fiber</u>." *Id*. at Ex., F, G.

This claim construction covers a wedgewire screen and is consistent with the intrinsic evidence, namely, the claims, specification and prosecution history, as well as Defendant's use of the term.[5]

### 2. The Claim Term "Backing Plate" Recited In Claim 18 Cannot Be Ignored

Claim 18 specifically recites, in the preamble of the claim, a "backing plate" that defines part of the screen being manufactured.  Despite this explicit language, Defendant improperly argues that the "backing plate" is not an element of the claims, but rather irrelevant "prefatory language".  However, the inclusion of a "backing plate" in the preamble does not, as Defendant argues, "only state a purpose of the invention." *See*, Defendant's Memorandum at pg. 18.

---

[5] In fact, Defendant's own patent and published applications for the V-Max, which Defendant's Director of Product Development, who submitted a declaration in this case, Mr. Lutz is an inventor, refers to a "**wedgewire** screen media." Declaration of Nicholas Mesiti in Support of Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment on the Issue of Infringement (D.E. 44-2) ("Mesiti Decl. (D.E. 44-2)"), Ex. I. Furthermore, Defendant's sales documents and website refer to V-Max as a screen cylinder and use the term screen plate and screen media when referring to its wedgewire construction. Mesiti Decl. (D.E. 44-2), Ex. J; Declaration of Robert Gooding in Support of Plaintiff's Motion for Summary Judgment of Infringement (D.E. 33-3), Ex. D, F. Additionally, those of ordinary skill in the art at the time of the invention recognized a screen plate in the pulp treatment arts to include one made of wire bars. Mesiti Decl. (D.E. 44-2), Ex. K.

Instead, a "backing plate" is used to define the subject matter of the screen being manufactured by the claims. *Pitney-Bowes, Inc. v. Hewlett-Packard, Co.*, 182 F.3d 1298, 1305 (Fed.Cir. 1999). Thus, it cannot be ignored, as argued by Defendant.

The inclusion of a limitation in a preamble is not ignored simply because it is not included in any step in the recited method, especially when the recited element is used to define the subject matter of the claimed invention. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619-620 (Fed.Cir. 1995). Claims 18-19 and 22-23 recite a method of manufacturing a screen for use in screening for pulp and explicitly require the screen to be formed of a screening plate and a backing plate. Thus, the structure recited in the preamble including a backing plate is a limitation of the claim, which is essential subject matter.

The importance of a "backing plate" to the claimed invention is discussed in the specification of the '940 Patent. O'Brien Decl., Ex. A. The specification repeatedly refers to the screen as having a screening medium and a backing plate, and thus as an essential structure to the invention. See e.g., *id.* at Ex. A, Figs. 1-8; col. 2, lns. 11-26; col. 2, ln. 66; col. 3., ln. 4; col. 3, lns. 32-43; col. 8, ln. 48; col. 9, ln. 36; col. 10, ln. 9; col. 10, lns. 27-34. For example, the Abstract refers to a screen cylinder that includes a screening plate and a backing cylinder disposed on the outflow side of the screening cylinder. O'Brien Decl., Ex. A. The combination of a screening plate with a backing plate provides the screen plate with "substantially increased efficiency, flow capacity, and strength characteristics." *Id.* at Ex. A, col. 2, lns. 11-15. Moreover, the backing plate "enables substantially reduced replacement costs" because only the screening medium would need to be replaced, avoiding the "need to bear the costs of a wholly new screen plate when replacing the worn plate." *Id.* at Ex. A, col. 2, lns. 17-21; col. 10, lns. 27-34.

In addition, the preamble of the claim must be a claim limitation because the claim cannot be understood without the preamble. *Pitney-Bowes, Inc.*, 182 F.3d at 1305.  Without reference to the preamble, the recitation of a first face and second face of the screening plate in claim 18, for example, is meaningless. O'Brien Decl., Ex. A, col. 7, ln. 64; col. 8, ln. 2. Therefore, a backing plate as recited in claims 18-19 and 22-23 is important to define the subject matter of the claimed screen being manufactured, and not merely a purpose or intended use of the screen.

Defendant argues that AFT did not rely on a backing plate to differentiate prior art during prosecution of claim 18 before the Patent Office.  However, this fact is irrelevant to the issue of whether the preamble is a limitation of the claims.  In fact, Defendant failed to cite to any support for its argument that failing to rely on a claim limitation to differentiate the claimed invention from the prior art results in any prosecution history estoppel, disavowal or admission that the claim limitation was not part of the claim.  Therefore, Defendant's proposed construction of claim 18, which ignores the claim element "backing plate" is incorrect.

