IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

ADVANCED FIBER TECHNOLOGIES
(AFT) TRUST,

              Plaintiff,

              -against-

J&L FIBER SERVICES, INC.,

              Defendant.

Civil Action No. 07-01191 LEK/DRH

## J&L FIBER'S MEMORANDUM OF LAW IN OPPOSITION TO AFT'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY

David R. Cross
Johanna M. Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI  53202-4497
(414) 277-5000

Edward R. Conan
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202-1355

*Attorneys for Defendant*
*J&L Fiber Services, Inc.*

# TABLE OF CONTENTS

**Page**

I.   The Johnson Screens Brochure is invalidating prior art.........................................2

    A.   The Johnson Screens Brochure is Invalidating Prior Art to the '940 Patent.................................................................................................3

    B.   The Johnson Screens Brochure Discloses a Screen Assembly with All of the Elements of Claim 1 ...........................................................5

    C.   The Johnson Screens Brochure Discloses  A Screening Medium "In Engagement With" a Backing Plate.................................................7

II.  The General Welding Purchase Order is Prior Art to the '940 Patent .................9

    A.   The Drawing Referenced in the Purchase Order Was Authenticated........9

    B.   The General Welding Purchase Order Reflects A Commercial Offer For Sale ...................................................................................10

    C.   The Purchase Order Anticipates Claim 1 of the '940 Patent...................12

III. The PIMA Article IS INVALID PRIOR ART ................................................14

IV.  Brewster and Yoshida ARE INVALIDATING PRIOR ART ...........................15

V.   New Wave Article IN INVALIDATING PRIOR ART ....................................15

## SUMMARY OF ARGUMENT

AFT's U.S. Patent RE 39,940 (the "'940 Patent") discloses a simple combination of: (1) a screen; (2) a frame for supporting the screen; and (3) recesses between the screen and the frame. Each of these design elements have been used in the field of industrial screening for a very long time. The claims of the '940 Patent, therefore, are invalid for several reasons. Primary among them is that key elements claimed in the '940 Patent were disclosed in many prior art references before the application that became the '940 Patent was even filed.

J&L has located a number of documents that illustrate just how ubiquitous the allegedly novel device disclosed in the '940 Patent is. Specifically, documentary evidence shows that key elements claimed in the '940 Patent were disclosed in a prior art brochure published by Johnson Screens before the patent application was filed; key elements claimed in the '940 Patent were sold by Johnson Screens over ten years before the filing date of the '940 Patent; and other industry publications illustrate many of the key elements of the '940 Patent.

Rather than providing any substantive proof of structural distinctions between these cited references and the '940 Patent, AFT seeks instead to eliminate the references from consideration altogether by challenging proven dates and distribution data, and to improperly differentiate the prior art references based on functional limitations that do not even appear in the '940 Patent's claims.

## ARGUMENT

## I.   THE JOHNSON SCREENS BROCHURE IS INVALIDATING PRIOR ART

AFT admits that it cannot prove a date of invention prior to January 23, 1990, well after the Johnson Screens Brochure was printed and published. The date of "invention" of the '940

Patent, therefore, did not occur until well after Johnson Screens published its Brochure.  AFT incorrectly contends, however, that J&L cannot prove that the Johnson Screens Brochure is a printed publication.  Remarkably, AFT also contends that the Johnson Screens Brochure does not disclose a "screen," and further that the Johnson Screens device does not disclose a backing plate "in engagement with" a screening medium.  There is, however, more than ample proof to get to the jury that the Johnson Screens Brochure is a legitimate invalidating reference to the '940 Patent.  Indeed, as explained in connection with J&L's motion for summary judgment, the Brochure invalidates the '940 Patent as a matter of law.  (Docket No. 50.)

> **A.** **The Johnson Screens Brochure is Invalidating Prior Art to the '940 Patent.**

Under 35 U.S.C. § 102(a), a person is entitled to a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."  For purposes of Section 102(a), a printed publication is a publication that is sufficiently accessible to the public interested in the art and is enabling, so that "one by examining the reference could make the claimed invention without further research or experimentation."  In re Hall, 781 F.2d 897, 899 (Fed. Cir. 1986).

