UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADVANCED FIBER TECHNOLOGIES TRUST,

                              Plaintiff,

          -against-                                    1:07-CV-1191
                                                        (LEK/DRH)

J&L FIBER SERVICES, INC.,

                              Defendant.

## MEMORANDUM-DECISION AND ORDER

Plaintiff Advanced Fiber Technologies Trust ("Plaintiff" or "AFT"), a trust organized under the laws of Canada with a principal place of business in Quebec, Canada, brought this action for patent infringement arising under 35 U.S.C. § 271, *et seq.* against Defendant J&L Fiber Services, Inc. ("Defendant" or "J&L"), a Wisconsin corporation, on November 9, 2007.  Compl. (Dkt. No. 1). Jurisdiction is premised on 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

AFT's Complaint, filed on November 9, 2007, alleges that J&L has and continues to infringe upon a screen plate and cylinder patent and its allegedly valid reissue owned by AFT.  On February 22, 2008, J&L filed its Answer and counterclaim, denying infringement and asserting the invalidity of the reissued patent.  Dkt. No. 12.  Presently before the Court are AFT's Motions to strike various expert reports and prevent these experts from testifying at trial (Dkt. Nos. 47-49) and Motion to strike newly raised invalidity defenses and arguments (Dkt. No. 72).

## I.      BACKGROUND

The instant infringement action involves two patents owned by AFT directed to screen plates and screen cylinders for use in the pulp and paper industry for screening  screening impurities from

pulp in the manufacture of paper products.  Pl.'s Statement of Material Facts in Supp. of its Mot. for

Summ. J. (Dkt. No. 33-11) ("SOMF")  ¶¶ 10-11.[1]   The screen plate and cylinder, originally

described in U.S. Patent No. 5,200,072 ("'072 patent"), issued on April 6, 1993 based upon an

application filed August 16, 1990, was purchased by AFT from a predecessor in interest, CAE

ScreenPlates, Inc.; the '072 patent was subsequently reissued by AFT under U.S. Patent No. RE

39,940 ("'940 patent") on September 18, 2007.[2]  Id. ¶¶ 9,17.

 J&L has had knowledge of claims that it was infringing on the '072 patent as early as

February 2000, when it was informed of such by CAE ScreenPlates, Inc.  Subsequently, AFT filed

several additional notices of infringement with J&L, culminating with the instant Complaint (Dkt.

No. 1) on November 9, 2007, which alleges that J&L's V-Max screen cylinder infringes on the '072

patent and '940 reissue (collectively, "the '940 patent") owned by AFT.  Id. ¶ 13.  In its Answer and

Counterclaim (Dkt. No. 12), filed February 22, 2008, J&L denies any infringement and asserts that,

at any rate, the '940 reissue was invalid.  In or around April 2008, AFT served its first set of

interrogatories on J&L seeking the legal and factual basis for J&L's claims of non-infringement and

---

[1] While AFT's description of "screening" and the use of screen plates are limited to use in the pulp and paper industry, SOMF (Dkt. No. 33-11) ¶¶ 10-12, J&L insists that the screening process and use for screen plates extends beyond that limited context. Def.'s Resp. to SOMF (Dkt. No. 64-1) ¶¶ 10-13.  J&L suggests other uses include thickening pulp stock, dewatering, and cleaning.  Id.

[2] The '940 patent recites thirty-nine claims comprising independent (device) claim 1, upon which claims 2-9, 24-31, and 37 depend; independent (device) claim 10, upon which claims 11-17, 32-36, and 39 depend; and independent (method) claim 18, upon which claims 19-23 depend.  See SOMF ¶¶ 30; 37; 42; see also Fuierer, Decl. (Dkt. No. 47-5) ("Seifert Invalidity Report") at 11.  An independent claim is one that does not refer to any other claim of the patent and is read separately from the others to determine its scope; a dependent claim is, conversely, one that refers to at least one other claim in the patent and incorporates all the elements to which it so refers as well as those cited in the dependent claim itself.)
Discovery closed August 1, 2009.

invalidity, to which J&L responded with preliminary claim charts.  See Mesiti Decl. (Dkt. No. 33-12) ¶ 6-7; see also Dkt. No. 60 at 3-4.  On March 13, 2009, AFT filed a Motion for Summary Judgement on the Issue of Infringement (Dkt. No. 33); on April 24, 2009  J&L filed its response Memorandum (Dkt. No. 39) supplemented by numerous exhibits, including expert reports and deposition testimony.  Discovery closed August 1, 2009.  On September 30, 2009, J&L filed a Motion for the Construction of Claim Terms (Dkt. No. 45).  On October 1, 2009, J&L filed its own Motion for Summary Judgment (Dkt. No. 50), accompanied by a Memorandum of law (Dkt. No. 50-40) containing, *inter alia*, invalidity defenses that AFT alleges were not previously raised during the discovery period and which run contrary to the responses J&L gave to its interrogatories.  On the same day, AFT filed a Motion for Summary Judgment on the Issue of Validity.  Dkt. No. 51.

As in any patent dispute, the role of experts in the instant action is expected to be significant.  This is true both in terms of establishing the basis of the parties' claims and, should the matter reach trial, in assisting the jury reach factual conclusions.  Three of the Motions presently before the Court (Dkt. Nos. 47-49) seek to strike expert reports submitted on behalf of J&L and prevent these experts from testifying at trial.  The remaining Motion (Dkt. No. 72), seeks to strike certain arguments made in support of J&L's Motion for Summary Judgment (Dkt. No. 50) for J&L's alleged failure to comply with discovery rules.

