UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED FIBER TECHNOLOGIES, (AFT) TRUST,<br><br>    Plaintiff,<br><br>    -against-<br><br>J&L FIBER SERVICES, INC.,<br><br>    Defendant. | Civil Action No. 07-01191 LEK/DRH |

## J&L FIBER SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION (MEMORANDUM-DECISION AND ORDER, DKT. NO. 114)

Dated:  September 27, 2010

David R. Cross
Johanna Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee WI 53202-4497
Telephone:  (414) 277-5000
Email:  david.cross@quarles.com

Edward R. Conan
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse NY 13202-1355

Attorneys for Defendant
J&L Fiber Services, Inc.

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................. 1

I.  THE DISCLOSURE-DEDICATION RULE PROHIBITS AFT FROM RECAPTURING THROUGH AN EQUIVALENCE ARGUMENT WHAT IT EXPRESSLY DISCLOSED IN THE SPECIFICATION BUT WHICH IT DID NOT CLAIM ................................................................................................................ 1

   A.  The Disclosure-Dedication Rule Prevents A Party From Using The Doctrine Of Equivalents To Reclaim Disclosed But Previously Unclaimed Subject Matter. ................................................................................................ 1

   B.  Under The Disclosure-Dedication Rule, Wedgewire Is Not An Equivalent Of A "Perforated" Barrier ................................................................................ 3

II. J&L HAS NOT SAID THAT THERE MUST BE A TRIAL ON WHETHER WEDGEWIRE IS EQUIVALENT TO A PERFORATED METAL PLATE ................... 7

III. THE STANDARDS FOR GRANTING A MOTION FOR RECONSIDERATION ARE SATISFIED ............................................................................................................ 9

TABLE OF AUTHORITIES                                                                Page

**Cases**

Bath Petroleum Storage, Inc. v. Sovas,
    136 F. Supp. 2d 52 (N.D.N.Y. 2001) ................................................................... 10

Burke v. Warren County Sheriff's Dept.,
    916 F. Supp. 181 (N.D.N.Y. 1996) ...................................................................... 10

Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co., Inc.,
    285 F.3d 1046 (Fed. Cir. 2001) ......................................................................... 2, 5

Maxwell v. J. Baker, Inc.,
    86 F.3d 1098 (Fed. Cir. 1996) ........................................................................... 2, 4

PSC Computer Products, Inc. v. Foxconn Int'l, Inc.,
    355 F.3d 1353 (Fed. Cir. 2004) ...................................................................... 2, 3, 5

Sage Products, Inc. v. Devon Indus., Inc.,
    126 F.3d 1420 (Fed. Cir. 1997) ............................................................................. 7

Shannon v. Verizon New York, Inc.,
    519 F.Supp.2d 304 (N.D.N.Y. 2007) ............................................................. 10, 11

Shrader v. CSX Transp. Inc.,
    70 F.3d 255 (2d Cir. 1995) .................................................................................. 10

Toro v. White Consolidated,
    199 F.3d 1295 (Fed. Cir. 1999) .............................................................................. 6

Toro v. White Consolidated,
    383 F.3d 1326 (Fed. Cir. 2004) ........................................................................... 6, 7

Total Containment, Inc. v. Environ Products, Inc.,
    1994 WL 470172 (E.D. Pa. Aug. 25, 1994) ........................................................ 10

**Rules**

Rule 60(b), Fed. R. Civ. P. ............................................................................................ 10

**SUMMARY OF ARGUMENT**

Because of the many interrelated issues that were simultaneously briefed, neither the Court nor the parties had the opportunity to analyze how the Court's construction of the term "perforated" would implicate the Disclosure-Dedication rule. As the Court has now defined the term "perforated," AFT is prohibited under the Disclosure-Dedication rule from contending that wedgewire is the equivalent of a "perforated" barrier. Because the Disclosure-Dedication rule presents an issue of law, a trial would be an inappropriate way to resolve this issue and an unnecessary use of resources.[1]

