# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED FIBER TECHNOLOGIES (AFT) TRUST, ) <br> ) <br> *Plaintiff/Counter-Defendant*, ) <br> ) <br> v. ) <br> ) <br> J & L FIBER SERVICES, INC., ) <br> ) <br> *Defendant/Counter-Plaintiff*. ) <br> ) <br> ) | Civil Action No.: <br> 1:07-CV-1191 <br><br> LEK/DRH |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR RECONSIDERATION OF CLAIM CONSTRUCTION ORDER
## RELATING TO THE CLAIM TERM "SCREENING MEDIUM"

Nicholas Mesiti, Esq.
Brett Hutton, Esq.
Alana M. Fuierer, Esq.
Shanna K. O'Brien, Esq.
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle,
Albany, New York 12203-5160
Telephone: (518) 452-5600
Fax:  (518) 452-5579

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    Legal Standard for Reconsideration ................................................................. 2

    II.    Summary of Claim Construction at Issue ........................................................ 3

    III.    The Court Should Reconsider its Interpretation of "Screening Medium" to Include Wedgewire ................................................................................ 4

        A.    The Intrinsic Evidence Supports a Wedgewire Screening Medium ........... 4

            1.    The '940 Specification Supports A Wedgewire Screening Medium ........................................................................ 5

            2.    The '940 Patent Claims Support A Wedgewire Screening Medium ........................................................................ 6

            3.    The '940 Prosecution History Supports A Wedgewire Screening Medium ........................................................................ 7

        B.    The Order Improperly Reads Limitations From Extrinsic Evidence Into The Claims ................................................................. 8

        C.    The Ordinary Meaning of "Pierced" Includes Wedgewire ....................... 9

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

**Error! No table of authorities entries found.Error! No table of authorities entries found.**

**Introduction**

Plaintiff Advanced Fiber Technologies Trust ("AFT") respectfully requests reconsideration of the Court's interpretation of the claim term "screening medium"[1] as excluding wedgewire screens, as set froth in the Memorandum-Decision and Order dated September 13, 2010 ("Order") (Docket Entry 114).  In the Order, the Court interpreted "screening medium" to be a "perforated plate", which is made by puncturing or piercing.  And, that the claim term "screening medium" does not literally cover a wedgewire screen since such a screen is not made by piercing or puncturing.

Reconsideration of the Order is necessary to avoid a clear error of law.  In interpreting the claim term "screening medium" as excluding wedgewire screens, the Order violated the fundamental rule of claim construction that requires the Court to not rely on extrinsic evidence, when it is contradictory to the intrinsic evidence, namely the claims, written description and prosecution history. *Phillips v. AWH Corporation et al.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).  In violating this fundamental rule, the Order relied upon a definition of the word "perforated" in defining the claim term "screening medium" from a dictionary that is contrary to the intrinsic evidence.  In contrast to the dictionary definition adopted by the Order, all of the patent drawings, the specification and the prosecution history support the position that the invention covers a wedgewire screening medium.

Reconsideration is also warranted to correct a clear factual error in the Order.  Specifically, the Order overlooks the important fact that the definition of "perforated" as set forth in the extrinsic evidence does not require puncturing or piercing.  Rather, the ordinary definition

---

[1] AFT does not contest the construction of the claim term "screening medium," only the exclusion of wedgewire from this term based on the construction of "perforated" in the Order.

1

of the word perforated and pierced, includes holes and openings of any kind. As a result, the Order improperly limits the scope of how the screening medium is made, when no such limitations were included in the claims or disavowed by AFT in the specification or prosecution history.

## Argument

I.  **Legal Standard for Reconsideration**

Reconsideration is appropriate when the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion and which, had they been considered, might have reasonably altered the result before the court. *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478. Thus, a motion for reconsideration provides the Court with an opportunity to correct manifest errors of law or fact. *Lamoureux v. AnazaoHealth Corp.,* No. 3:03-cv-1382, 2009 WL 813977, *1 (D. Conn. March 26, 2009).

