UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ADVANCED FIBER TECHNOLOGIES
(AFT) TRUST,

        Plaintiff,

        -against-

J&L FIBER SERVICES, INC.,

        Defendant.

Civil Action No. 07-01191 LEK/DRH

---

## J&L FIBER'S MEMORANDUM OF LAW IN RESPONSE TO AFT'S MOTION FOR RECONSIDERATION OF CLAIM CONSTRUCTION ORDER RELATING TO THE CLAIM TERM "SCREENING MEDIUM"

Dated: October 26, 2010

David R. Cross
Johanna M. Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI 53202-4497
Telephone: (414) 277-5000
Email: johanna.wilbert@quarles.com

Edward R. Conan
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202-1355

Attorneys for Defendant
J&L Fiber Services, Inc.

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

ARGUMENT ...................................................................................................... 2

    I.     AFT HAS NOT MET THE STRINGENT STANDARD FOR
         RECONSIDERATION ..................................................................... 2

         A.    Reconsideration Is Available Only In Limited Circumstances Not
               Present Here ............................................................................... 2

         B.    There Has Been No Intervening Change In The Law ................................. 2

         C.    AFT Offers No Evidence That Was Previously Unavailable .................. 3

               1.      The patent does not illustrate a wedgewire screening plate ........... 3

               2.      The Patent Office's statement about Gillespie was made
                        before AFT narrowed the claims in re-issue ................................. 6

         D.    AFT Has Not Proven A Clear Error Of Law Or Manifest Injustice .......... 7

    II.    THE COURT CORRECTLY CONCLUDED THAT THE TERM
         "SCREENING MEDIUM" DOES NOT LITERALLY COVER A
         WEDGEWIRE SCREEN. ................................................................. 9

         A.    The Intrinsic Evidence Supports The Court's Conclusion That A
               "Screening Medium" Is A "Perforated Barrier" And That A
               "Perforated Barrier" Is Not A Wedgewire Screen ...................................... 9

         B.    The Dictionary Definition Of "Perforated" Adopted By The Court
               Is Consistent With The Intrinsic Evidence ............................................. 14

         C.    Public Policy Supports The Court's Previous Constructions .................. 16

CONCLUSION................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

Error! No table of authorities entries found.Error! No table of authorities entries found.

## SUMMARY OF ARGUMENT

After extensive briefing and oral argument, the Court correctly held that "screening medium" does not literally cover wedgewire screens, such as used in J&L's V-MAX. AFT's motion to reconsider does not challenge the Court's construction of "screening medium" as "a perforated barrier through which stock is passed to remove oversized, troublesome, and unwanted particles from good fiber." Instead, AFT now challenges the Court's definition of "perforated" as "pierced or punctured with holes" and the logical consequence of that definition -- namely, that a wedgewire screen is not literally within the scope of "screening medium."

AFT's motion should be denied because the Court's original holding was correct, and AFT has taken considerable liberties in describing the controlling law and the content of the '940 Patent and its prosecution history. Contrary to AFT's allegations, the Court's reference to dictionary definitions was perfectly appropriate and yielded constructions that are consistent with the intrinsic evidence. Additionally, the '940 Patent does not explicitly claim wedgewire, nor do any of its figures depict a wedgewire screen, as AFT now claims. Any statements by the Patent Office that AFT now relies upon for its argument that the patent literally covers wedgewire were made before AFT intentionally narrowed its claims in re-issue to avoid invalidating prior art. As the Court has properly held, AFT cannot now in litigation broaden the same claims it narrowed during prosecution.

There is no basis to reconsider the Court's claim construction rulings. The Court reached the correct construction the first time. AFT is simply re-arguing the very issues previously addressed by the parties in their summary judgment and claim construction submissions and oral arguments.