### 3.   "Slots" And "Openings" Are Not Limited To Widths Of 0.2 mm

Defendant contends that the terms "openings" in claim 1 and "slots" in claim 10 should be limited to "widths of 0.2 mm."  Defendant argues that AFT is now seeking to interpret these claim terms broader for purposes of litigation than argued during prosecution.  However, Defendant's argument borders on frivolous.

In support of its contention, Defendant provides the Court with snippets of arguments set forth by AFT during prosecution, while leaving out critical words used by AFT.  However, the actual arguments made by AFT during prosecution and the examples provided in the specification of the '940 Patent do not support Defendant's contentions.  For example, Table A-1 in column 12 of the '940 Patent specification discloses an example of a screen cylinder invention

having a slot with 0.5 mm. O'Brien Decl., Ex. A.  Thus, the specification itself  confirms that the

slots need not be 0.2 mm.  Accordingly, Defendant's proposed claim construction is contrary to

the teachings of the specification and the words of the claims themselves.

Defendant's reliance upon the prosecution history to support its position is misplaced.

During prosecution, the Patent Office rejected the claims in view of the prior art reference

Gillespie.  In response, AFT distinguished its claimed invention over Gillespie by arguing (1)

that Gillespie is clearly not disclosed as a screen plate as used in the treatment of pulp; and (2)

that the slot sizing of Gillespie, namely, 0.762 mm, further underscored how inappropriate the

Gillespie device is for screening pulp fibers. O'Brien Decl., Ex. B-29, Reply to Office Action

5/5/06 at pg. 23.  In further differentiating Gillespie, AFT stated:

> Clearly, the slot size of the Gillespie screen are quite appropriate for retaining 1/16 inch
> diameter catalyst pellets, but this slot size would be totally inappropriate for screening 50
> micron diameter pulp fibers.  As discussed above, pulp fibers have diameter less than 50
> microns (0.050 mm) and typically slot widths of 0.2 mm would be used for aspects of the
> invention.  In contrast, the Gillespie screen slots are 0.030 inches, that is 0.762 mm.  The
> slots of Gillispie are over three times the size of the slot width of the present invention.
> This difference in slot size will have a dramatic effect upon the ability of the Gillespie
> screen cylinder as such devices are known in the art of pulp treatment.

*Id*.

AFT never limited the claim terms "slots" or "openings" of the screening medium to a

width 0.2 mm.  In reciting the prosecution history, Defendant conveniently left out the entire

argument provided to the Patent Office by AFT.  Instead, Defendant selectively took portions of

certain sentences to create the impression that AFT was arguing that the slots or openings recited

in the claims had to be 0.2 mm.  For example, Defendant ignores the language where AFT stated

that pulp fibers have diameter less than 50 microns (0.050mm) and "*typically* slot widths of 0.2

mm would be used *for aspects of the invention*". *Id*. at Ex. B-29, Reply to Office Action 5/5/06 at

pg. 23.  By leaving out the word "typically" and the phrase "for aspects of the invention",

17

Defendant misleads the Court into believing that AFT characterized its invention as being limited to slots or openings of 0.2 mm in order to overcome the rejection based on Gillespie. The specific example discussed during prosecution was directed to typical slot widths for screening pulp fibers having a diameter less than 50 micron diameter.  AFT never stated that the slots or openings in the screening medium could not be more or less than 0.2 mm or could not be used to screen pulp fibers having a diameter larger than 50 micron diameter, as Defendant improperly concludes.

Therefore, the claim term "openings" in claim 1 should be interpreted in accordance with its ordinary meaning, namely, <u>something that is open</u> (*id.* at Ex. N), not as openings with widths of 0.2 mm as Defendant proposes.

### 4.   The Claim Element "Means For Releasably Connecting" Does Not Require A Break Or Removal Of A Structure To Permit Separation

Claims 2-5, 15 and 32-35 each recite a "means for releasably connecting" the screening medium and the backing plate one to the other.  Defendant contends that this "means plus function" language in these claims are limited to "structures that directly connect two parts and which are broken or removed to permit separation."  As with all of its newly identified claim terms in dispute, Defendant never disclosed this proposed definition during discovery.