The statutory phrase "printed publication" means that before the critical date (in this case, before the date of invention, which cannot be earlier than January 16, 1990) the reference was accessible to the public interested in the art; dissemination and public accessibility are the keys to the determination whether a prior art reference was "published."  Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1568 (Fed. Cir. 1988) (citing In re Hall, 781 F.2d 897, 899, 228 USPQ 453, 455 (Fed. Cir. 1986); In re Wyer, 655 F.2d 221, 226-27, 210 USPQ 790, 794-95 (CCPA 1981).  A reference is deemed "publicly accessible" upon "a satisfactory showing that

the document has been disseminated or otherwise made available to the extent that persons

interested and ordinarily skilled in the subject matter or art exercising reasonable diligence can

locate it and recognize and comprehend therefrom the essentials of the claimed invention."

Bruckelmeyer v. Ground Heaters, Inc., 445 F.3d 1374, 1378 (Fed. Cir. 2006).  Evidence of

routine business practice can be sufficient to prove that a reference was made accessible before a

critical date.  Id. (citing In re Hall, 781 F.2d at 899, 228 USPQ at 455).  Accessibility goes to the

issue of whether interested members of the relevant public could obtain the information if they

wanted to.  Courts have repeatedly held that distribution to commercial companies without

restriction clearly constitutes publication.  Mass. Institute of Tech. v. AB Fortia, 774 F.2d 1104,

109 (Fed. Cir. 1985).

There is more than ample evidence here to show: (1) that the Johnson Screens Brochure

was printed in August of 1989; and (2) that the Johnson Screens Brochure was publicly

disseminated in August of 1989.  Uncontroverted video deposition testimony of two disinterested

non-party witnesses, located in Minneapolis MN, Judith Becker from the Risdall Advertising

Agency (the advertising agency that produced the Johnson Screens Brochure and who handled

dating the brochure) and Charles Flansburg (the Global Manager of Sales at Johnson Screens)

proves that the Johnson Screens Brochure was printed in August of 1989 and distributed to

customers immediately thereafter.  (Cross Decl., Ex. K, p. 11 ln. 24 - p. 12 ln. 1.)  Ms. Becker

testified that the routine practice and procedure of the Risdall Agency was to date brochures for

Johnson Screens right after the last changes were made, and then to print the brochure.  (Cross

Decl., Ex. K, p. 21, lns. 20 - 25.)  She explained that the "IS0889" designation on the last page of

the brochure means it was printed and published in August of 1989.  (Cross Decl., Ex. K, p. 6, ln.

8 – p. 7, ln. 12.)  Mr. Flansburg from Johnson Screens testified that his company's practice was

to print at least 1,000 copies of brochures.  (Cross Decl., Ex. I, p. 17, lns. 17 – 19.)  Hundreds of copies of the Brochure at issue here were therefore distributed to the Johnson Screens sales force almost immediately after printing.  (Cross Decl., Ex. I, p. 18, lns. 3 - 19.)  The Brochure was distributed both to employees and non-employee sales representatives.  (Cross Decl., Ex. I, p. 18, ln. 17 - p. 19 ln. 3.)  The Johnson Screens sales force also distributed the Brochure to end user customers.  (Cross Decl., Ex. I, p. 19, ln. 7.)  The Johnson Screens Brochure, in fact, was so widely distributed, that the Brochure was retained in AFT's own files.  (Declaration of David R. Cross In Opposition To AFT's Motion For Summary Judgment of Validity ("Supp. Cross Decl."), Ex. C at 128-35.)

The uncontroverted sworn video deposition testimony of two disinterested witnesses, therefore, proves that the Brochure was accessible to the public interested in the art almost immediately upon printing in August of 1989.  These video depositions can be used at the time of trial because Ms. Becker and Mr. Flansburg are not employed by J&L, live in Minneapolis, which is more than 100 miles from Albany, N.Y., and their attendance at the time of trial could not be procured by subpoena.  FED. R. CIV. P. 32(a)(4)(b)  Where, as here, accessibility is proved, there is no additional requirement to show that particular members of the public actually received the information.  Constant v. Advanced Micro- Devices, Inc., 848 F.2d 1560, 1569 (Fed. Cir. 1988).  It follows that the Johnson Screens Brochure is prior art to the '940 Patent.