## II.     MOTIONS TO STRIKE EXPERT REPORTS AND PRECLUDE TESTIMONY

### A.     Standard for Admitting Expert Testimony

Where "scientific, technical, or other specialized knowledge will assist the trier of fact . . . a witness qualified as an expert by knowledge, skill, experience, training, or education" may offer an

opinion, if the proposed testimony "is based upon sufficient facts or data, . . . is the product of reliable principles and methods, and [] the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. The Court has a "gatekeeping responsibility" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 597 (1993). In assuming this role, the Court applies a "presumption of admissibility." See Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995); Lappe v. American Honda Motor Co., Inc., 857 F. Supp. 222, 226 (N.D.N.Y. 1994).

The Court determines whether an "expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592. There is no definitive checklist of factors that the Court may consider in this decision. Id. at 593. Instead, a variety of factors inform the determination, including the "personal knowledge or experience" of the expert. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). While the Daubert test is a flexible one, the Court must ensure an expert's analysis is reliable at every step, that the reasoning and conclusions are based on "good grounds," and that it will assist the trier of fact. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F. 3d 256, 267 (2d Cir. 2002). "'Any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible.'" Id. (citation omitted).

Finally, otherwise reliable and relevant expert testimony may still be inadmissible if it was not properly and timely disclosed pursuant to Federal Rule of Civil Procedure 26.[3] Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1373-74 (Fed. Cir. 2008); see also FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is

---

[3] Rule 26 requires, *inter alia*, that disclosures of expert testimony by a "witness . . . retained . . to provide expert testimony in the case" include "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i).

not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  An expert's report fails to meet the requirements of Rule 26(a) if it does not disclose the basis and reasoning underlying that opinion.  Innogenetics, 512 F.3d at 1373-74.  Evidence should also be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  FED. R. EVID. 403.

### B.   Disputed Expert Reports and Proposed Testimony

#### 1.   *Peter Seifert*

On May 1, 2009, J&L offered a report by Peter Seifert as expert opinion supporting its contention that the '940 Patent is invalid.  Fuierer, Decl. (Dkt. No. 47-5) ("Seifert Invalidity Report").  Specifically, J&L asked Seifert, "to consider whether certain prior art anticipated and/or rendered obvious the invention claimed" in the '940 Patent.[4]  Id.; Mem. in Supp. of Pl.'s Mot. to Strike Expert Report and Preclude Testimony Regarding Invalidity by Peter Seifert (Dkt. No. 49-1) ("Pl.'s Seifert Mem.").  Seifert also provides deposition testimony on the issue of infringement pursuant to Federal Rule of Civil Procedure 30(b)(6).

Seifert's report concludes that "independent claims 1, 10, and 18 and all of the associated dependent claims, with the exception of claim 21 . . . are invalid as either anticipated, obvious, or

---

[4] "Prior art" includes references that are relevant to the novelty and non-obviousness of the subject matter of a patent.  It is knowledge available to the public either prior to a patent applicant's invention or greater than one year prior to the filing date of the patent application.  See 35 U.S.C. § 102(a), (b).  A prior art reference may be used to challenge the validity of a later claim if it discloses the information designed to solve the same problems as the later claim or information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably consult in attempting to solve the problems addressed by the inventor.  Graham v. John Deere Co. of Kansas City, 381 U.S. 1 (1966); KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398 (2007).

both." Seifert Invalidity Report (Dkt. No. 47-5) at 6.  Seifert lists eighteen prior art patents and other documents that he "reviewed, examined, or relied upon" in forming his opinion, highlighting six of these as "main references." Id. at 6-7.

Plaintiff seeks to strike Seifert's report and deposition testimony and preclude him from testifying at trial.  Mot. to Strike the Seifert Report and Preclude him from Testifying at Trial (Dkt. No. 49) ("Pl.'s Seifert Mot.").  Plaintiff asserts that Seifert's report and testimony are inadmissible under Federal Rules of Civil Procedure 26 and 37 and Federal Rule of Evidence 702.  Plaintiff's Motion (Dkt. No. 49) rests not on an objection to Seifert's qualifications[5] or the relevancy of his opinion, but on his alleged failure to provide an adequate basis for his conclusions regarding the obviousness of the '940 patent; the lack of discussion in his report of anticipation by inherency, which he now proposes to testify about at trial; and the inconsistency of his report with his later deposition testimony and other admissions by Defendant.  Pl.'s Seifert Mem. (Dkt. No. 49-1).  For the reasons that follow, the Court denies Plaintiff's Motion (Dkt. No. 49).

    a.    Obviousness

35 U.S.C. § 103 prohibits the issuance of patents where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  While "the ultimate question of patent validity is one of law," validity ultimately rests on factual inquiries as to (1) the scope and content of prior art; (2) differences between that prior art and the claimed invention; (3) the level of ordinary skill in the pertinent art;

---

[5] Seifert holds a Diplom-Ingenieur Mechanical Engineering Degree from Darmstadt Institute of Technology and has over three decades of experience in the pulp and paper field.

and (4) any other indicia of obviousness or non-obviousness.  Graham v. John Deere Co. of Kansas City, 381 U.S. 1 (1966); KSR Int'l Co v. Teleflex, Inc., 550 U.S. 398 (2007).