J&L therefore requests that the Court reconsider its ruling that there should be a trial on the issue of whether wedgewire is equivalent to a "perforated barrier." Instead of a trial, AFT's complaint should be dismissed on its merits. (September 13, 2010 Memorandum-Decision and Order p. 39, Doc. No. 114)

**I.   THE DISCLOSURE-DEDICATION RULE PROHIBITS AFT FROM RECAPTURING THROUGH AN EQUIVALENCE ARGUMENT WHAT IT EXPRESSLY DISCLOSED IN THE SPECIFICATION BUT WHICH IT DID NOT CLAIM.**

**A.   The Disclosure-Dedication Rule Prevents A Party From Using The Doctrine Of Equivalents To Reclaim Disclosed But Previously Unclaimed Subject Matter.**

J&L seeks reconsideration because of the Federal Circuit's Disclosure-Dedication rule, which neither the parties nor the Court have had the occasion to address. Under the Disclosure-Dedication rule, if a patentee identifies subject matter in a patent application, but does not claim it, the unclaimed subject matter is dedicated to the public. Maxwell v. J. Baker, Inc., 86 F.3d

---

[1] J&L's sales records reflect that less than half of J&L's revenue from sales of V-Max cylinders was attributable to products with slot widths less than .254 mm. (Declaration of David R. Cross in Support of J&L's Motion for Reconsideration ¶ 2) The Court's ruling on the slot width limitation, therefore, has significantly reduced the amount of product sales at issue, but does not by itself eliminate the need for a trial. The Disclosure-Dedication rule, however, does eliminate the need for a trial on any point.

1098, 1106 (Fed. Cir. 1996). AFT disclosed wedgewire as an alternative to the perforated plate embodiments it described in the '940 Patent's specification. However, as explained in the Court's comprehensive claim construction ruling, AFT did not include wedgewire in the patent's claims. (Doc. No. 114, pp. 21, 39) It follows that, under the rule of Disclosure-Dedication, AFT is barred from contending that wedgewire is an infringing equivalent to what AFT literally claimed to be its invention.

The Disclosure-Dedication rule applies to both literal infringement and infringement under the doctrine of equivalents. Id. The Federal Circuit has frequently applied this rule to prohibit a finding of infringement when an accused infringer narrowly claims his invention before the Patent Office and then, during an infringement suit, argues that the doctrine of equivalents should permit a finding of infringement because the specification disclosed the equivalents of the previously unclaimed subject matter. Id.; Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co., Inc., 285 F.3d 1046, 1054 (Fed. Cir. 2001). The Disclosure-Dedication rule "requires an inventor who discloses specific matter to claim it, and to submit the broader claim for examination. Otherwise, that matter is dedicated to the public and may not be recaptured under the doctrine of equivalents." PSC Computer Products, Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353, 1360 (Fed. Cir. 2004). For example, a patentee whose patent claimed metal microclips while also disclosing plastic microclips in the specification could not prevail on its infringement suit against a competitor using plastic microclips because of the Disclosure-Dedication rule. Id. Applying the Disclosure-Dedication rule, the Federal Circuit held that the patentee dedicated plastic clips to the public by explicitly claiming only clips made of metal while, at the same time, disclosing in the patent's specification clips made of plastic. Id.

2

QB\11347207.3

>    B.  **Under The Disclosure-Dedication Rule, Wedgewire Is Not An Equivalent Of A "Perforated" Barrier.**

The Disclosure-Dedication rule applies here because AFT specifically disclosed a wedgewire screen in the '940 Patent's specification at Column 11, lines 64-65. As the Court ruled, however, AFT did not include wedgewire in any of '940 Patent's claims. (Doc. No. 114, pp. 21, 39) The Court's analysis, coupled with the Disclosure-Dedication rule, prevents AFT from recapturing in litigation what it disclosed but failed to claim during prosecution of its reissued patent. Id.