In the context of claim construction, reconsideration is warranted to correct a factual matter that the Court overlooked, such as when the Court adopts a claim construction that is too narrow in view of the patent's specification. *Lamoureux,* 2009 WL 813977 at *1-2. Reconsideration is also appropriate to remedy legal errors in claim construction, such as when the Court "improperly read[s] a limitation from the Specification into the claim, in contravention of the holding of *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005)(en banc)." *Lamoureux,* 2009 WL 813977 at *2. In *Lamoureux*, Plaintiff requested reconsideration of the court's construction of the claim term "mechanical distortion." *Id*. The court originally construed that term to mean "by physical processes directed at the cannula." *Id*. On

2

reconsideration, Plaintiff argued that the court improperly imported a limitation from the specification by requiring that the physical processes be directed at the cannula, instead of the "cannula *and/or the plug*," as proposed by Plaintiff. *Id*. In granting plaintiff's motion for reconsideration and adopting plaintiff's proposed construction, the court noted that the specification expressly stated that "holding the biocompatible end plug in place inside the cannula… may be accomplished by *modifying the diameter of the plug by mechanical distortion means*." *Id*. This additional embodiment described in the specification required the Court to change its claim interpretation to be consistent with the intrinsic evidence.

The facts in this case are similar to *Lamoureux,* in that the Order, which interprets "screening medium" to exclude screens not made by piercing or puncturing, i.e., wedgewire, does so in a manner contrary to the specification, which specifically states that wedgewire may be used. Therefore, reconsideration of the Order that excluded wedgewire from the claim term "screening medium" is necessary to avoid both legal and factual error.

**II.     Summary of Claim Construction At Issue**

The Order defines the claim term "screening medium" as "a perforated barrier through which stock is passed to remove oversized, troublesome, and unwanted particles from good fiber." Order p. 17. In arriving at this construction, the Court appropriately relies on intrinsic evidence, namely the prosecution history of the '940 Patent. However, the Order then defines the term "perforated" as "made by piercing or puncturing." Order p. 21. In construing the word "perforated," the Order relies on extrinsic evidence, specifically, the definition found in the *McGraw Hill Dictionary of Scientific Technical Terms* ("McGraw") offered by Defendant, while acknowledging, but dismissing, the specification's teaching that wedgewire may be used and the ordinary definition of perforated as "having holes or perforations" from Merriam Webster's

3

general use dictionary. Using this reasoning, the Order then limits the term "screening medium" to exclude wedgewire. In doing so, however, the Order violates the rules of claim construction set forth in *Vitronics* and *Phillips*, by improperly relying on extrinsic evidence, namely a dictionary definition, to erroneously import limitations into the claim that are contrary to the intrinsic evidence, namely the '940 Patent claims, specification and prosecution history.

### III. The Court Should Reconsider its Interpretation of "Screening Medium" to Include Wedgewire

#### A. The Intrinsic Evidence Supports a Wedgewire Screening Medium

Reconsideration is warranted because in construing "screening medium" to exclude wedgewire, the Court overlooked factual matter, namely, clear intrinsic evidence that expressly includes a wedgewire screening medium, which resulted in legal error. In particular, the Court chose a dictionary definition for the word "perforated" in construing the claim term "screening medium" that is contrary to the intrinsic evidence. Reliance on a dictionary definition (i.e., extrinsic evidence) that is contrary to the intrinsic evidence is clear legal error. *Vitronics*, 90 F.3d at 1583-84.

The Order committed clear legal error by failing to interpret the word "perforated" in the context of the intrinsic evidence, namely, the claims, written description and prosecution history. *Philips*, 415 F.3d at 1313-1314. Claim terms must be read in view of the specification, which is considered "the single best guide to the meaning of a dispute term." *Vitronics*, 90 F.3d at 1582. Although extrinsic evidence, such as a dictionary, may be useful in defining claim terms, they are considered by the Federal Circuit to be less reliable in interpreting patent claim scope than the patent and its prosecution history "unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1318.

The intrinsic evidence, including the claims, all of the patent drawings, the specification and the prosecution history support a wedgewire screening medium.  The '940 patent specification expressly states that a wedgewire screening plate may be used, and the '940 Patent drawings show only a screening medium made without puncturing or piercing.  And, nowhere in the intrinsic evidence is a wedgewire screening medium disavowed.  The Order improperly adopted a dictionary definition and explicitly dismissed the intrinsic evidence in arriving at the exclusion of wedgewire.  Accordingly, reconsideration is warranted because the Order improperly excluded wedgewire from the claim term "screening medium" by relying on a dictionary definition that is contrary to the intrinsic evidence of the '940 Patent. *Vitronics*, 90 F.3d at 1583-84; *Philips*, 415 F.3d at 1313-14, 1318.