1

## ARGUMENT

I.   **AFT HAS NOT MET THE STRINGENT STANDARD FOR RECONSIDERATION.**

    A.   **Reconsideration Is Available Only In Limited Circumstances Not Present Here.**

Motions for reconsideration should not be granted "when the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration may only be granted upon "one of three possible grounds: (1) an intervening change in law, (2) the availability of evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice." In re C-TC 9th Ave. P'ship, 182 B.R. 1, 3 (N.D.N.Y. 1995). AFT's motion should be denied because it cannot prove any of the three grounds for reconsideration.

    B.   **There Has Been No Intervening Change In The Law.**

There has been no intervening change in the law, nor has AFT identified any controlling authority that the Court overlooked in reaching its decision. AFT does not even attempt to argue that the law has changed. The recently decided case that AFT cites did not change the law. It is instead completely consistent with the law that the parties had previously cited. While it appears that AFT cited the wrong Lamoureux v. AnazoHealth Corp. opinion, the correct opinion can be found at 2010 WL 341340 (D. Conn. Jan. 22, 2010). In this Lamoureux opinion, the trial court cited Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), as the basis for granting the motion to reconsider. Unlike in Lamoureux, the Phillips opinion was fully briefed before the Court issued its September 13th Order. In fact, both parties cited Phillips several times, and the Court cited Phillips in its order. (See Dkt. No. 114, Memorandum-Decision and Order; Dkt. No. 60, AFT's opposition to claim construction; Dkt. No. 45-2, J&L's brief in support of claim construction; Dkt. No. 39, J&L's opposition to summary judgment; Dkt. No. 33-1, AFT's brief

2

in support of summary judgment).  Likewise, the parties briefed and the Court considered and cited Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996), the only other case AFT cited in support of its substantive arguments.  (See Dkt. Nos. 114, 60, 39, 33-1).

Thus, Lamoureux, Philips, and Vitronics do not represent an intervening change in the law.  Unlike the Disclosure-Dedication rule addressed in J&L's motion to reconsider, AFT also cites no controlling authority that the Court or the parties overlooked.  It follows that the cases AFT cites do not support its motion to reconsider.

### C.   AFT Offers No Evidence That Was Previously Unavailable.

#### 1.   The patent does not illustrate a wedgewire screening plate.

AFT presents no new evidence for its motion for reconsideration.  Instead, AFT attempts to re-package two previously available pieces of evidence (the '940 Patent's drawings, in particular Figure 2, and the Gillespie reference) into something supposedly new.  This re-packaging is the basis for AFT's attempt to argue that the Court's opinion is based upon a factual error.  It is AFT, however, that has the facts wrong.

Specifically, AFT asserts for the first time in its motion for reconsideration that the patent's drawings supposedly show a wedgewire construction and specifically identifies Figure 2 as an example.  (Dkt. No. 119, AFT Br. at 5).  AFT's new argument based on the patent's drawings is not a ground for reconsideration because the drawings have been available to the Court and the parties since this dispute originated and are obviously not new evidence.  More importantly, AFT's argument is wrong because the patent's own description of the drawings proves they do not depict wedgewire.  AFT also ignores that the patent's only reference to wedgewire is expressly separate from the drawing descriptions.

In particular, Figure 2, upon which AFT so heavily relies, does not depict a wedgewire screen.  (Dkt. No. 86-13, Lutz Dep. 29:23-31:8) (explaining that the artwork is a conventional

3

milled slotted basket, not a wedgewire basket).  The brief description of Figure 2 explains that the figure illustrates the relative positions of the screening plate and backing plate and nothing more.  In fact, the patent itself states that Figure 2 is not only "exaggerated," but a "highly exaggerated, fragmentary" view "illustrating the juxtaposition of the screening plate and backing plate." ('940 Patent at col. 7, lines 29-30).