In addition, Defendant's argument must be rejected because it ignores, and is contrary to the plain language of the claims which recites "means for releasably connecting said screening medium and said backing plate to one another".  No where does the claim recite breaking or removing structure to permit separation.

In support of this interpretation, Defendant appears to rely upon the specification of the '940 Patent.  In so doing, however, Defendant jumps around the specification pointing out different embodiments describing the combination of heat-shrinking and welding, riveting,

soldering and gluing.  However, Defendant completely ignores other portions of the specification describing preferred embodiments of the invention that do not require the breaking or removal of a structure to permit separation of the screening medium and the backing plate, such as, for example the releasing engagement of opposing surfaces of the screening medium and the backing plate.

The specification of the '940 Patent discloses a shrink-fit, without the use of welds, rivets, solder, or glue, to releasably connect the screening medium and the backing plate.  As one example, the '940 Patent states:

> In this manner, once the screening plate and backing plate are rolled into cylinders, the cylinders may be heat-shrunk one onto the other, as previously described.  Additional welds or other securing means, such as solder, rivets or glue, ***may be provided*** to secure the screening cylinder and backing cylinder one to the other.

O'Brien Decl., Ex. A, col. 11, lns. 28-34 (emphasis added).

The '940 Patent describes further preferred embodiments, which Defendant completely ignored, directed to "shrink-fitting the cylinders into engagement one with the other" (*id*. at Ex. A, col. 6, lns. 51-52) or "inserting one cylinder within the other cylinder, shrink-fitting the cylinders into engagement one with the other whereby the backing cylinder structurally supports the screening cylinder" (*id*. at Ex. A, col. 6, lns. 62-65).  Neither of these preferred embodiments discusses the need for or use of any welds, rivets, or glue, or the requirement that any structure be broken or removed, as Defendant argues.  Therefore, Defendant's proposed interpretation of "means for releasably connecting" to require a break or removal of a structure ignores all of the corresponding means disclosed in the specification and is, thus, contrary to the teaching of the specification.  Since the connection between the screening medium and backing plate does not require welds, rivets or glue, the "means for releasably connecting" these two claim elements cannot be interpreted as requiring structure to be broken or removed to permit separation.

Rather, "means for releasably connecting said screening medium and said backing plate to one another" should be interpreted as <u>structure and/or materials which allows the backing plate to be releasably connected to the screening medium</u>.  Under section 112, paragraph 6, a means plus fuction claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. 35 U.S.C. §112, ¶6.  Accordingly, <u>the structure and/or materials include welds, adhesives, solder, rivets, shrink fit, heat fit and equivalents thereof</u>.

### 5.    "A Shrink-Fit" Is Structure

Defendant improperly requests, that the Court decide an issue relating to the validity of a means-plus-function limitation. *Phillps*, 415 F.3d at 1327 (noting that claims should be construed to preserve their validity and that the Federal Circuit does not endorse a regime in which validity analysis is a component of claim construction).  Specifically, Defendant argues that a "shrink-fit" cannot be a "means for releasably connecting" as recited in claim 25 because it cannot be construed as a structure corresponding to the "means" claimed.  Instead, Defendant argues that "shrink-fit" is a "thermal *process*."  However, this issue is not a claim construction issue, but rather an invalidity issue under 35 U.S.C. §112, ¶2.[6] *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989).  Defendant is attempting to disguise this issue as a claim construction issue to avoid its failure to timely and properly assert this defense during discovery because Defendant never asserted this basis to invalidate claim 25 during discovery.[7] Accordingly, this purported defense, as set forth in AFT's Opposition to Defendant's Motion for Summary Judgment, should be stricken.

---

[6] Defendant acknowledges this point by the inclusion of this very same argument in its Motion for Summary Judgment directed to invalidity filed on October 1, 2009.
[7] Defendant included section 112 defense in paragraph 24 of its Answer and Counterclaim (D.E. 12) and AFT timely requested all legal and factual basis relating to the allegations in this paragraph in Interrogatory No. 5 served during discovery over a year and a half ago. O'Brien Decl., ¶5

Even if this purported defense is not stricken, Defendant's argument is non-sensical because a shrink-fit includes structure.  Defendant is improperly proposing to interpret "a shrink-fit" as the verb (or process) of "shrink-fitting," despite the fact that claim 25 recites a noun, i.e., "a shrink-fit."  Defendant does not argue, on the other hand, that the releasably connecting means of "a weld" in claim 2 or "solder" in claim 5 or "rivet" in claim 7 should be interpreted as the verbs "welding," "soldering" or "riveting," even though each of these structures requires a process to accomplish the connection.  Even considering the noun portion of Defendant's proposed definition, a "shrink-fit" involves "a tight *fit* between mating inner and outer parts" of the screening medium and the backing plate.  The plain language interpretation of the term "fit," as a noun, is the "degree of closeness between surfaces in an assembly of parts." O'Brien Decl., Ex. N.  Thus, the structure of a "shrink-fit" refers to the engaged opposing surfaces of the screening medium and backing plate.  The opposing surfaces of the screening medium and backing plate are structures that directly "connect two parts."