**B.      The Johnson Screens Brochure Discloses a Screen Assembly with All of the Elements of Claim 1.**

The Johnson Screens Brochure is an invalidating reference because it discloses a screen assembly with the same essential elements as the design claimed in the '940 patent—a screening element, a backing plate, and recesses between the screening element and the backing plate.  An example of this Johnson Screens design taken from the Brochure is reproduced at left, below,

shown with the corresponding Figure 1 from the '940 Patent on the right, and with reference

numbers added:



The screen assemblies depicted in both the Johnson Screens Brochure and the '940 Patent

include a screening medium (12) and a backing plate (14). The screening medium (12) includes

openings or grooves (16), and the backing plate (14) includes openings (28). Axially spaced

projections (24) are provided between the screening medium (12) and backing plate (14),

defining recesses (22) between the these two main components.

AFT mistakenly seeks to differentiate the '940 Patent from the Johnson Screens Brochure

by characterizing the devices disclosed in the Johnson Screens Brochure as "filters" as opposed

to "screens." The Johnson Screens Brochure, however, specifically describes the products listed

for sale as "screens." Almost every page of the Brochure includes a reference to a screen. The

Brochure, moreover, specifically states that the screens can be used for "pulp and paper . . .

processing," and more specifically for "pulp and paper fiber removal." (Cross Decl., Ex. H, p. 3,

12.) In deposition testimony, Johnson Screens' Charles Flansburg (Cross Decl., Ex. I, p. 7, lns.

23-25), an employee of the company for over 38 years (Cross Decl., Ex. I, p. 7, lns. 4-5),

testified that Johnson Screens sold screens to the pulp and paper industry throughout his entire career in sales (Cross Decl., Ex. I, p. 20, lns. 19-24), since at least as early as 1976 (Cross Decl., Ex. I, p. 9, lns. 10-14).

The only characteristic that AFT has ever relied upon to differentiate devices that "are used to remove material from a stock stream to separate the accept and reject portions of pulp" from those that are not is slot width, e.g., the width of the slots in the screening medium.  In particular, during prosecution of the '940 Patent, AFT differentiated prior art having a .762 mm slot width as inappropriate for use in the pulp treatment art, and clearly indicated that "the invention," i.e., a device used in the pulp treatment art, included a width of .2 mm.  (Cross Decl., Ex. G, p. 22.)  The '940 Patent itself discloses two exemplary slot widths of .2 mm (Cross Decl., Ex. A, col. 12, lns. 21–21) and .5 mm (Cross Decl., Ex. A, col. 12, ln. 5).

Based on AFT's own analysis of the characteristics that differentiate "pulp" screens from other types of devices, the Johnson Screens Brochure clearly discloses "screens" that "are used to remove material form a stock stream to separate the accept and reject portions of pulp." Specifically, page 14 of the Johnson Screens Brochure lists an entire range of available slot widths, varying from .002 inches (.05 mm) to .020 inches (.51 mm), thereby including the entire range of slot widths disclosed in the '940 Patent, and encompassing devices that are suitable for pulp screening.  The screen shown on page 8 of the Johnson Screens Brochure that includes a backing plate construction, moreover, is also shown on page 4, where it is described as a "Wire-Base Construction."  This construction has a minimum slot width of .4mm—again, within the range defined by AFT as useful "for use in the pulp treatment art."

In addition, the Johnson Screens Brochure anticipates claim 1 of the '940 Patent regardless of its function.  "The absence of a disclosure relating to <u>function</u> does not defeat a

finding of anticipation. It is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable." In re Schreiber, 178 F.3d 1473, 1478 (Fed. Cir. 1997) (internal citations omitted). Accordingly, AFT's contention that the structure claimed in the patent is to be used for a specific function does not make the patent valid if the structure is already known, regardless of whether it has ever been used in any way in connection with the function disclosed in the patent. See id.

Furthermore, the burden of proof for showing that the claimed invention differentiates from the prior art is not on J&L, but rather on AFT. The choice "to define an element functionally, i.e., by what it does, carries with it a risk." In re Schreiber, 128 F.3d at 1478. Where, as here, there is "reason to believe that a functional limitation asserted to be critical for establishing novelty in the claimed subject matter may, in fact, be an inherent characteristic of the prior art" the burden shifts to the "applicant to prove that the subject matter shown to be in the prior art does not possess the characteristic relied on." Id. (citing In re Hallman, 655 F.2d 212, 215, 210 USPQ 609, 611 (CCPA 1981); In re Ludtke, 441 F.2d 660, 663-64, 169 USPQ 563, 565-67 (CCPA 1971)).