Any challenge to a patent's validity "on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006) (citations omitted).  Where an expert's reasoning is not made explicit as to "how or why a person ordinarily skilled in the art would have found the claims of the [challenged] patent obvious in light of some combination of . . . references . . . [s]uch vague testimony would not [be] helpful to a lay jury." Innogenetics, 512 F.3d at 1373.  Similarly, where an expert opines that an invention is invalid because it would be obvious to one skilled in the art to combine elements of prior art references, but fails to offer evidence of a motivation to make such combination, a court does not abuse its discretion by finding the testimony inadmissible.  Id.; see also KSR, 550 U.S. at 418 (expert reports cannot rest on conclusory statements and should make explicit why it would be obvious to one of ordinary skill in the art to combine elements from multiple patents).

An expert need not elaborate extensively as to why it would be obvious for one of ordinary skill in the art to combine elements from various sources, as such combination may simply result from "common sense." KSR, 550 U.S. at 418.  Courts, however, must guard against conflating "common sense" and what appears obvious in hindsight, and thus must "resist the temptation to read into prior art the teachings of the invention in issue." Graham, 383 U.S. at 36 (citing Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406, 412 (1964).  Thus, "'some kind of motivation must be shown from some source, so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one

7

to achieve the patented method.'" Innogenetics, 512 F.3d at 1374 (quoting Innogenetics, NV. v. Abbot Labs., No. 05-C-0575-C, slip op. at 13 (W.D. Wis. Jan. 3, 2007). Where expert testimony fails to present a "motivation to combine," and this is the only basis for its exclusion, and the explanation of that motivation explanation is supplied by another source, the testimony should be admitted. Id. Even then, however, a party asserting a patent's obviousness must show that one skilled in the art "would have perceived a reasonable expectation of success in making the invention via that combination." Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1165 (Fed. Cir. 2006).

Seifert reaches his conclusion that all but claim 21 of the '940 patent's claims are invalid by referencing 18 prior art patents and other documents and comparing the claims of the '940 patent with six of these. Seifert Invalidity Report (Dkt. No. 47-5) at 6-7. The "comparisons" consist of Mr. Seifert's naming one of the six sources and stating that, in his opinion, each element of each of the independent claims and their relevant dependent claims are found in or disclosed by the prior art reference; that these claims are obvious combinations of prior art patents and documents; and that because "the differences between the prior art references reviewed and the claimed invention are so insubstantial, that many other combinations of references would also render these claims obvious . . . the claim represents nothing more than prior art elements combined by known methods to achieve predictable results." Id. at 13-16. Seifert notes that his analysis is set forth in the claim charts attached to his report. These charts provide a more detailed description of the individual elements contained in the claims and juxtaposes these to prior art references. Id. Apps. A-G. Seifert additionally describes what he believes characterizes one of "ordinary skill in the art." Id. at 11.

Plaintiff asserts that Seifert's report "does not disclose the basis and reasoning underlying that opinion," Innogenetics, 512 F.3d at 1373-74, insofar as it fails to address the first, second, and

8

fourth <u>Graham</u> factors; does not assert why a person skilled in the art would be motivated to make the combinations it asserts as obvious; provides no information as to why such a person would have perceived a reasonable expectation of success from such combination; and offers only conclusory statements as to the challenged patent's obviousness.  Pl.'s Seifert Mem. (Dkt. No. 49-1) at 6-12. Defendant counters that these objections "go to the weight and not the admissibility of Mr. Seifert's testimony."  Def.'s Mem. in Opp'n to Pl.'s Seifert Mot. (Dkt. No. 65) ("Def.'s Seifert Mem.") at 6.

In fact, the narrative section of Seifert's report does fail to address the scope and content of the referenced prior art and other documents.[6]  Seifert's report, however, consistently refers to the claim charts attached thereto, which provide a more detailed analysis of the referenced prior art.  In those charts, Seifert includes numerous pictures and makes element by element comparisons between the referenced art and the claims of the '940 patent.  The Court finds that these comparisons sufficiently announce the scope and content of the referenced art.

Contrary to Plaintiff's contentions, the narrative section of Seifert's report provides some discussion of differences between the referenced art and the claims of the '940 patent.  <u>See, e.g.</u> Seifert Report (Dkt. No. 47-5) at 16 (noting minor differences in the Johnson Screen Sale documentation and those announced in claim 10).  The section also provides an explanation for why the relied upon prior art is relevant, namely common sense and personal experience.  <u>See, e.g.</u>, <u>id.</u> at

---

[6] The Court also finds that the Seifert Report does not address the secondary considerations that the <u>Graham</u> Court found relevant to the obviousness inquiry.  However, this omission is not fatal as the <u>Graham</u> Court never required experts to address these secondary indicia of obviousness and later case law has indicated that such considerations are not mandatory.  <u>See, e.g.</u>, <u>Syntex (U.S.A.) LLC v. Apotex, Inc.</u>, 407 F.3d 1371, 1383 ("the secondary consideration of commercial success exists largely to provide a means for patentees to show in close cases that subject matter that appears obvious is in law unobvious because a high degree of commercial success permits the inference that others have tried and failed to reach a solution.")