As the Court explained in its recent decision, AFT "unambiguously limited the patent's scope during its prosecution of the reissue." (Doc. No. 114, pp. 12-13) In its effort to avoid a rejection based on the prior art Gillespie patent, AFT asserted to the Examiner "that the claim terms have particular meanings in the pulp treatment art and articulated those meanings by way of definitions supplied by the Handbook of Pulp & Paper Technology." (Doc. No. 114, p. 15) The definition that AFT relied upon to get the patent allowed over Gillespie included the definition of "SCREENING." That definition, in turn, included the term "perforated barrier," which the Court has adopted in its construction of "screening medium."

The Court also ruled that, as properly construed, the term "perforated" requires that the barrier, and thereby the "screening medium," be "pierced or punctured." The Court further ruled that "screening medium" as defined does not literally include wedgewire, which is used to make J&L's accused V-Max cylinder. (Doc. No. 114, p. 39, "The V-Max cylinder … does not literally exhibit a 'screening medium,' so construed." See also Doc. No. 106 Tr. pp. 36, 56) Thus, J&L's V-Max does not literally infringe.

Although the Court correctly ruled that J&L's V-Max does not literally infringe, J&L requests that the Court reconsider its conclusion that there is a triable issue about whether

wedgewire is the substantial equivalent of a "perforated barrier" and therefore a "screening medium."  (Doc. No. 114, p. 39)  AFT lost its right to make this equivalence argument because of its strategic decision in prosecuting its reissue application; AFT narrowly claimed an invention to avoid prosecution scrutiny by the Examiner.  Specifically, AFT failed to claim wedgewire in both the original patent and the reissue patent, despite identifying wedgewire as an alternative construction in the specification.  By twice failing to claim this disclosed subject matter, and thus preventing the Patent Office Examiner from examining the validity of a claim including wedgewire, AFT has dedicated the identified but unclaimed wedgewire alternative to the public.

AFT has already tried to use the specification's reference to wedgewire to support its proffered construction of "perforated."  (AFT's Post-Claim Construction Hearing Brief, Doc. No. 113, pp. 9-10)  The Court properly rejected AFT's argument in its September 13, 2010 Decision and Order.  (Doc. No. 114, p. 21)  Because of the Disclosure-Dedication rule, AFT cannot now contend that the wedgewire disclosure supports a finding of equivalence.

Perhaps unaware of the Disclosure-Dedication rule, however, the Court mistakenly opined that AFT may be able to prove at trial that wedgewire is an infringing equivalent.  (Doc. No. 114, p. 39)  In <u>Maxwell v. J. Baker</u>, the Federal Circuit explained that the Disclosure-Dedication rule was intended to prevent the strategy that AFT has pursued here:

> A patentee may not narrowly claim his invention and then, in the course of an infringement suit, argue that the doctrine of equivalents should permit a finding of infringement because the specification discloses the equivalents.  Such a result would merely encourage a patent applicant to present a broad disclosure in the specification of the application and file narrow claims, avoiding examination of broader claims that the applicant could have filed consistent with the specification.

86 F.3d at 1106-07.

Judge Mayer and current Chief Judge Rader explained in their thoughtful concurrence in Johnson & Johnston Assocs., that the Disclosure-Dedication rule is a judicial limitation of "non-textual infringement" theories, such as the doctrine of equivalents. 285 F.3d at 1056. The Disclosure-Dedication rule preserves the important public notice function of the literal language of a patent's claims. A patent's claims are how the public learns which innovations are subject to the claimed invention and which are in the public domain. The Disclosure-Dedication rule emphasizes the prominence of claim language over the specification in describing the scope of the invention. Id. at 1361. It is the patentee, not the public, who is responsible for properly drafting the claims of a patent. And it is the patentee that must bear the consequences of the claim language it chooses during prosecution. Id.