### (1) The '940 Specification Supports A Wedgewire Screening Medium

The '940 patent specification, including the patent drawings, make it unmistakably clear that the term "screening medium" includes screens made by other than piercing or puncturing including wedgewire.  For example, the '940 Patent drawings show <u>only</u> screens which are made without piercing or puncturing and specifically a wedgewire screening medium ('940 Patent, Figs. 2-4, 7-8).  For convenience, Figure 2 of the '940 Patent clearly showing such a screening medium is reproduced below:

Also, the description of those drawings expressly states that "a wedgewire screening plate may be used."[2] '940 Patent, col. 11, lines 64-65; *Lamoureux,* 2009 WL 813977 at *2. By failing to consider, and even dismissing, these portions of the specification in favor of extrinsic evidence in the form of a contrary dictionary definition, the Order violated a fundamental rule in construing claim terms. Reconsideration is, therefore, warranted because the Order committed legal error by relying on extrinsic evidence, i.e., a dictionary definition over the express inclusion of wedgewire in the drawings and description in the specification.

### (2)     The '940 Patent Claims Support A Wedgewire Screening Medium

The Order relies, in part, upon the absence of the word "wedgewire" from the claims in interpreting the term "screening medium" as excluding wedgewire. However, even if the claims do not specifically recite "wedgewire", the absence of such language does not limit the interpretation of either "screening medium" or "screening plate" to exclude wedgewire. *Phillips*, 415 F.3d at 1313, 1323. Claim terms are read not only in the context of the particular claim in which they appear, but "in the context of the entire patent, including the specification." *Id*. at 1313. The Order recognizes that the '940 patent specification expressly states that "a wedgewire screening plate may be used", but then dismisses this intrinsic evidence because it does not fit into the definition found in an extrinsic dictionary. However, the intrinsic evidence cannot be dismissed in favor of contradictory extrinsic evidence in interpreting the claim term "screening medium." Moreover, the Order ignores the plain language of claim 18 that specifically recites a method of manufacturing a wedgewire screening plate, without explicitly using the word "wedgewire." For example, this claim does not require that grooves or openings be made by pierced or puncturing, only by "forming." In addition, the Order ignores the language of claims

---

[2] The Order determined that "screening medium" is synonymous with "screening plate" (Order p. 15) and does not include a wedgewire design (Order p. 21). If these terms are synonymous, then a wedgewire screening plate, which is expressly stated in the '940 specification is synonymous with a screening medium.

6

1, 10, 11, 27, 29 and 37-39 reciting a screening medium having openings, slots, or grooves, which are elongated and of such a length or configuration that clearly cannot be made by puncturing or piercing.  Reconsideration is, therefore, warranted because the Order committed legal error by relying on extrinsic evidence, namely a dictionary definition over the plain language of the specification and claims.

### (3) The '940 Prosecution History Supports A Wedgewire Screening Medium

The prosecution history clearly interprets wedgewire as a screening medium covered by the patent claims.  During prosecution of the '940 patent, the Patent Office initially rejected the claims over Gillespie finding that Gillespie discloses a screening medium. (Docket Entry 60-6 at pp. 14-38[3]).  However, the screening medium disclosed in Gillespie *is a wedgewire screening medium*.  See e.g. Gillespie, Figs. 1, 3; col. 2, lines 34-36, col. 2, lines 33-44.  For convenience, Figure 3 of the Gillespie Patent clearly showing a wedgewire screening medium is reproduced below:

Therefore, the Patent Office clearly recognized that wedgewire screens are covered by the claims.  In addition, AFT never distinguishes "screening medium" as recited in the claims from Gillespie on the basis of it being wedgewire.  There is no explicit disavowal of wedgewire

---

[3] Citations to "Docket Entry ___ a p.___" refer to the page number(s) identified in the Court's ECF filing header in the upper right-hand corner of the document.

7

from the claims. Although, the Order claims that AFT somehow limited the claim term "screening medium" during prosecution by defining it as a "perforated barrier" or "perforated metal plate", AFT never interprets the term "perforated" during prosecution in the manner that the Order construed the term. And, the prosecution history never states that the "screening medium" excludes a wedgewire design. Instead, the Order committed clear legal error by relying on a dictionary to define the term "perforated" as requiring piercing or puncturing, when perforated means having holes or openings. Such an interpretation does not comport with the clear intrinsic evidence including a wedgewire screening medium.

### B. The Order Improperly Reads Limitations From Extrinsic Evidence Into The Claims

Reconsideration of the Order's interpretation of the word "perforated" as being "made by piercing or puncturing" must be granted because this interpretation results in a manifest error of law. Specifically, the Order improperly imports limitations from extrinsic evidence into the claims. The Order improperly reads limitations into the definition of "perforated" from *McGraw* (i.e. extrinsic evidence) by requiring that the holes "*be made by* piercing or puncturing." Order, p. 21 (emphasis added). It is clear legal error to import limitations into the claim term "screening medium" by limiting the scope of how the medium is made, when no such limitations were included in the claims or disavowed by AFT in the specification or prosecution history. *See*, *Lamoureux,* 2009 WL 813977 at *2, citing, *Phillips*, 415 F.3d at 1323.