When drafting the patent, AFT and its predecessors never intended Figure 2, or any of the other figures, to depict a wedgewire screen.  In the Detailed Description of the Drawing Figures, AFT includes a 179 line description of Figures 2, 3 and 4.  (col. 7, line 57 through col. 10, line 34).  In this detailed description, Figure 2 is <u>never</u> referred to as wedgewire, and neither are any of the other drawings.  Furthermore, the reference numbers for the drawings are used consistently throughout all the patent's drawings in a manner that is not compatible with wedgewire.  For example, Figure 2 uses the reference numbers 12 and 20.  Reference number 12 is consistently used in the patent's drawings to depict the screening plate and reference number 20 is consistently used to depict the contoured grooves.  In the section of the patent describing the figures, the patent states "[i]n accordance with a preferred method of manufacture, the screening plate is initially in the form of a flat plate.  Contoured grooves 16 are formed along the inflow surface of the flat screening plate 12 and blind slots 26 are then formed through the bases 20 of the contoured grooves." (col. 8, line 36-40).  This is not how a wedgewire screen is made.  (Dkt. No. 39-8, Lutz Decl.).

Not only is there no reference to wedgewire in the patent's description of its drawings, but the patent's only reference to wedgewire is completely unrelated to the description of Figure 2 or any other drawing.  (See col. 11, lines 64-65).  Rather than saying the drawings are wedgewire, after describing all of the drawings in their entirety, the patent states, "Also, a

4

wedgewire screening plate may be used." (col. 11, lines 64-65). The placement of this sentence in relationship to the previous drawing descriptions, and use of the word "also" (a word AFT studiously avoids using in its brief when quoting this sentence), prove that the drawings described previously are <u>not</u> wedgewire -- instead of the other way around as AFT now claims. If the drawings depicted wedgewire, AFT would have had no reason to say that wedgewire "also" could be used. It follows that this single reference to wedgewire does not bring wedgewire within the literal scope of the claim term "screening medium," as the Court has already correctly ruled.

Additionally, AFT's own previous references to the patent's drawings call into question the legitimacy of AFT's new arguments. If AFT actually believed the patent figures disclosed wedgewire, AFT would have raised this argument before. Yet, until now, AFT has never claimed that the patent drawings depict wedgewire screens. In fact, AFT's own expert, Dr. Gooding, never once identified the figures as wedgewire. Instead, AFT's expert based his infringement argument not on the patent's drawings, or on literal infringement, but on an equivalence argument stemming from the patent's single sentence reference to wedgewire and his opinion that there are "no substantial differences" between wedgewire and the claimed invention because wedgewire performs "substantially the same function, in substantially the same way, to achieve substantially the same result." Dr. Gooding does not argue that wedgewire is the claimed invention, only that it is substantially similar -- an argument that would have been unnecessary if he believed the patent expressly claimed wedgewire. (10/26/2010 Cross Declaration, Ex. A, Gooding Report).

Similarly, as part of AFT's oral argument at the claim construction hearing, AFT described wedgewire to the Court and did not use any of the patent drawings as examples.

Instead, AFT used a number of detailed figures that are distinctly different from the patent figures. (Tab 4 of AFT's materials submitted at claim construction hearing). AFT has repeatedly referenced the patent figures in the course of this case, yet, until now, has never suggested that any of them were examples of a wedgewire screen. AFT's new theory about how old evidence should be viewed contradicts AFT's own previous arguments and does not satisfy the criteria for reconsideration.

> **2.     The Patent Office's statement about Gillespie was made before AFT narrowed the claims in re-issue.**

AFT makes a similar effort to re-package the Gillespie reference in an attempt to find something that may qualify as a factual basis for reconsideration. The Gillespie reference is not new evidence and is therefore not a basis for reconsideration. Moreover, AFT's new description of the prosecution history ignores important facts.

AFT's argument about the Gillespie reference is wrong because it fails to account for the undisputed sequence of events during the re-issue. The Patent Office initially rejected all of the patent's claims because the claimed invention was structurally "indistinguishable from Gillespie's screen." (Dkt. No. 60-6, O'Brien Decl., Ex. B, Part 25). But this was not the end of the story. In response to this rejection, AFT successfully argued that the Gillespie wedgewire screen cylinder was structurally <u>different</u> than AFT's claimed invention. To support its attempt to narrow construction of the claim terms, AFT submitted industry-specific definitions and then argued that its invention differed from Gillespie because the claimed invention was <u>not</u> a screen plate as defined by the definitions it submitted. In other words, AFT's arguments to the Patent Office differentiated the Gillespie wedgewire construction from the broader invention that the original '072 Patent claimed. Ultimately, the Patent Office accepted AFT's contention that the Gillespie reference had a different structure and allowed the claims.