The Patent Office already disagreed with Defendant's position by allowing claim 25 to issue in the '940 Patent when AFT specifically amended this claim during prosecution to recite "a shrink-fit" as opposed to the verb/action "shrink-fitting." O'Brien Decl., Ex. B-8 at pg. 7; Ex. B-25 at pg. 8; Ex. B-30 at pg. 7.  During prosecution, the Patent Office rejected a number of proposed claims defining the "means for releasably connecting" the screening medium and the backing plate on to the other to include "welding", "soldering", "gluing", and "shrink-fitting". *Id* at Ex. B-25 at pgs. 6-8.  According to the Patent Office, these proposed claims were indefinite because the act of, for example, "shrink-fitting", is not "structure" for performing the "releasably connecting" function. *Id* at Ex. B-25 at pg. 8.  In response, AFT amended this claim to recite "a shrink-fit".  *Id* at Ex. B-30 at pg. 7.  The Patent Office accepted this amendment and allowed

claim 25.[8] *Id* at Ex. B-46.  As a result, the Patent Office already rejected Defendant's proposed

interpretation of this claim and recognized that "a shrink-fit" is structure.

Therefore, "a shrink-fit" in claim 25 properly recites structure for the "means for

releasably connecting" limitation and is not indefinite.

### 6.   "A Shrink-Fit" Does Not Require Heating Or Cooling

Defendant contends that the term "shrink-fit" should be construed as a thermal process to

include heating and cooling.  In support of this definition, Defendant relies on a definition

purportedly found in the *McGraw Hill Dictionary*, which was <u>not</u> provided during discovery.

O'Brien Decl., ¶24.

AFT agrees with Defendant that the term "shrink-fit" should be defined according to its

ordinary meaning by one of ordinary skill in the art.  However, Defendant never provided any

evidence that one of ordinary skill in the art agrees with its proposed definition from the

*McGraw* dictionary.  Based on the dictionary that AFT disclosed and produced to Defendant

during discovery, the term "shrink" is defined as "to become smaller or more compacted" and

the term "fit" is defined as "the degree of closeness between surfaces in an assembly of parts".

*Id*. at Ex. N.  Thus a shrink-fit is <u>an assembly of parts where one part is made smaller relative to

the other part</u>.  This definition is consistent with the definition provided by Dr. Gary Scott, a

Professor at the State University of New York, College of Environmental Science Forestry, and

Chair of the Department of Paper and Bioprocess Engineering.  Specifically, Mr. Scott defined

"shrink-fit" as a mechanical engagement by either stressing one part or both parts to make the

engagement. O'Brien Decl., Ex. O, Scott 68:5-9.  Mr. Scott further explained that a heat-fit is

---

[8] The U.S. Patent Office also allowed the other claims based on AFT's amendment to recite the nouns "weld," "solder" and "adhesive", rather than the verbs "welding", "soldering", and "gluing". O'Brien Decl., Ex. B-8 at pg. 3; Ex. B-25 at pg. 6; Ex. B-30 at pg. 4; Ex. B-46.

one type of shrink fit and that another type would be to essentially mechanically expand one part

and let it relax to fit the other part of the assembly. *Id*. at Ex. O, Scott 67:9 – 68:4.

AFT's proposed definition is also consistent with the specification of the '940 Patent.  As

Defendant correctly points out, the specification of the '940 Patent uses the words "shrink-fit"

and "heat-shrink."  In describing certain embodiments of the invention, the '940 Patent refers to

a "heat-shrink."  AFT never disavowed or limited the definition of "shrink-fit" in the

specification or the prosecution history to only a method of heating and cooling as proposed by

Defendant.  Based on the definition provided by one of ordinary skill in the art during discovery,

the term "shrink-fit" should be defined as "<u>an assembly of parts where one part is made smaller

relative to the other part</u>".