It follows that once a *prima facie* case of anticipation is established, the burden shifts to AFT (the applicant) to show that the prior art structure did not inherently possess the functionally defined limitations of his claimed apparatus. Id. (citing In re Spada, 911 F.2d at 708, 15 USPQ2d at 1658; In re King, 801 F.2d 1324, 1327, 231 USPQ 136, 138-39 (Fed. Cir. 1986); In re Best, 562 F.2d 1252, 1254-55, 195 USPQ 430, 433 (CCPA 1976)). AFT cannot meet this burden. Its motion for summary judgment should be denied.

C.   **The Johnson Screens Brochure Discloses A Screening Medium "In Engagement With" a Backing Plate.**

AFT's argument that the Johnson Screens Brochure does not disclose a screening medium "in engagement with" a structural backing plate is equally untenable.  One flaw in this argument is AFT's contention that the claim term "in engagement" means that the screening medium and backing plate are "connected."  The construction of the term "engagement" to require a "connection," however, is not supported by the language of the claims, or the specification of the '940 Patent.  The claims cannot be read to require a connection having any particular structure, or a visible structure, as AFT contends.

In the specification of the '940 Patent, the term "engagement" is used only with the description of a "shrink fit" process.  (Cross Decl., Ex. A, col. 6, lns. 51–52; col. 6 lns. 63–64.)  The shrink fit process results in a construction in which "the inside diameter of the backing plate 14 is formed slightly smaller than the outside diameter of the screening plate 12."  After the shrink fit process, the screening medium is "in engagement with" the backing plate "whereby the backing plate structurally supports the screening medium."  (Cross Decl., Ex. A, col. 5, lns. 49–51; col. 5, ln. 65–col. 6, ln. 1; claims 1 and 10.)

As described in the specification, the shrink fitting process does not require the elements to be connected, but only "may be . . . sufficient to secure the plates one to the other."  The plates are not actually secured or "connected" until after the shrink fitting process, when the plates are secured one to the other "by welding."  (Cross Decl., Ex. A, col. 3, lns. 27–30.)  The "engagement," e.g., the "shrink fit," rather, is described throughout the specification as a first step, which is then supplemented with securing elements, such as a weld, screw, adhesive, solder, or rivet.  (*See* Cross Decl., Ex. A, col. 3, lns. 5-7; *see also* Cross Decl., Ex. A, col. 3, lns. 28-30 ("secured one to the other by welding"); Cross Decl., Ex. A, col. 9, lns. 9-12 ("finally

secured . . . by welding, although rivets, screws, adhesives, solders or the like may be used");
Cross Decl., Ex. A, col. 10, lns. 24-26 ("finally secured, for example, by welding, riveting,
soldering or gluing"); Cross Decl., Ex. A, col. 11, lns. 30-33 ("Additional welds or other
securing means, such as solder, rivets, or glue, may be provided to secure the screening cylinder
and backing cylinder one to the other.").  It follows that these securing elements cannot be
construed as part of the "engagement," but rather are the "means for releasably connecting"
found in claim 2.  "Engagement," therefore, means nothing more than supporting, not
connecting.

The Johnson Screens Brochure expressly discloses a screening medium that is supported
by a backing plate.  In fact, the caption to the picture on page 8 states that a "[p]erforated pipe or
plate can enhance collapse strength."  (Cross Decl., Ex H., p. 8.)  The screening medium and
backing plate are shown in "engagement," namely in contact with each other, with the inside
diameter of the screening medium clearly in contact with the outside diameter of the backing
plate.  That is how it provides additional strength to the device.  The Johnson Screens Brochure
shows exactly what one of ordinary skill in the art would see when two components are "in
engagement," for example shrink fit together.  The interface between the backing plate and the
screening medium, in fact, looks identical to that shown in the Figures of the '940 Patent.  It
follows that the Brochure illustrates a backing plate "in engagement" with a screening medium.