12; see also Kumho Tire, 526 U.S. at 150 ("personal knowledge or experience" of the expert may

support a finding of reliability).  That the report does not address those differences between the prior

art and '940 patent that Plaintiff identifies as real and relevant, does not make it inadmissible.  The

report discusses why the referenced art is relevant to the validity of the '940 patent, namely because

despite minimal differences, common sense would lead Seifert and others skilled in the art to refer

to such prior art and documentation in order to solve design problems specific to the pulp and paper

industry.  Seifert Report (Dkt. No. 47-5) at 12, 16.  Having addressed the scope and content of the

prior art, noted differences between the prior art and the challenged invention, and announced

reasons why the prior art is relevant, Seifert's expert report will be helpful to a jury's determination

as to whether the referenced art is truly analogous and pertinent.

*b.*     *Anticipation*

To prove that a claim is anticipated under 35 U.S.C. § 102, a party must show that each and

every element of that claim is disclosed, either expressly or inherently, in a single prior art reference.

In re Schreiber, 128 F.3d 1473, 1477 (Fed. Cir. 1997).  Whether a prior art reference anticipates a

claim is an issue of fact for which evidence, including expert testimony, may be introduced.  Id.

Plaintiff moves to exclude the Seifert Report and preclude Seifert from testifying at trial

because his report does not mention anticipation by inherency as a basis for the invalidity of the

challenged patent, whereas Seifert's later deposition testimony relies on this basis.  Pl.'s Seifert

Mem. (Dkt. No. 49-1) at 13.  Again, while the narrative section of the report does not discuss

inherency, the claim charts attached to it adequately illustrate that Seifert has relied on the notion of

anticipation by inherency as well as express anticipation in forming his conclusions.  See Seifert

Report (Dkt. No. 47-5) at App. A.  The issue of inherency is a factual one, and Seifert's report and

testimony will assist a jury in making this factual determination.  Plaintiff has failed to show that the report and subsequent submissions from Mr. Seifert are unreliable for the purpose of Evidence Rule 702; therefore, they shall not be excluded.

### c.   Inconsistency between Expert Report and Deposition

Plaintiff next contends that Seifert's report is inadmissible and his testimony at trial should be precluded because Seifert's report and later deposition testimony are inconsistent.  Pl.'s Seifert Mem. (Dkt. No. 49-1) at 16.  The purported inconsistencies between Seifert's various statements and other admissions made by the Defendant do not support the exclusion Plaintiff seeks.  Seifert's qualifications meet the requirements of Daubert, and the Court has already found that his report will be helpful to a jury in making their factual determinations.  Any perceived inconsistencies should be addressed through cross-examination, and it is for the jury to decide the relative weight his testimony should be given.  See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Ulico Cas. Co. v. Clover Capital Mgmt., Inc., 217 F. Supp. 2d 311, 318 (N.D.N.Y. 2002) ("attacks on the weight and credibility of the opinion . . . are improper criteria for advancing a motion under 702.") (citing McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995)).  Accordingly, Plaintiff's Motion to exclude Seifert's report and prevent him from testifying at trial (Dkt. No. 49) is denied.

### 2.   Dr. Richard Venditti

Defendant designated Dr. Richard Venditti as an expert supporting its defense of non-infringement, see Fuierer Decl. (Dkt. No. 47-4) ("Venditti Non-Infringement Report"), and in opposition to Plaintiff's Motion for Summary Judgment on the Issue of Infringement (Dkt. No. 33)

("Pl.'s Infringement Mot."). Defendant offered rebuttal testimony from Dr. Venditti in support of their own counterclaim of invalidity. Fuierer Decl. (Dkt. No. 47-6) ("Venditti Invalidity Report"). Plaintiff has moved to strike both reports and preclude Dr. Venditti from testifying at trial. Pl.'s Mot. to strike the expert report of Dr. Richard Venditti (Dkt. No. 47) ("Venditti Motion").

As with Seifert, Plaintiff does not challenge the qualifications of Dr. Venditti,[7] but rather contends that his reports are inconsistent and, hence, unreliable under Federal Rule of Evidence 702; are improper and untimely attempts to cure deficiencies in Seifert's Invalidity Report in violation of Federal Rule of Civil Procedure 26(a); or, alternatively offer unsupported legal conclusions and so fail to meet the requirements of Rule 26. Pl.'s Mem. to Strike the Expert Report of Dr. Richard Venditti (Dkt. No. 47-1) ("Pl.'s Venditti Mem.") at 1-2. For the reasons below, the Court rejects these arguments and denies Plaintiff's Motion (Dkt. No.47).

### a. Inconsistent Employment of Claim Terms

Plaintiff argues that Venditti's Infringement Report and Invalidity Report should be excluded, and he should be prevented from testifying at trial because he employs different and contradictory claim definitions in these two reports. Pl.'s Venditti Mem. (Dkt. No. 47-1). Plaintiff argues that because "it is axiomatic that claims are construed the same way for both invalidity and infringement," Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citation omitted), Venditti's use of different claim constructions for the two purposes renders his testimony unreliable. Specifically, Plaintiff notes the inconsistent constructions Venditti attaches to

---

[7] Dr. Venditti holds a Ph.D. in Chemical Engineering from Princeton University and a B.S. from North Carolina State University in both Chemical Engineering and Pulp and Paper Science Technology. He has been a faculty member in the Wood and Paper Science at North Carolina State since 1993. He has received numerous awards and scholarships and authored papers and articles in the field. Venditti Non-Infringement Report (Dkt. No. 47-4) at 4.

the terms "backing plate" and "screening medium."  Pl.'s Venditti Mem. (Dkt. No. 47-1) at 3-7.