The doctrine of equivalents extends the right to exclude beyond the literal scope of the claims, but only in those circumstances where the patentee could not have protected itself with reasonable foreseeability from conduct by prospective infringers. Id. at 1058-59. Where, however, the patentee discloses a structure in the specification but does not include it in the claims, it is in no position to allege that it could not have anticipated use of the disclosed design. Id. at 1057-58. A patentee, such as AFT, who had a "*clear opportunity to negotiate broader claims but did not do so*" must bear the "*cost of its failure to seek protection for this foreseeable alteration of its claimed structure*." Id. at 1058. (emphasis in original)

The Federal Circuit has repeatedly applied the Disclosure-Dedication rule to bar patentees from arguing the doctrine of equivalents where, as here, the patentee disclosed but did not claim alternative embodiments. In Toro v. White Consolidated, for example, the patent specification disclosed two embodiments of a vacuum-blower, one including a replaceable ring and one including a ring that was permanently affixed. 383 F.3d 1326, 1331-1332 (Fed. Cir.

5

2004) (Torro III).  In claim construction, the patentee advocated a construction that would have encompassed both embodiments.  Id. at 1332.  See also Toro v. White Consolidated, 199 F.3d 1295, 1302 (Fed. Cir. 1999) (Torro I).  Despite the patentee's preferred construction, the court held that the claims of the patent only covered a ring that was permanently affixed.  Torro III, 383 F.3d at 1331.  The district court later applied the Disclosure-Dedication rule in the court's infringement analysis, holding that the patentee could not recapture the unclaimed replaceable ring through the doctrine of equivalents.  Id. at 1330.

On appeal, the patentee argued that the Disclosure-Dedication rule should not apply because the claim language illustrated an intent to cover both constructions, and further because the claims would have covered both embodiments if the court had given the terms their broadest meaning during claim construction.  Id. at 1332.  The Federal Circuit rejected this argument and held that, as a matter of law, the "patentee's subjective intent is irrelevant to determining whether unclaimed subject matter has been disclosed and therefore dedicated to the public."  Id. at 1333.  Because the court had already concluded that the patentee had not claimed the subject matter at issue, the patentee could only "argue that it attempted to claim the disclosed subject matter based on a preferred claim construction," and the district court appropriately held as a matter of law that the patentee could not prevail.  Id. at 1333.

The facts here present a nearly identical situation, calling for the same result.  AFT's failure to claim wedgewire was a consequence of its litigation-driven strategy to narrow the claims of the '720 Patent in reissue.  (See Doc. No. 33-16 through 33-19, Mesiti Decl. Ex. D, '940 Patent file history)  After convincing the Examiner to allow narrower claims, AFT is now barred from arguing through an equivalents analysis that those claims include wedgewire, a design that was obviously used in Gillespie and expressly disclosed but not claimed by AFT in

6

the '940 Patent.  (See AFT's Post Hearing Brief Doc. No. 113, p. 10)  See also Toro Co., 383 F.3d at 1331 (holding that "the doctrine of equivalents is precluded based on actions of the patentee during prosecution evincing a surrender or dedication of the subject matter").  It follows that AFT's reference to wedgewire in the patent's specification, but not in its claims, bars AFT from arguing that wedgewire is an infringing equivalent.

As the Federal Circuit has held, AFT -- not J&L or other members of the public -- must bear the consequence of its failure to seek protection for an alternative structure that it disclosed but did not claim.  Sage Products, Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1425 (Fed. Cir. 1997).  The Court has properly ruled that wedgewire does not literally infringe.  And the Disclosure-Dedication rule bars AFT from claiming wedgewire infringes under the doctrine of equivalents.

The Disclosure-Dedication rule applies to all claims of the '940 Patent that incorporate "screening medium."  Because "screening medium" is synonymous with "screening plate" (Doc. No. 114, p. 15), and because one or the other term is incorporated into every claim of the '940 Patent, AFT is barred from arguing infringement under the doctrine of equivalents for any claim.  It follows that there is no equivalents issue.  There is no need for a trial, and judgment should be entered dismissing AFT's complaint on its merits.