The Order also overlooks important facts namely, that the ordinary definition of "perforated" or "perforated plate" does not require that it be made by piercing or puncturing. In limiting the scope of the term "screening medium," the Order improperly relies upon the definition of the word "perforation" in Merriam-Webster's general use dictionary. However, because the Order interprets "screening medium" as a "perforated plate", not as a plate with

8

perforations, Order p. 20-21, the Order should have considered the definition of "perforated" in the same dictionary.  The term "perforated" is defined in Merriam-Webster's Ninth New Collegiate Dictionary (1986) ("Merriam-Webster") as "having a hole or perforations".  The term "hole" is defined therein as "an opening through something". *Id*.  Thus, the ordinary definition of "perforated plate" is a plate with **openings** or **perforations** therethrough.  This definition, unlike the definition in the Order, is consistent with and not contradicted by the intrinsic evidence.  The claims of the '940 patent recite the screening medium as having "openings" therethrough.  The specification defines "openings" as "apertures of all shapes and sizes, including holes, slots, orifices and passageways", not as "punctures" or "piercings".

AFT never limited the scope of the term "screening medium" in the claims, specification or prosecution history by disavowing any way the "screening medium" is made.  The '940 specification or claims never describe the openings or slots in the screening medium as being "made by," for example, puncturing, piercing, punching or drilling.  AFT also never limited the way the screening medium was made during the prosecution history.  In contrast, all of the patent drawings show a wedgewire screening medium and the '940 specification expressly states that a wedgewire screening plate may be used. *Lamoureux,* 2009 WL 813977 at *2.  Therefore, the Order improperly imported limitations into the claim term that contradicts the ordinary meaning of the terms and the intrinsic evidence.

In excluding wedgewire by relying on a dictionary definition contrary to the intrinsic evidence, the Order erred as a matter of law.  Therefore, reconsideration is warranted.

**C.  The Ordinary Meaning of "Pierced" Includes Wedgewire**

Reconsideration of the interpretation of the word "perforated" as being "made by piercing or puncturing" must be granted because the interpretation overlooks an important fact, namely,

9

the ordinary definition of the word "pierced," i.e. having holes", (See Docket Entry 113-8 at p. 2), and the ordinary meaning of the word "holes," i.e. openings through something." (See Docket Entry 113-8 at p. 3). The Order never defines or considers the definition of the word "pierced" when it excluded wedgewire from the term "screening element." In fact, the *McGraw* dictionary relied upon by the Order does not define the word "pierced."

The ordinary meaning of the word "pierced" further supports reconsideration of the interpretation of "screening medium" to include wedgewire. According to Merriam-Webster's dictionary, the ordinary definition of the word "pierced" is "having holes." (See Docket Entry 113-8 at p. 2). This definition is similar to the definition offered by AFT for the word "perforated" prior to the Order, which included "having holes" (See Docket Entry 113 at p. 12). This definition is also consistent with the claims that recite the screening medium having "openings" and "slots," and the specification that describe openings as "apertures of all shapes and sizes, including holes, slots, orifices and passageways." '940 Patent, col. 5, lines 36-40. The definition for the word "pierced" does not imply any way of making the holes. As shown in the drawings and described in the '940 Patent, wedgewire includes profiled wires that are uniformly spaced to define holes for pulp to flow therethrough. See e.g. '940 Patent, Figs. 2-4, 7-8.

Therefore, the exclusion of wedgewire from "screening medium" is contrary to its ordinary meaning and the Order improperly ignored the intrinsic evidence in arriving at a definition for the word "perforated" in construing the claim term "screening medium."

10

**Conclusion**

Based upon the foregoing and AFT's prior memorandums on claim construction, AFT respectfully requests reconsideration of the Order that excluded wedgewire from the claim term "screening medium."

Respectfully submitted,

Dated: September 27, 2010

/s/ Nicholas Mesiti
Nicholas Mesiti, Esq.
Brett Hutton, Esq.
Alana M. Fuierer, Esq.
Shanna K. O'Brien, Esq.
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle,
Albany, New York 12203-5160
Telephone: (518) 452-5600/Fax: (518) 452-5579
*Attorneys for Plaintiff*