AFT cannot have it both ways. While AFT may have gone into the re-issue with broad claims, AFT then intentionally narrowed the claims to avoid invalidating prior art. AFT narrowed its claims both by limiting the slot width and by arguing very specific technical definitions to the Patent Office. Because AFT was allowed to narrow its claims to avoid Gillespie, it cannot now argue in litigation that its claims are broad and cover Gillespie-type screens.

The parties had fully addressed what they believed to be the relevant aspects of the patent and the Gillespie reference during previous briefing and oral argument, and AFT's new arguments based on those known facts are wrong. It follows that none of the patent's drawings nor the Gillespie reference are new facts or in any other way grounds to change the Court's previous construction.

### D.    AFT Has Not Proven A Clear Error Of Law Or Manifest Injustice.

AFT has not proven a clear error of law or manifest injustice. AFT argues that the Court made an error of law when it considered dictionary definitions that AFT now claims were contrary to the intrinsic evidence. (Dkt. No. 119, AFT's Br. at 6, 8). AFT is wrong. As discussed further in Section II (B), below, the dictionary definitions considered by the Court are fully consistent with the intrinsic evidence. Additionally, the law supports the use of dictionaries in similar circumstances. In Phillips the Federal Circuit acknowledged that dictionaries "have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention" and may be useful when considered in the context of the intrinsic evidence. 415 F.3d at 1318-19. Referring to technical and other dictionaries "is not prohibited so long as the ultimate construction given to the claims in question is grounded in the intrinsic evidence and not based upon definitions considered in the abstract." Mangosoft, Inc. v. Oracle Corp., 525 F.3d 1327, 1330 (Fed. Cir.

7

2007) (affirming district court's reference to a dictionary during claim construction); see also Old Town Canoe Co. v. Confluense Holdings Corp., 448 F.3d 1309, 1316 (Fed. Cir. 2006) (district court's reference to the dictionary was properly "a starting point in its analysis").

The Court appropriately considered dictionary definitions. AFT chose to use a term in its claims that it did not define in the specification, making reference to extrinsic evidence such as dictionaries necessary. See Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1306 (Fed. Cir. 2006) (using a dictionary is proper where the intrinsic record does not define the term or provides limited guidance). Specifically, the term "screening medium" is not defined in the specification and is never used in the detailed description, or with reference to any of the drawings.

AFT was obviously aware of the limited information in the patent for the meaning of "screening medium." In fact, the lack of intrinsic evidence of the meaning of "screening medium" allowed AFT to introduce dictionary definitions to define the term during prosecution. (Dkt. No. 33, Mesiti Decl., Ex. B, Reply to Office Action 5/5/2006 at pgs. 21-22). AFT insisted that both the Court and the Patent Office should use these dictionary definitions to define "screening medium." In so doing, AFT proposed definitions that used the term "perforated," which, as the Court has already found, is another term that is not clearly defined in the patent. (Dkt. No. 114, p. 20). Because the intrinsic evidence does not clearly define key terms, it was appropriate for the Court to consult extrinsic evidence such as dictionaries. L.B. Plastics, Inc. v. Amerimax Home Prods., 499 F.3d 1303, 1308 (Fed. Cir. 2007) (using general and technical dictionaries is proper to define term when intrinsic record provided limited guidance).

It is ironic that AFT criticizes the Court's use of dictionary definitions when it used them itself to get the '940 Patent to issue and apparently at that time believed such definitions were

8

consistent with the intrinsic evidence.  It follows that AFT has not identified any error of law, let alone one sufficient to support its motion for reconsideration.