### 7.   Defendant Improperly Combines Two Definitions Into One In Defining Rivet

In proposing a construction for the term "rivets" recited in dependent claims 7 and 31,

Defendant combines the dictionary definitions of the term "rivet" and "riveting" to arrive at

"fasteners each with a short rod having a head at one end and an opposite end formed into a

second head to produce a *permanent joining* of two or more parts."  In support of this definition,

Defendant relies on a definition purportedly found in the *McGraw Hill Dictionary*, which was

not provided during discovery. O'Brien Decl., ¶24.  However, dependent claims 7 and 31 recite

"rivets" as a means for *releasably connecting* said screening medium and said backing plate.

Therefore, Defendant's proposed definition that a "rivet" produce a "permanent joining" is

contrary to the plain language of the claim.

AFT agrees with Defendant that the term "rivet" should be defined according to its

ordinary meaning.  Based on the dictionary definition that AFT disclosed and produced to

Defendant during discovery, the term "rivet" is defined as "<u>a headed pin or bolt of metal used for

uniting two or more pieces by passing the shank through a hole in each piece and then beating or pressing down the plain end so as to make a second head." *Id*. at Ex. N.

### 8.   Defendant Improperly Reads In Additional Limitations Regarding The Claim Term "Adhesive"

Defendant contends that the term "adhesive" recited in claims 4, 31 and 34 should be interpreted as "a substance used to bond two or more solids so that they act or can be used as a single piece." In support of this definition, Defendant relies on a definition purportedly found in the *McGraw Hill Dictionary*, which was not provided during discovery. *Id*. at ¶24. However, Defendant's proposed definition for the term "adhesive" is not supported by the plain language of the claims or the specification of the '940 Patent. Specifically, the '940 Patent does not disclose that an "adhesive," by itself, is used to releasably connect the backing plate with the screening medium, as implied by Defendant's proposed definition. For example, claims 2 and 4 recite:

> Claim 2:    A screen cylinder according to claim 1 including means for releasably connecting said screening medium and said backing plate one to the other.
>
> Claim 4:    A screen cylinder according to claim 2, wherein said means for releasably connecting includes an adhesive.

According to the plain language of the claims, the "adhesive" is recited as a part of the releasably connecting means recited in claim 4. The inclusion of the word "includes" in claim 4 supports this interpretation. There is no recitation or requirement in the asserted claims that the "adhesive" actually, by itself, does the uniting or forms the bond between the two pieces.

The specification of the '940 Patent further supports AFT's interpretation. For example, the '940 Patent states:

> In this manner, once the screening plate and backing plate are rolled into cylinders, the cylinders may be heat-shrunk one onto the other, as previously described. Additional welds or other securing means, such as solder, rivets or glue, ***may be provided*** to secure the screening cylinder and backing cylinder one to the other.

*Id*. at Ex. A, col. 11, lns. 28-34 (emphasis added).  By its proposed definition of the term
"adhesive," Defendant attempts to improperly read additional limitations into the claim by
requiring that the adhesive is used to "bond two or more solids so that they act or can be used as
a single piece."  Specifically, Defendant is trying to re-write the claims including the word
"adhesive" to require that the releasably connecting means "is" an adhesive, rather than just
"including" an adhesive.

AFT agrees with Defendant that the term "adhesive" should be defined according to its
ordinary meaning.  Based on the dictionary definition that AFT disclosed and produced to
Defendant during discovery, the term "adhesive" is defined as "an adhesive substance (as glue or
cement)". *Id*. at Ex. N.

**Conclusion**

Based upon the foregoing, AFT respectfully requests that Defendant's Motion for the
Construction of Claim Terms be stricken as untimely and prejudicial to AFT.  Should the Court
decide to accept Defendant's proposed motion, AFT respectfully requests that the Court adopt its
proposed construction of the claim terms.

Respectfully submitted,

Dated: October 20, 2009          /s/ Nicholas Mesiti
                                 Nicholas Mesiti, Esq.
                                 Brett Hutton, Esq.
                                 Alana M. Fuierer, Esq.
                                 Shanna K. O'Brien, Esq.
                                 HESLIN ROTHENBERG FARLEY & MESITI P.C.
                                 5 Columbia Circle,
                                 Albany, New York 12203-5160
                                 Telephone: (518) 452-5600/Fax:  (518) 452-5579
                                 *Attorneys for Plaintiff*