## II.   THE GENERAL WELDING PURCHASE ORDER IS PRIOR ART TO THE '940 PATENT.

The General Welding Purchase Order ("Purchase Order") illustrates a device that is
structurally indistinguishable from at least claim 1 of the '940 Patent, which was on sale in this
country over ten years before the filing date of the '940 Patent.  AFT seeks to avoid this

reference in much the same way as the Johnson Screens Brochure—by incorrectly alleging that the documents have not been authenticated and that they do not disclose "screens."

### A.   The Drawing Referenced in the Purchase Order Was Authenticated.

AFT incorrectly contends that J&L did not authenticate a drawing attached to the Purchase Order.  Authentication as a condition precedent to admissibility, however, is satisfied by evidence sufficient to support a finding that the matter in question is what its proponents claim.  Authentication can be provided, for example, by testimony indicating that a matter is what it is claimed to be, and by "appearance, contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with circumstances."  FED. R. EVID. 901.  The drawing here can be easily authenticated.

The Purchase Order includes three pages of a commercial offer for sale that was completed in 1979.  The first page is a purchase order issued on October 11, 1978, numbered "3393."  The purchase order references Johnson "Quotation No. PR-784575-REB," dated July 18, 1978, and lists purchase details including a quantity of items, and a price.  The purchase order also references drawing #2261-2-11-1.  The second page is a transmittal of drawings issued on January 2, 1979 and received by Johnson Screens on January 4, 1979.  The transmittal references the purchase order by number, 3393, and states that the drawings are for "your construction."  The transmittal also references the drawings by number, including the designator D-63072-1A.  The third page is a drawing, marked with the reference number D-63072-1A and including a note 9 referencing drawing #2261-2-11-1.  The first document, therefore, references the second document, and both documents reference the third document, which is the drawing. An internal pattern of numbers therefore ties all of these documents together, and authenticates the drawing.  See FED. R. EVID. 901.

The drawing was also authenticated by testimony. A representative of Johnson Screens verified that the documents in the purchase order, including the drawing, were kept in the ordinary course of business, and in accordance with Johnson Screens' regular practice. (Cross Decl., Ex. I, p. 43.)

**B.      The General Welding Purchase Order Reflects A Commercial Offer For Sale.**

Under 35 U.S.C. 102(b), a person is entitled to a patent unless "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent." A patent, therefore, is invalid if "there was a definite sale or offer for sale of the claimed invention prior to the critical date." Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1050 (Fed. Cir. 2002). The Purchase Order proves that there was a commercial offer for sale by Johnson Screens on January 4, 1979, over ten years before the date of the invention. The Purchase Order is therefore prior art to the '940 Patent.

Under Federal Circuit law, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understating that his assent to that bargain is invited and will conclude it." Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1050 (Fed. Cir. 2002) (internal citation omitted). Johnson Screens obviously made a commercial offer for sale of the product shown in the Purchase Order, which included both pricing and specifications for the product. The "offer" was made in "'Quotation No. PR-784575-REB' dated July 18, 1978," which is referenced in the Purchase Order. The acceptance of the offer, the Purchase Order itself, was received by Johnson Screens on January 4, 1979. (Cross Decl., Ex. I, p. 41, lns. 2-8). The offer made by Johnson Screens "contained sufficiently definite terms" that General Welding was able to accept the offer as embodied in the Purchase Order, and to include a description of the products (including drawing numbers), the quantity of products, and the total price for the

products.  See Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1052 (Fed. Cir. 2002) ("the

UCC does not require price terms to create a binding offer").  Therefore, Johnson Screens made

an offer that was clearly accepted by General Welding in the Purchase Order, establishing an

offer for sale of the Johnson Screens anticipatory product well in advance of the August 16, 1990

filing date of the '940 Patent.  In addition, the second page of the Purchase Order, which

transmitted drawings, states that the "transmittal is for your construction."

     The deposition testimony of long time Johnson Screens employee Charles H. Flansburg

establishes that Johnson Screens received and accepted the Purchase Order.  Specifically, Mr.