Plaintiff's argument is untenable.  Claim construction is a matter of law to be decided by the Court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  Dr. Venditti provided his reports and deposition testimony prior to the Court's determination of claim construction in this case.[8]  Venditti expressly acknowledges the unresolved status of the relevant claims, noting that "how some terms are ultimately construed by the Court may affect the scope of certain claims of the '940 patent."  Venditti Non-Infringement Report (Dkt. No. 47-4) at 10.  Venditti announces the definitions he then employs in each given context.  There is nothing misleading, unreliable, or suggestive of the bad faith Plaintiff alleges about Venditti's approach.[9]  Of course, once the terms are construed, Venditti must consistently employ those constructions in the different contexts.

b.    Invalidity

Federal Rule of Civil Procedure 26 allows a party to submit expert reports to support its case, to which the opposing part may submit contrary expert testimony in response.  FED. R. CIV. P. 26(a)(2)(B).  The Rule further affords a party an additional opportunity to respond to the opposing party's expert, but this second submission shall be "intended solely to contradict or rebut evidence on the same subject matter identified by [the opposing] party."  FED. R. CIV. P. 26(a)(2)(C)(ii).  The

_____

[8] Defendant's Motion for the Construction of Claim Terms (Dkt. No. 45) is pending.

[9] Plaintiff assert that Federal Rule of Evidence 403 provides an alternative basis for excluding Venditti's reports.  Pl.'s Venditti Mem. (Dkt. No. 47-1) at 11.  The Court rejects this assertion.  Venditti acknowledges the importance that the ultimate resolution of claim construction has on his conclusions, thus limiting any potential prejudicial effect that his use of a given construction in a particular context might have.  Certainly, whatever danger of prejudice exists does not *substantially* outweigh the probative value that the expert opinion provides.  The parties will, of course, have opportunity to alert the jury to the operative premises in Venditti's reports and question him about his employment of key terms contained therein.

rebuttal report, that is, must respond to opposition testimony, rather than announce new arguments in support of the party's case.  Plaintiff charges that Venditti's Invalidity Report "impermissibly goes beyond rebutting AFT's expert reports on validity in an attempt to rectify the deficiencies in the Seifert Invalidity Report and . . . present[] a second opinion on validity."  Pl.'s Venditti Mem. (Dkt. No. 47-1) at 10.

Dr. Venditti's Invalidity Report is clearly responsive to the arguments offered by AFT's experts, Gooding and Scott, submitted in response to J&L's Seifert Report.  See generally Venditti Invalidity Report (Dkt. No. 47-6).  Venditti Invalidity Report cites Gooding and Scott's reports; that he also refers to the Seifert report does alter the fact that his report is "intended solely to . . . rebut evidence on the same subject matter identified by" AFT's experts.  FED. R. CIV. P. 26(a)(2)(C)(ii).  Such reference is properly provided, as it supports the conclusions Venditti raises; it does not, as AFT argues, attempt to salvage deficiencies in Seifert's testimony.  Thus, Venditti's Invalidity Report is properly admitted as rebuttal evidence pursuant to Rule 26(2)(C)(ii).

Finally, the Court rejects AFT's contention that Venditti's Invalidity Report is unreliable and inadmissible under Rule 26.  Pl.'s Venditti Mot. (Dkt. No. 47-1) at 12.  Plaintiff's argument tracks the one it made against the Seifert Report and fails for the same reasons.  The Venditti Invalidity Report is offered to rebut AFT's experts' response to the Seifert Report, which has already been deemed admissible; thus, Plaintiff's attempt to exclude Venditti's rebuttal and testimony at trial must fail.  As noted in the discussion above, the claim charts attached to Seifert's report address factors such as the scope and content of the prior art.  Venditti explicitly references and adopts those same charts.  Venditti Invalidity Report (Dkt. No. 47-6) at 9.  Venditti acknowledges the differences between the prior art and the '940 patent that Scott and Gooding identify and explains his

14

disagreement with those experts' conclusions.  See generally id.  He also defines "ordinary skill in the art."  Id. at 7.  Finally, Venditti discusses motivation to combine elements from various sources.  See, e.g., id. at 13, 17, 20.  Moreover, given the finding that the Seifert Report already sufficiently addresses the issue of motivation, there is no basis to exclude Venditti's report, even if it did not reveal this motivation.  See Innogenetics, 512 F.3d at 1374 (expert report's failure to present a "motivation to combine," is not a basis for exclusion if that motivation explanation is supplied by another source).  Plaintiff's Motion (Dkt. 49) is, accordingly, denied.

### 3.  *Carl Degen*

AFT seeks damages of a reasonable royalty or based on its lost profits for J&L's alleged infringement of the '940 patents.  Compl. at c-d.  In furtherance of the relief sought, AFT submitted the expert report of Andrew Carter, a damages expert who concluded that J&L had infringed AFT's patents, and AFT was entitled to lost profits.  Carter Report (Dkt. No. 68, Ex. D).  In response, J&L submitted the expert report of Carl Degen (Dkt. No. 57, Ex. A) ("Degen Report"), which concludes that AFT is not entitled to lost profits.  AFT does not challenge Degen's credentials[10] but contends that he does not meet the requirements of Daubert or Federal Rule of Evidence 702.  Pl.'s Mem. in Supp. of Mot. to Strike the Expert Testimony of Carl Degen and Preclude him from Testifying at Trial (Dkt. No. 48-1) ("Pl.'s Degen Mem.").