## II. J&L HAS NOT SAID THAT THERE MUST BE A TRIAL ON WHETHER WEDGEWIRE IS EQUIVALENT TO A PERFORATED METAL PLATE.

J&L's pre-claim construction statement regarding a potential fact dispute on the issue of the wedgewire construction should not now prevent the Court from applying the Disclosure-Dedication rule.  The Court's conclusion that there should be a trial on the issue of whether wedgewire is equivalent to a perforated barrier appears to have been based, at least in part, on the Court's belief that J&L admitted in its April 24, 2009 brief that there was necessarily an issue of

7

fact regarding equivalence. Specifically, after discussing the doctrine of prosecution history estoppel, J&L stated that "[i]n addition, there would be a fact dispute about whether a wire bar construction would be equivalent to a perforated metal plate, due to the significantly different way it is made." (Doc. No. 39, Opp'n to Infringement Mem. at 24) In context, that sentence was intended to inform the Court that a trial would be needed on equivalents only if the Court held AFT was not estopped from claiming equivalents for what it had disclaimed during the reissue proceeding. It was an additional, alternative reason to deny AFT's premature motion for summary judgment in its favor on infringement. It was not then, and is not now, a reason to hold that AFT is entitled to a trial on the issue of equivalents.

J&L filed that brief on April 24, 2009 to oppose AFT's motion for summary judgment of infringement. (Doc. No. 39) AFT filed that motion long before the close of discovery, before the deadline for expert reports, before the Court construed any claims, and before the parties had even identified all of the claims requiring construction. J&L was not seeking summary judgment in its favor, but was instead explaining why the Court should deny AFT's motion for summary judgment against it on the issue of infringement. As the Court implied in connection with pre-claim construction testimony, statements made well before the Court has construed claims may have different implications than if the same statements were made after claims had been construed. (Doc. No. 114, p. 49)

More importantly, as is clear from the text preceding the sentence cited by the Court, J&L believed then (as it still believes) that the correct way to dispose of any argument by AFT that wedgewire infringes under the doctrine of equivalents is by barring AFT from making any such argument. (Doc. No. 33-2, pp. 23-24) The sentence cited by the Court was not intended to mean that equivalents would necessarily be a fact issue to be tried. Rather, J&L was making the

8

point that a trial on equivalents would be needed <u>if</u> the Court held that AFT was not estopped from claiming equivalents. Then, and only then, would there be a need for a trial to resolve factual disputes concerning equivalents.

The Court's September 13, 2010 opinion, however, has now eliminated any occasion to consider equivalents arguments. As the Court noted, the definitions AFT advocated to the Examiner were central to its effort to limit AFT's patent's claims to the industry-specific context of pulp and paper. Once AFT had done so, the "perforated" element of the definitions AFT cited to the Patent Office necessarily followed. As the Court explained, AFT "unambiguously limited the patent's scope during its prosecution of the reissue." (Doc. No. 114, pp. 12-13) Once AFT did so, and now that the Court has held that AFT's relinquishment was "unmistakable" and "unequivocal" (Doc. No. 114, pp. 13-14), AFT is barred as a matter of law from attempting to recapture a broader scope of coverage under the doctrine of equivalents. Thus, this purely legal issue does not present an issue of fact, nor should it prevent the Court from applying the Disclosure-Dedication rule.

### III. THE STANDARDS FOR GRANTING A MOTION FOR RECONSIDERATION ARE SATISFIED.

It is appropriate for the Court to reconsider its previous ruling regarding the equivalency of wedgewire because controlling Federal Circuit law on the Disclosure-Dedication rule did not become clearly relevant until the Court's recent construction of the term "perforated." The implications of the construction were not fully briefed by the parties nor considered by the Court prior to the Court's summary judgment ruling. These unusual circumstances create a need to correct a clear error of law that would result in a manifest injustice, thereby satisfying the standards for reconsideration. See <u>Bath Petroleum Storage, Inc. v. Sovas</u>, 136 F. Supp. 2d 52, 56

9

(N.D.N.Y. 2001) (identifying "the need to correct a clear error of law or to prevent a manifest injustice" as a basis for reconsideration).