## II.  THE COURT CORRECTLY CONCLUDED THAT THE TERM "SCREENING MEDIUM" DOES NOT LITERALLY COVER A WEDGEWIRE SCREEN.

### A.  The Intrinsic Evidence Supports The Court's Conclusion that a "Screening Medium" is a "Perforated Barrier" and that a "Perforated Barrier" Is Not a Wedgewire Screen.

The Court's constructions of the terms "screening medium" and "perforated" as not encompassing a wedgewire construction are supported by the intrinsic evidence and should not be reconsidered.  There are three sources of intrinsic evidence:  (1) the claims, (2) the specification, and (3) the prosecution history.  Chisum on Patents § 18.03.  Each of these sources support the construction adopted by the Court.

There is no support for a wedgewire construction in the claims.  The '940 Patent never claimed a wedgewire, despite two prosecution phases during which AFT could have submitted a wedgewire construction to the Patent Office for examination.

The written description has the single reference to wedgewire, discussed in Section I (C)(1), above, a construction AFT disclaimed during prosecution of the '940 Patent by advocating technical definitions for the screening element that included "perforated."  (Dkt. No. 114, at 21).  The specification, in fact, includes over five pages of description before this sole reference to a wedgewire construction.  The patent's use of the term "Also" to precede this reference to wedgewire emphasizes that a wedgewire construction is different from the constructions described throughout the rest of the specification, as discussed in Section I(C)(1), above.  Other than this single mention, the specification provides no disclosure of a "wedgewire."  In particular, the specification fails to disclose any construction that is assembled from wire bars, as a wedgewire screen is assembled.

The written description, rather, describes a "screening plate" and a "backing plate" that are constructed to include "openings." The term openings is "is intended to encompass apertures of all shapes and sizes, including holes, slots, orifices and passageways." (col. 5, lines 36 – 41). The patent consistently describes "openings" as "formed" for both the screening plate and backing plate components.

The written description further clarifies that one type of "openings" is a "perforation." Although the Court is correct that the term "perforated" is not defined in the '940 Patent, the specification illustrates what the inventor believed the term to mean. While describing a first embodiment of the backing plate, the patent specifically defines the backing plate as a "perforated plate." (col. 2 line 66 - col. 3 line 5). This embodiment is later described as having "a plurality of relatively large openings" (see also Fig. 1, which illustrates a first embodiment of the backing plate, and Figure 5 which illustrates the second embodiment), which are "punched or drilled through the material" in "cylindrical or other shapes." (col. 8, lines 50-51, see also col. 11, lines 15-23). Under the patent, a perforated construction, therefore, is one that is "punched or drilled," which are manufacturing techniques that can be used to make "openings" in any number of shapes.

Other methods of forming openings described in the specification are consistent with the "punching or drilling" and include forming using "machining, water jets, electric discharge, or lasers" (col. 2, lines 59 - 61) and openings that are "cut" (col. 4, lines 5 – 15).

Since there is no distinction in terminology used for constructing the screening and backing plates, the specification discloses a perforated construction. Moreover, as the Court has already found, AFT disclaimed wedgewire by insisting that the invention is a "perforated barrier" in its arguments to the Patent Office to differentiate Gillespie. The use of the term

10

"perforated plate" in the specification makes it clear that AFT understood what "perforated" meant when it made this argument. Under these facts, it was entirely appropriate for the Court to adopt a claim construction that did not literally cover wedgewire.

Claim 18, which AFT relies upon for its motion, provides a clear example of the flaws in AFT's arguments. AFT ignores important facts in its attempt to convince the Court to change its claim construction order.