Flansburg identified the Purchase Order as a way Johnson Screens "received orders" and, in fact,

he was able to find the original documents in the Johnson Screens archives over thirty years after

the date of the contract.  (Cross Decl., Ex. I, p. 40, lns. 12-23.)  The Purchase Order bears a

Johnson Screens date stamp indicating that the Purchase Order was received by Johnson Screens

on January 4, 1979.  (Cross Decl., Ex. I, p. 41, lns. 3-8.)  Specifically, Mr. Flansburg identified

handwritten notes on the Purchase Order as the handwriting of Mr. Robert G. Norell, a Johnson

Screens engineer/salesman.  (Cross Decl., Ex. I, p. 42, lns. 6-15.)  It was Johnson Screens'

regular practice to keep records of past customer orders such as this so that Johnson Screens

could duplicate the parts for future customer orders, indicating that Johnson Screens fulfilled the

Purchase Order and had expectations to fill future orders placed by General Welding.  (Cross

Decl., Ex. I, p. 43, lns. 3-6.)  Therefore, the record also establishes that a sale of the Johnson

Screens anticipatory product occurred prior to the critical date of the '940 Patent.

    **C.**    **The Purchase Order Anticipates Claim 1 of the '940 Patent.**

     AFT's assertion that the Purchase Order does not disclose "a screen cylinder or a

screening medium . . . to remove material from a stock stream to separate the accept and reject

portions of pulp . . . as required by the asserted claims" relies on functional language that appears

no where in the claims and does not differentiate the claimed invention from the product

described in the Purchase Order.  The Purchase Order discloses a screen assembly with the same

essential elements as the design claimed in the '940 patent—a screening element, a backing

plate, and recesses between the screening element and the backing plate.  An example of this

design taken from the Purchase Order is reproduced at left, below, shown with the corresponding

Figure 1 from the '940 Patent on the right, and with reference numbers added:



The screen assemblies depicted in both the Purchase Order and the '940 Patent include a

screening medium (12) and a backing plate (14).  The screening medium (12) includes openings

or grooves (16), and the backing plate (14) includes openings (28).  Axially spaced projections

(24) are provided between the screening medium (12) and backing plate (14), defining recesses

(22) between the these two main components.  (See Declaration Of Peter Seifert In Support of

J&L Fiber's Memorandum Of Law In Opposition To AFT's Motion for Summary Judgment of

Validity.)

AFT again asserts that the Purchase Order cannot be an invalidating reference because it does not disclose a "screening medium," i.e., a device "to remove material from a stock stream to separate the accept and reject portions of pulp." As explained in Section B, above, however, the absence of a disclosure relating to <u>function</u> does not defeat a finding of anticipation. To avoid this reference, therefore, AFT must prove that the device shown in the Purchase Order cannot be used "to remove material from a stock stream to separate the accept and reject portions of pulp." AFT has not even attempted to present evidence on that issue, let alone satisfy its burden as a matter of law.

## III.   THE PIMA ARTICLE IS INVALIDATING PRIOR ART.

AFT asserts that none of claims 1–20, 23–36, and 37–39 can be invalid based on the PIMA Article because the PIMA Article supposedly fails to disclose a "backing plate." As support for this contention, AFT relies solely on the statements made by J&L's corporate representative, Mark Lutz, and expert Richard Venditti who described the support element in the PIMA Article as a "frame" rather than a backing plate. They used this terminology, however, without "backing plate" having been defined by the Court. Indeed, if "backing plate" is given the broad definition AFT advocates, the PIMA article does disclose a "backing plate."

In AFT's Reply to J&L's Opposition to Motion for Summary Judgment of Infringement (Doc. No. 44), AFT as "a structural support for the a screening medium that includes a metal plate with openings." AFT, moreover, insists that the term plate has no specific meaning, but is merely a metal that can be "forged, rolled, or cast metal in sheets." The PIMA Article discloses a screen cylinder (on the left below) that includes a screening medium that is supported by a structural element (on the right). The structural element is constructed of metal, includes

openings, and supports the screening medium, in the same way as the "backing plate" described in the '940 Patent.

 

The meaning of the term "backing plate" as used in the '940 Patent is "a question of law to be decided by the Court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). The term "backing plate" has not yet been construed by the Court, and the proper construction of the term is disputed by the parties. The views of those skilled in the art about whether two terms are equivalent is extrinsic evidence that is not binding on the Court and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Phillips v. AWH, 415 F.3d 1303, 1318 (Fed. Cir. 2006) (en banc). The statements that AFT relies upon, therefore, do not establish that the PIMA article does not include a backing plate. On the contrary, both Mr. Lutz and Dr. Venditti indicated that the PIMA Article discloses a supporting frame for a screen, which is what the "backing plate" in the '940 does.