Plaintiff essentially argues that the Court should exclude Degen's report and testimony because he did not use the appropriate methodology and did not rely on the evidence that Plaintiff contends is most obvious and reliable.  See generally Pl.s Degen Mem.  As a result, AFT argues,

---

[10] Degen holds a Master's degree in economics from the University of Wisconsin-Madison and has completed all course work necessary for a Ph.D.; He, has published extensively, and has almost 30 years of experience in the field.  Degen Report (Dkt. No. 57, Ex. A) at App. A.

Degen's opinion should not be admitted under Rule 702.  The Court rejects this logic.  Degen presents a number of empirical bases for his opinion.  For example, Degen suggests that J&L's V-Max has additional features not present in the AFT's products, is marketed for applications that AFT's products are not, and is priced at a significant premium compared with AFT's products. Degen Report (Dkt. No. 57, Ex. A) at 11-13.  To the extent that Degen ignores other comparisons or considerations in reaching his conclusions, including those which Plaintiff deems most reliable, the appropriate remedy is vigorous cross-examination at trial.  See Daubert, 509 U.S. 579.  Plaintiff's Motion (Dkt. No. 48) is, accordingly, denied.


**III.    MOTION TO STRIKE ALLEGEDLY NEW INVALIDITY ARGUMENTS**

Plaintiff seeks to strike arguments allegedly raised for the first time in Defendant's Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 50-40) submitted after the close of discovery.  Pl.'s Mot. to Strike Newly Raised Invalidity Defenses and Arguments (Dkt. No. 72) ("Pl.'s Mot. to Strike Defenses").  Specifically, pursuant to Federal Rule of Civil Procedure 37, Plaintiff seeks to strike Sections II(C), II(E), and III of J&L's summary judgment  Memorandum; prevent J&L from raising these arguments at trial; and preclude all reference and reliance upon U.S. Patent Nos. 1,287,031 and 1,615,559 "because AFT did not have the opportunity to explore the factual and legal basis for these new combinations of prior art, (Sections II(c) and II(e)), and new invalidity basis (Section III), and new documents (U.S. Patent Nos. 1,287,031 and 1,615,559) during discovery."  Pl.'s Mem. in Supp. of Mot. to Strike Defenses (Dkt. No. 72-1) at 11-12.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

16

hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).[11]  Rule 26(e) requires parties to supplement its discovery disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." FED. R. CIV. P. 26(e).  The Court may impose alternative sanctions in lieu of precluding information or testimony at trial.  See FED. R. CIV. P. 37(c)(1)(C).  In deciding whether and what sanctions are appropriate for noncompliance with Rule 37(c), the Court "considers '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)).

J&L does not contest that it failed to supplement its responses to interrogatories posed by AFT; rather, it asserts that the defenses and arguments it made in its Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 50-40) should not be stricken, nor should it be prevented from making these arguments at trial, because "the additional or corrective information has . . . otherwise been made known to [AFT] during the discovery process." FED. R. CIV. P. 26(e).  Thus, while not updating the interrogatories, J&L claims to have complied with the notice requirements of Rules 26(e) and 37(c)(1).  Def.'s Resp. Mem. to Pl.'s Mot. to strike defenses (Dkt. No. 87) at 1-12.  Additionally, J&L asserts that AFT has suffered no prejudice resulting from its failure.  Id. at 12-14.

### A.    Allegedly New Combinations of Prior Art Announced Post-Discovery

---

[11]Rule 26(a) provides for mandatory initial disclosures not at issue here.

The first of the allegedly new defenses raised by J&L occurs in Section II(C) of Defendant's Memorandum in Support of is Motion for Summary Judgment.  Def.'s Summ. J. Mem. (Dkt. No. 50-40) at 9.  There, J&L asserts that claim 10 of the '940 patent is obvious and, hence, invalid because one skilled in the art would have known that the Johnson screen cylinder could be combined with the contours disclosed in the Yoshida patent.  AFT claims this is the first time that any of the '940 patent's independent claims was challenged as "invalid under § 103 based upon any combination of prior art references including the Johnson Screen Brochure" and that the argument should be stricken.  Pl.'s Mem. in Supp. of Mot. to Strike Defenses (Dkt. No. 72-1) at 5-6.

Both parties agree that J&L produced the relevant documents (showing the Johnson Screen Brochure and Yoshida patent), but AFT contends that this is less significant than the fact that J&L withheld the legal theory underlying its obviousness argument from Section II(C).  Dkt. Nos. 87 at 5; 88 at 1.  J&L, however, made known this legal theory via the expert report of Peter Seifert.  See Seifert Invalidity Report (47-5) at 16, Apps. A, D.  AFT was certainly aware, given the expert report and deposition testimony by Mr. Seifert, of the centrality of the Johnson Screens' design to J&L's underlying argument.  While AFT seeks to preclude all arguments made by J&L that are not explicitly announced in the expert materials, under the circumstances, it is hard to imagine how Plaintiff could be surprised by J&L's use of arguments in its Motion for Summary Judgment that were so strongly indicated in expert reports and deposition testimony.  Thus, while J&L should have supplemented its responses to the interrogatories, through expert reports and deposition testimony, the relevant information was communicated such that AFT had notice of the legal defenses J&L was raising.