A district court has the "inherent power to revisit interlocutory orders" and can reconsider them when it is consistent with justice to do so. Burke v. Warren County Sheriff's Dept., 916 F. Supp. 181, 186 (N.D.N.Y. 1996) (noting a motion to reconsider an interlocutory order is not subject to Rule 60(b), Fed. R. Civ. P., but is instead entirely within a court's inherent discretionary power to reach the correct conclusion about a matter that is not yet a "final" order or judgment). It is therefore within the Court's discretion to reconsider a ruling based on controlling legal authority that had previously been overlooked. The Second Circuit, for example, held a district court properly exercised its discretion to reconsider an earlier interlocutory ruling in light of substantial legislative history and "additional relevant case law" that had previously been overlooked by the court and the parties. Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). Likewise, a district court reconsidered a summary judgment decision in a patent infringement case to avoid "an incomplete application of the controlling law." Total Containment, Inc. v. Environ Products, Inc., 1994 WL 470172, *1 (E.D. Pa. Aug. 25, 1994).

Motions to reconsider should also be granted where there has been a "clear error of law or to prevent manifest injustice." Shannon v. Verizon New York, Inc., 519 F.Supp.2d 304, 307 (N.D.N.Y. 2007). The Court appears to have based its conclusion that there should be a trial on infringement under the doctrine of equivalents, at least in part, on a misunderstanding of the legal significance of what J&L stated on page 24 of its March 2009 brief opposing AFT's motion for summary judgment. Unless the Court reconsiders its decision to have a trial on the issue of

infringement under the doctrine of equivalents, manifest injustice would result to all of the parties by requiring a needless trial.

One of the reasons these issues were not previously addressed, but should be addressed now, is that the Court decided claim construction at the same time it decided the pending motions for summary judgment. There are advantages and disadvantages to deciding claim construction at the same time as summary judgment. See (Cross Decl., Ex. A, "Patent Claim Construction: A Survey of Federal District Judges," pp. 3, 15, Fed. Judicial Center, 2008.) One of the disadvantages is that it is hard for the parties to anticipate all of the consequences of one construction versus another. Id. As here, a court may also adopt a construction that was not advocated by either of the parties, compounding the difficulty of anticipating any particular construction or the implications that may follow from any particular construction.

Given the complexity of this case, including its procedural posture at the time the Court was asked to construe "perforated," it is understandable that the parties did not anticipate all of constructions that the Court would adopt nor the reasons for all of the Court's constructions. The consequences of the Court's construction of "perforated" were particularly difficult for J&L to predict because "perforated" was not part of J&L's preferred construction of "screening medium." Moreover, J&L had not included "perforated" in its motion to construe claims. It was added at the eleventh hour, when AFT, not J&L, asked the Court to construe that term at the July 22, 2010 claim construction hearing. (Doc. No. 106, pp. 48-49, 53-56) AFT asked the Court at the last minute to construe that term, and it must now live with the outcome.

The Court's September 13, 2010 Decision and Order reflects careful analysis and hard work in resolving many of the issues that had been in dispute. Armed with the Federal Circuit's controlling legal authority on the Disclosure-Dedication rule, and with additional context for the

11

sentence cited by the Court from J&L's March 13, 2009 brief, J&L respectfully requests that the Court reconsider whether a jury trial is truly required. The next logical step is not a trial; it is instead an order dismissing AFT's complaint on its merits.

Dated this 27th day of September, 2010.

> Respectfully submitted,
>
> /s/ David R. Cross
> David R. Cross
> Johanna M. Wilbert
> QUARLES & BRADY LLP
> 411 East Wisconsin Avenue
> Suite 2040
> Milwaukee, WI  53202-4497
> (414) 277-5000
>
> Edward R. Conan
> BOND, SCHOENECK & KING, PLLC
> One Lincoln Center
> Syracuse, NY 13202-1355
>
> *Attorneys for Defendant*
> *J&L Fiber Services, Inc.*