Claim 18 recites a screening plate and defines the construction of a screening plate. As with the other claims, claim 18, and the claims that are dependant upon it, do not claim wedgewire. The Court appropriately held that claim 18 does not literally disclose a method of constructing wedgewire, pointing out that AFT itself had not argued literal infringement but instead had argued that "'[i]n the process of assembling the wires, J&L *substantially performs* steps (a)-(c) of claim 18.'" (Dkt. No. 114 at 41, quoting from Dkt. No. 44 at 13). Nevertheless, AFT now alleges that method claim 18 purportedly "recites a method of manufacturing a wedgewire screening plate, without explicitly using the word 'wedgewire'" and further, that this method does not require piercing or punching, but instead requires "forming." (Dkt. 119, AFT Br. at 6). This new argument not only contradicts AFT's previous arguments but is wholly unsupported by the intrinsic evidence.

The language of claim 18, the specification and the prosecution history support the Court's interpretation, not AFT's new argument. Claim 18 describes a series of steps for manufacturing a screening plate, which can be metal (dependent claim 19) or ceramic (dependent claim 21). Since claim 18 uses a broad, non-technical term "forming," it is appropriate to rely on the written description to reconcile the scope of the claim language and to define forming. Specifically, the meaning of "forming" can be readily understood by reference to the "forming"

11

steps described in the specification.  These steps are all methods by which material is removed

from a metal or ceramic plate, in a manner consistent with the terms the Court used in its

definition of perforated (pierced or punctured).  Specifically, the patent explains that the

openings may be "punched" or "drilled."  (col. 8, line 52; col. 11, lines 18 - 19).  The

specification discloses only manufacturing methods that remove material.  In fact, the steps

themselves describe removing material, calling for the forming of grooves "to expose the

openings" to leave a plurality of ridges in the plate.  (col. 15, lines 24-33).  Thus, given the

patent's consistent use of "forming" to reference steps removing material, it is appropriate to

define this terms through the implications that can be drawing from its use in the specification.

Bell Atlantic Network Services v. Covad Com., 262 F.3d 1258, 1269-70 (Fed. Cir. 2001)

(holding "the specification may define claim terms by implication such that the meaning may be

found in or ascertained by a reading of the patent documents").

      The prosecution history of the original '072 Patent clarifies the claimed manufacturing

steps, giving further support for the Court's construction that the patent does not literally claim

wedgewire.  Specifically, in response to a rejection, AFT's predecessor characterized the

invention by stating "applicants' method requires the formation of blind openings in the screen

plate and then forming grooves in the opposite face of the screen plate arranged to expose the

openings to leave a plurality of ridges in the plate."  (Dkt. No. 50-14, Exh. B, prosecution history

of the '072 Patent).  The prosecution history thus establishes a sequence of steps that is wholly

inconsistent with how J&L's wedgewire screens are manufactured.  (Dkt. No. 39-8, Lutz Decl.).

It is obviously not possible to form grooves to expose openings in aligned wire bars.  Claim 18

requires a step that involves removing material.  (Dkt. No. 50-14 Exh. B).  Making wedgewire

screens does not require the removal of any material, so it does not literally infringe as the Court

has correctly held.  In fact, making wedgewire screens involves a vastly different process: joining metal components together.

Additionally, AFT incorrectly bases its argument on the specification's lone reference to wedgewire, apparently believing that claims must be construed so as to literally cover everything that appears in the specification.  But as we explained in detail in support of J&L's motion for reconsideration, the Disclosure-Dedication rule holds that subject matter disclosed but not claimed is dedicated to the public.  As a result, that the '940 Patent's specification mentions a specific subject matter but does not claim it does <u>not</u> mean that all claims refer to or claim that subject matter.  <u>PSC Computer Products, Inc. v. Foxconn Int'l, Inc.</u>, 335 F.3d 1353, 1360 (Fed. Cir. 2004) (patentee dedicated plastic clips to the public by explicitly only claiming clips of metal, while, at the same time disclosing plastic claims in the specification).  Further, claims are interpreted to exclude embodiments when, as here, those embodiments are disclaimed in the prosecution history.  <u>Oatey Co. v. IPS Corp.</u>, 514 F.3d 1271, 1277 (Fed. Cir. 2008).