## IV.   BREWSTER AND YOSHIDA ARE INVALIDATING PRIOR ART.

AFT next contends that the Brewster and Yoshida references supposedly cannot be invalidating because they do not disclose a "backing plate." Claim 18 and corresponding dependent claims, however, are invalid as anticipated by Yoshida and Brewster because, as set forth more fully in J&L's Brief on Claim Construction (Doc. No. 45), the term "backing plate"

appears in claim 18 only in the preamble of the claim.  In construing claim language, the

preamble is of no significance to claim construction where, as here, the body of the claim sets

forth the complete invention.  See  Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1371 (Fed.

Cir. 2003) (quoting Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1310 (Fed. Cir. 2002)

(citations and internal quotation marks omitted)).  A preamble is not limiting where, as here, the

patentee uses the preamble only to state a purpose of the invention, and where the body of the

claim describes a "'structurally complete invention such that deletion of the preamble phrase

does not affect the structure or steps of the claimed invention.'"  Catalina Mktg. Int'l, Inc. v.

Coolsavings.com, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting Rowe v. Dror, 112 F.3d 473, 478

(Fed. Cir. 1997)).  It follows that AFT's arguments based on Brewster and Yoshida having no

"backing plate" do not entitle it to summary judgment.

## V.     NEW WAVE ARTICLE IS INVALIDATING PRIOR ART.

AFT's next contention, that the article, "New Wave Screen Baskets Upgrade Existing

Systems," is not a printed publication under 35 U.S.C. § 102 is disproved by the testimony of its

own expert.  The NewWave Article is clearly marked with a date of 1984, and identifies the

publisher as TAPPI.  The document includes page numbers, indicating publication in a larger

volume.  AFT's own expert, Dr. Scott, a member of the TAPPI Board of Directors, testified that

TAPPI is an industry technical association, and that TAPPI holds conferences on an annual basis.

Dr. Scott also verified that papers are presented at these conferences.  He further verified that the

New Wave Article is in the general form that is used at the TAPPI proceedings, and that these

types of papers are indexed in a way that renders the documents accessible to the public

interested in the art—that is, the article could be verified with a literature search.  (Supp. Cross

Decl., Ex. B, p. 40, ln. 16–p. 44 ln. 12.)  Dr. Scott, in fact, lists Proceedings of the TAPPI

Pulping Conference on his resume in the section entitled "Invited Papers and Conference Proceedings."  Dr. Scott's curriculum vita also clearly indicates that TAPPI Proceedings are published by TAPPI Press.  (Supp. Cross Decl., Ex. A.)

As explained in Section I, above, a reference is "publicly accessible" upon "a satisfactory showing that the document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention" Bruckelmeyer v. Ground Heaters, Inc., 445 F.3d 1374, 1378 (Fed. Cir. 2006).  A paper which is orally presented in a forum open to all interested persons constitutes a "printed publication" if written copies are disseminated without restriction. Massachusetts Institute of Technology v. AB Fortia, 774 F.2d 1104, 1109, 227 USPQ 428, 432 (Fed. Cir. 1985).  For example, a doctoral thesis indexed and shelved in a library is sufficiently accessible to the public to constitute prior art as a "printed publication." In re Hall, 781 F.2d 897, 228 USPQ 453 (Fed. Cir. 1986).

The New Wave Article constitutes a printed publication.  It is a paper that was presented at an open forum.  It was published in a volume of papers.  The volume can be found by the public having an interest in the art through indexing.  The document is clearly marked with a publication date.  The source of the document is expressly stated indicated.  Indeed, AFT's own expert admits that articles in these types of publications are accessible by way of literature search.  It follows that this document was published long before the filing date of the '940 Patent, and it is an invalidating prior art reference.

Dated: October 20, 2009                      Respectfully submitted,

                                             /s/ David R. Cross
                                             David R. Cross
                                             Johanna M. Wilbert
                                             QUARLES & BRADY LLP
                                             411 East Wisconsin Avenue
                                             Suite 2040
                                             Milwaukee, WI 53202-4497
                                             (414) 277-5000

                                             Edward R. Conan
                                             BOND, SCHOENECK & KING, PLLC
                                             One Lincoln Center
                                             Syracuse, NY 13202-1355

                                             *Attorneys for Defendant*
                                             *J&L Fiber Services, Inc.*