Similarly, AFT objects to the allegedly new defenses raised in Section II(E) of Defendant's

Memorandum in Support of its Motion for Summary Judgment.  There, J&L argues that dependent claims 2-5, 15, 24-25, and 31-36 of the '940 patent are obvious and invalid.  Dkt. No. 50-40 at 13-14.  The crux of J&L's argument is that these dependent claims "recite nothing more than welds, rivets, screws, adhesives, and solder limitations and their equivalents for connecting two elements together.  These claims recite 'familiar elements' that are combined to 'yield predictable results.'" Id. (quoting KSR, 550 U.S. 398, 416 (2007)).  Again, J&L admits to not updating its responses to AFT's interrogatories with regard to this argument; it insists, however, that AFT could not be surprised or prejudiced by this argument, as its basis was disclosed in the material provided to AFT, specifically the Seifert Invalidity Report and the deposition testimony of AFT's own expert, Gary Scott.  Dkt. Nos. 47-5; 50-31.  The Court agrees, and finds that striking Section II(E) from Defendant's Memorandum would be an inappropriate sanction.

As required under Rule 26, despite J&L's failure to update the interrogatory responses, the corrective information has been made known to AFT.  Specifically, the Seifert Invalidity Report expressly announces that the Johnson Screen Brochure and sales documents describe the use of welds in connecting together the screening element and backing plate and providing structural support; Seifert goes on to state that "[t]o the extent that a weld is a 'releasable connection' for purposes of the '940 patent, it would be understood by a person of ordinary skill in the art that the screening medium could be released from the backing plate by breaking the weldments."  Dkt. No. 47-5, App. A. at 8.  Moreover, in the section of the Memorandum that AFT now wishes to strike, J&L explicitly grounds its argument that the dependent claims at issue are obvious on the testimony of AFT's own expert.  Mem. in Supp. of Def.'s Summ. J. Mem. (Dkt. No. 50-40) at 13.  The expert, Gary Scott, testified under oath that welding would be a common way of attaching the two elements,

19

and that using adhesives, screws, and rivets are other commonly known ways of attaching one piece of metal to another to assemble screening devices for pulp and paper use.  Scott Decl. (Dkt. No. 50-31) at 157-58.

Thus, experts from both sides provided the basis for J&L's obviousness argument.  The report and testimony from these experts were brought to the attention of (and, in part, provided by) AFT.  In these circumstances, J&L's arguments in Sections II(C) and II(E) should not be struck.

### B.     U.S. Patent Nos. 1,287,031 and 1,615,559

AFT seeks to strike all reference and reliance by J&L upon U.S. Patent Nos. 1,287,031 and 1,615,559, claiming that J&L never identified or produced these prior art references during the discovery period.  Pl.'s Mem. in Supp. of Mot. to Strike Defenses (Dkt. No. 72-1) at 8.  In fact, J&L explicitly mentions these patents in its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on the Issue of Infringement (Dkt. No. 39) at 3, which was filed well within the discovery period.  AFT claims that such mention does not suffice as "fair notice" for purposes of Rules 26(e) and 37(c)(1), as it was made in response to Plaintiff's Summary Judgment Motion on the Issue of Infringement, whereas Defendant now seeks to rely on these patents in its invalidity defense.  Pl.'s Reply Mem. in Supp. of Mot. to Strike Defenses (Dkt. No. 88) at 9.

AFT's argument fails, as J&L introduces its Memorandum in Opposition to AFT's Summary Judgment Motion on the Issue of Infringement with clear statements that "[t]he '940 Patent is *neither valid nor infringed* by J&L's V-MAX.  The supposedly unique invention has been practiced by others in the industrial screening industry for decades and at best represents nothing more than an *obvious combination* of known elements."  Dkt. No. 39 at 1 (emphasis added).  Immediately following J&L's reference to U.S. Patent Nos. 1,287,031 and 1,615,559, the Memorandum in

Opposition to AFT's Summary Judgment Motion on the Issue of Infringement continues to alert

AFT to the relevance that these patents hold for the issue of invalidity.  The Memorandum clearly

states, "[t]he allegedly novel and patentable aspects of the '940 Patent, therefore, are at best simply

the particular reconfigurations of well-known component parts that have been used for decades by

others in the industrial screening industry . . . Given its simplicity and *obvious combination* of

well-known elements, J&L has long believed (as AFT acknowledges in a footnote in its brief) that

*the '940 Patent is invalid*."  Dkt. No. 39 at 3 (emphasis added).  Thus, while the reference to the two

patents is indeed made in response to AFT's infringement Motion, there can be no doubt that J&L

found these patents relevant to the '940 patent's alleged invalidity and alerted AFT to this point.

The Court, therefore, finds that while J&L should have supplemented the interrogatories to include

its intent to reference U.S. Patent Nos. 1,287,031 and 1,615,559 in making an invalidity defense, it

provided this information through other means, and it may reference and rely on these patents in its

Motion and at trial.  See Westefer v. Snyder, 422 F.3d 570, 584 (7th Cir. 2005) (failure to amend

interrogatories cured for purposes of Rule 26(e) by a response to summary judgment motion placing

adverse par§ty on written notice).

### C.    35 U.S.C. § 112 as a Previously Undisclosed Basis to Invalidate Claim 25

Section III of J&L's Memorandum in Support of its Motion for Summary Judgment asserts

that claim 25 of the '940 patent is invalid under 35 U.S.C. § 112 ("§ 112").  Dkt. No. 50-40 at 15.