AFT makes similarly unsupported arguments regarding the scope of claims 1, 10, 11, 27, 29, and 37 through 39, namely that these claims include openings, slots or grooves that supposedly cannot be made by puncturing or piercing due to the elongated nature of the opening. (Dkt. No. 119, AFT's Br. at 6-7).  These arguments are both unsupported and untrue.  The length and configuration of a punctured or pierced component is obviously governed by the size and shape of the device that is used to puncture or pierce the component.  AFT has submitted absolutely no evidence to support its argument that the slot openings claimed in the '940 Patent are impossible to construct by puncturing or piercing.  In fact, the specification of the '940 Patent states that openings that are punched or drilled may be "cylindrical or other shapes." (col. 11, lines 16-18).

13

B.     **The Dictionary Definition of "Perforated" Adopted By The Court Is Consistent With The Intrinsic Evidence.**

The Court's construction of "perforated" as "pierced or punctured with holes" is also consistent with the intrinsic evidence.  As discussed above in Section II(B)(1), the specification uses the term "perforated plate" when it describes the first preferred embodiment of the backing plate and then describes the manufacture of "openings" in the plate using terms such as "punched" and "drilled."  When describing the steps to construct the screening component, the patent also describes a process that involves making holes, or as described in the analysis of claim 18, removing material to construct the screening plate.  In particular, the specification states that contoured grooves are formed in one side of the screening plate and that blind slots are then formed through the bases of the contoured grooves.  The opposite side of the screening plate is then grooved so that these grooves open into the previously formed blind slots.  In other words, material is removed and holes are made to manufacture a screening plate.  It follows that the patent's descriptions of the backing plate and the screening plate are completely consistent with the Court's construction of "perforated" as "pierced or punctured with holes."

AFT's argument regarding the meaning of "pierced" is inconsistent with AFT's previous arguments and inconsistent with the dictionary definitions the parties previously submitted to the Court.  To support its new arguments regarding "perforated," AFT now asks the Court to construe the term "pierced."  (Dkt. No. 119, AFT Br. at 9-10).  The parties had not previously asked the Court to construe the term "pierced," because before the Court issued its September 13th Order the parties had agreed that the term "pierced" did not cover wedgewire.  In fact, in its post-hearing brief, AFT stated that "a wedgewire screen is not made by puncturing or piercing."  (Dkt. 113 at 9, AFT's Post-Hearing Br.).  Despite this, and other previous statements to the

14

contrary, AFT has turned 180 degrees and now argues that its newly proffered definition of "pierced" literally covers wedgewire. (Dkt. 119, AFT's Br. at 9-10).

AFT's arguments regarding the meaning of "pierced" are inappropriate to raise at this time. AFT had ample opportunity to identify claim terms that required the Court's construction and even identified new terms at the claim construction hearing. The time for identifying claim terms for construction has passed. That AFT now believes "pierced" is a term that requires the Court's analysis is simply not a basis upon which to reconsider the Court's previous order.

AFT's newly proffered construction is also wrong on the merits. AFT omits the portion of the dictionary's definition of "pierced" that supports the Court's previous construction. AFT's argument focuses on the definition of "pierced" as an adjective, but fails to include the definition of "pierced" as a verb. As the Court noted, the parties agree that "perforated" is a term that requires holes, and as the Court correctly concluded based on the evidence previously submitted, "perforated" carries with it the connotation of how the holes are made. This correctly lead the Court to construe "perforated" to mean "pierced or punctured with holes." Because the definition of the verb form of "pierced" references how holes are made, the meaning of the verb form "pierced" is the relevant definition, not the adjective form of "pierced" that AFT relies upon in its motion. The definition of the verb form of "pierced" is reproduced below:

> **pierce** \'pɪ(ə)rs\ *vb* **pierced; pierc·ing** [ME *percen,* fr OF *percér*] *vt* (13c)
> **1  a :** to run into or through as a pointed weapon does : STAB  **b :** to enter or thrust into sharply or painfully  **2 :** to make a hole through : PERFORATE  **3 :** to force or make a way into or through  **4 :** to penetrate with the eye or mind : DISCERN  **5 :** to penetrate so as to move or touch the emotions of ⁓ *vi* : to force a way into or through something

(Dkt. No. 107-9).