Despite being served with interrogatories asking J&L to provide the legal and factual basis for its §

112 defense contained in its Answer (Dkt. No. 12), J&L never signaled this basis for invalidating

claim 25.  Pl.'s Mem. in Supp. of Mot. to Strike Defenses (Dkt. No. 72-1) at 7; Def.'s Resp. Mem.

to Pl.'s Mot. to Strike Defenses (Dkt. No. 87) at 12.  J&L claims that this oversight "creates no

prejudice to AFT and is therefore harmless."  Id.  AFT asserts that the oversight is grounds for

striking the argument from J&L's summary judgment Motion.  Pl.'s Mem. in Supp. of Mot. to

Strike Defenses (Dkt. No. 72-1) at 7.

       J&L alleges that claim 25 of the '940 patent is invalid because it is dependent on claim 2,

which recites a "means for releasably connecting said screening medium and said backing plate."

J&L asserts that claims 2 and 25 are apparatus claims, and thus, any "means-plus-function clause is

construed to cover the corresponding structure of materials described in the specification."  Mem. in

Supp. of Def.'s Mot. for Summ. J. (Dkt. No. 50-40) at 15.  Section 112 requires that "a claim in

dependent form shall contain a reference to a claim previously set forth and then specify a further

limitation of the subject matter claimed."  35 U.S.C. § 112.  J&L argues that claim 25, which reads,

"wherein said connecting means includes a shrink-fit one of said screening medium and said

backing plate to the other," is invalid under § 112 because it fails to recite any additional structure

that limits the means for performing the function of releasably connecting expressed in claim 2.

Mem. in Supp. of Def.'s Mot. for Summ. J. (Dkt. No. 50-40) at 15.  J&L argues that "a shrink-fit" is

not a structure, and thus provides no structural limitation to the means-plus-function clause of claim

2.  Thus, according to J&L, as a matter of law, claim 25 is invalid.  Id. at 16.

       J&L admits that it has not provided the factual and legal basis underlying this argument in

any form; it contends, however, that the argument presented is purely a matter of law, not a factual

dispute, and that this invalidity defense "simply does not require fact discovery."  Def.'s Resp.

Mem. to Pl.'s Mot. to Strike Defenses (Dkt. No. 87) at 12-13.  The Court agrees.  The issues

underlying J&L's invalidity defense regarding claim 25's alleged non-compliance with the dictates

of § 112 rely solely upon the claim construction accorded to the relevant terms "means for

releasably connecting" and "shrink-fit."  Claim construction is a matter of law.  Markman v.
Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  The primary sources a court should consult
in construing terms are the language of the claim, the patent's written specification, and the
prosecution history of the patent.  Gart v. Logitech, Inc. 254 F.3d 1334 (Fed. Cir. 2001).  These are
objective features of the patent, or, in the case of the prosecution history, documents possessed by
the patent applicant/holder.  It is unclear, therefore, what factual discovery could add to AFT's
response to J&L's § 112 invalidity defense.  AFT has suffered no identifiable harm by J&L's failure
to supplement its interrogatories as to this defense.  Thus, AFT's request to strike Section III of
Defendant's Memorandum (Dkt. No. 50-40) is denied.

### D.        Alternative Sanctions under Rule 37(c)(1)(C) are Appropriate

Summarizing the above, the Court denies Plaintiff's Motion to strike portions of J&L's
Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 72), finding such sanction
inappropriate, particularly where a trial date has yet to be set.  Less severe remedies remain.  The
Court is cognizant of AFT's concern that it will be prejudiced at trial because it did not have notice
of the allegedly new defenses, and so did not seek discovery regarding the alleged obviousness of
the '940 patent as disclosed by the Johnson Screen Brochure, have its experts address the additional
combination theories advanced in Sections II(C) and (E) of J&L's Memorandum, or respond to
J&L's § 112 invalidity defense. (Dkt. No. 50-40).  See Pl.'s Reply Mem. in Supp. Mot. to Strike
Defenses (Dkt. No. 88) at 6.  Given that J&L failed to identify the above arguments in a clear and
isolated manner by updating its responses to AFT's interrogatories, the Court finds it appropriate to
allow AFT to conduct limited additional discovery consisting of depositions of its experts for the
purpose of addressing those arguments announced in Sections II(C), II(E), and III of J&L's

Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 50-40).  See FED. R. CIV.

P. 37(c)(1)(C);  Hysitron, Inc. v. MTS Sys. Corp., No. CV 07-1533, 2010 WL 55987, *11 (D. Minn.

Jan. 10, 2010) (any minimal prejudice suffered by plaintiff as a result of untimely supplementation

related to invalidity defenses is eliminated by reopening fact discovery relating to the new defenses);

Equal Opportunity Employment Comm'n v. Outback Steak House of Florida, No. 06-CV-1935,

2008 WL 3992172, *12-14 (D. Co. Aug. 20, 2008) (allowing defendants to re-depose expert witness

where trial date not yet set).  Depositions are to be completed within three weeks of this Decision

and Order.  J&L shall bear the costs of these depositions, excluding attorney's fees.


IV.    **CONCLUSION**

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motions to strike expert reports and preclude testimony (Dkt.

Nos. 47-49) are **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to Strike Newly Raised Invalidity Defenses and

Arguments (Dkt. No. 72) is **DENIED**; and it is further

**ORDERED**, that AFT is granted leave to conduct limited additional discovery consisting of

depositions of its experts for the purpose of addressing the arguments announced in Sections II(C),

II(E), and III of J&L's Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 50-

40).  Depositions shall be completed within three weeks of this Decision and Order.  J&L shall bear

the costs of such depositions, excluding attorney's fees; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:      May 11, 2010
            Albany, New York

Lawrence E. Kahn
U.S. District Judge