These definitions fully support the Court's claim construction and incorporate the concept of making a hole by stabbing or penetrating. It is the same meaning that the parties have

15

used for the terms "pierce," "pierced" and "piercing" in previous submissions -- namely in a manner that does <u>not</u> include wedgewire.

### C.   <u>Public Policy Supports The Court's Previous Constructions.</u>

Patent law requires that an inventor particularly point out and distinctly claim the subject matter of his invention.  35 U.S.C. s. 112.  This requirement puts the public on notice of the subject matter claimed.  It is widely recognized that allowing a patent holder to alter his claims as part of a litigation strategy runs counter to this basic policy.  <u>Unique Concepts, Inc. v. Brown</u>, 939 F.2d 1558, 1532 (Fed. Cir. 1991) (it is improper for a patent holder to expressly state throughout his specification and in his claims that his invention contains certain limitations, but then in litigation expand the claims by pointing to one paragraph in the specification that lacks the limitation and use it to claim the broader interpretation).  Allowing such litigation-based claim adjustments would encourage an applicant to escape examination of more broadly-claimed inventions by purposely filing narrow claims and then, after the patent issues, asserting a broader scope based on an alternative structure that appears in the specification but which was never presented to the Patent Office for examination.  Such tactics have widely been recognized as contrary to "the important definitional and public-notice functions of the statutory claiming requirement."  <u>Sage Products, Inc. v. Devon Indus., Inc.</u>, 126 F.3d 1420, 1430 (Fed. Cir. 1997).

AFT is attempting to do exactly that with its motion to reconsider.  Wedgewire was used in the prior-art Gillespie reference and was thus known to both AFT and the Patent Office during the prosecution of the '940 Patent.  AFT could have removed any doubt about whether its claims literally disclosed a wedgewire construction by using the term "wedgewire" in its claims and submitting those broader claims for examination.  Because AFT did not give the Patent Office the opportunity to properly evaluate any claims that referenced wedgewire, AFT cannot allege in litigation that the scope of its claims includes wedgewire either literally or by equivalence.

QB\11536021.3

Additionally, because the patent applicant has the burden to "particularly point out and distinctly claim the subject matter of his invention," when a court is faced with choice between a broader and a narrower meaning of a claim, the narrower meaning favoring the accused infringer is the appropriate choice due to the notice function of the claims. Athletic Alternatives, Inc. v. Prince Mfg., 73 F.3d 1573, 1581 (Fed. Cir. 1996) (holding "the notice function of the claim to be best served by adopting the narrower meaning"). The narrower meaning is more appropriate because the primary purpose of the notice requirement is "to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights." General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402 (1938).

The definition that the Court previously adopted for perforated, which includes reference to the way the holes are made, namely by piercing or puncturing, is a narrower definition, and thus more appropriate than AFT's definition, which broadly includes any holes, with no reference to how they were formed. It follows that the ordinary meaning of "pierced," which incorporates how the holes are made, supports the Court's construction of the terms "perforated" and "screening medium" as well as the Court's conclusion that the patent does not literally claim a wedgewire screen.

## CONCLUSION

AFT's motion for reconsideration is nothing more than an attempt to re-argue a point that it has already lost. AFT has not satisfied any of the criteria for reconsideration and has presented no evidence or authority to legitimately argue that the Court should change its original claim construction rulings. The Court should deny AFT's motion for reconsideration or, alternatively, re-affirm its previous constructions of the claim terms at issue.

17

Dated this 26th day of October, 2010.

Respectfully submitted,

/s/ David. R. Cross

David R. Cross
Johanna M. Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI  53202-4497
Telephone:  (414) 277-5000
Email:  johanna.wilbert@quarles.com

Edward R. Conan
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202-1355

*Attorneys for Defendant*
*J&L Fiber Services, Inc.*

18