UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADVANCED FIBER TECHNOLOGIES
TRUST,

        Plaintiff,

   -against-         1:07-CV-1191 (LEK/DRH)

J&L FIBER SERVICES, INC.,

        Defendant.

## DECISION AND ORDER

**I. INTRODUCTION**

   This action involves the alleged infringement of U.S. Patent No. RE 39,940 (the "'940 patent") (Dkt. No. 45-4, Ex. A). Advanced Fiber Technologies ("AFT"), the owner of that patent, asserts that the V-Max screen cylinder ("V-Max") made by J&L Fiber Services, Inc. ("J&L") infringes upon multiple claims of the '940 patent. Complaint (Dkt. No. 1). On September 13, 2010, by Memorandum-Decision and Order (the "September Order") this Court construed eleven disputed terms and the Preamble to claim 18 of the '940 patent. Dkt. No. 114. The Court then adjudicated each party's Motion for summary judgment on the issue of infringement, denying AFT's Motion (Dkt. No. 33) and largely denying J&L's Motion (Dkt. No. 50). Each party has filed a Motion for reconsideration of aspects of the September Order. See Dkt. Nos. 115, 117.

**II. BACKGROUND**

   The Court assumes familiarity with the underlying facts and procedural history of this action. For a detailed overview, reference is directed to the September Order.

   The '940 patent includes two independent device claims, claims 1 and 10, and one

independent method claim, claim 18. Of relevance to the instant Motions, claims 1 and 10 recite a "screening medium." The Court construed "screening medium" to mean "a perforated barrier through which stock is passed to remove oversized, troublesome, and unwanted particles from good fiber." September Order at 12-17. It also construed "perforated" to mean "pierced or punctured with holes." Id. at 20-21. The Court reached that construction despite a one-sentence mention in the patent specification that "a wedgewire screening plate may be used." '940 patent, Col. 11, Lns. 64-65. It did so after considering the patent's claims and prosecution history, during which AFT limited the breadth of the patent in order to avoid prior art, specifically the Gillespie (U.S. Patent No. 4,276,265). September Order at 21, 13-17.

Claim 18 describes a three-step method of manufacturing a screen for use in screening pulp. Step (a) describes "forming elongated . . . grooves in said first face" of the screening plate. Step (b) requires the "forming of openings through the bottom of the grooves in said first face and into the screening plate to terminate within the screening plate short of said second face." Step (c) calls for "forming elongated grooves in the second face of the screening plate . . . to a depth to expose the openings formed in step (b) so that the openings extend entirely through said screening plate . . . ." The Court construed the "screening plate" described in claim 18 to be equivalent to the "screening medium" described in claims 1 and 10. September Order at 9-12.

Based on these and other construed terms, the Court denied AFT's Motion for summary judgement on the issue of infringement and largely denied J&L's Motion for summary judgment on that issue. It found that the V-Max, which employs a wedgewire construction, does not literally exhibit a "screening medium." Id. at 39. Central to the Court's denial of J&L's Motion was its determination that triable issues of fact exist as to whether wedgewire might be equivalent to the

'940 patent's "screening medium." Id. at 39-40.

AFT now seeks reconsideration of the Court's construction of "screening medium" and "perforated." Dkt. No. 117. J&L seeks reconsideration of the Court's determination that triable issues of fact remain on the issue of infringement. Dkt. No. 115.

### III. DISCUSSION

#### A. Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "[A] motion for reconsideration is not designed to accord an opportunity for the moving party, unhappy with the results, to take issue with the Court's resolution of matters considered in connection with the original motion." USA Certified Merchants, LLC v. Koebel, 273 F. Supp. 2d 501, 504 (S.D.N.Y. 2003) (citation omitted). Thus, reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d 257; see also Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). Accordingly, a court should generally refrain from revising its earlier decisions "unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin v. Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

**B. AFT's Motion for Reconsideration**

AFT seeks reconsideration of the Court's construction of "screening medium," "perforated," and "pierced." It suggests that, properly construed, these terms include wedgewire. Mem. in Supp. of Pl.'s Mot. (Dkt. No. 119) ("Pl.'s MOL"). AFT makes no real attempt to show that an intervening change in the law compels reconsideration or any of these terms. Id. However, regarding the Court's construction of "screening medium," AFT asserts that the Court overlooked aspects of the '940 patent's specification, claims, and prosecution history, and that led to a legally erroneous construction. Pl.'s MOL. AFT offers nothing that would qualify as "new evidence" in support of this position. Rather, it points only to the '940 patent's claims, prosecution history, and specification, including a drawing therein, which it argues depicts a wedgewire screening medium. Id. at 5-8. Each, of course, was before the Court when it reached its prior decision and affords no basis for reconsideration. Similarly, AFT's attempt to argue for the first time that Figure 2 depicts a wedgewire construction is not appropriately considered on a motion for reconsideration. See Brown v. Middaugh, No. 96-CV-1097, 1999 WL 242662, at *1 (N.D.N.Y. April 21, 1999) ("motion for reconsideration is not to be used as a means . . . to put forward additional arguments that a party could have made but neglected to make before judgment"); Assoc. Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 20 (S.D.N.Y. 2005).[1]

Next, AFT seeks reconsideration of the Court's construction of "perforated," arguing that

---

[1] In any event, AFT's argument is specious. Neither the "Brief" nor "Detailed Description of the Drawing Figures" contained in the specification suggest that Figure 2 depicts a wedgewire construction. '940 patent, Cols. 7-10. In fact, the specification's single mention of wedgewire immediately follows those descriptions. It reads, "*Also*, a wedgewire screening plate may be used." Id., Col. 11, Lns. 64-65 (emphasis added). The use of "Also" strongly suggests that the preceding description of the drawings, including Figure 2, does not describe a wedgewire screening medium.

4

the current construction results in a manifest error of law.  Id. at 8.  AFT asked the Court to construe that term at the July 22, 2010 Markman hearing; the Court granted that request and accepted additional filings for that purpose.  See Dkt. Nos. 108, 109, 113.  AFT's request for reconsideration essentially mirrors the argument that it made in its prior filing.  Compare Pl.'s MOL at 8-9 with Dkt. No. 113 at 8-11.  The Court will not reconsider its prior decision on the strength of already advanced arguments.  See, e.g., Assoc. Press, 395 F. Supp. 2d 17, 19-20; Shannon v. Verizon, 519 F. Supp. 2d 304 (N.D.N.Y. 2007).

Finally, AFT argues that reconsideration of the Court's construction of "perforated" is necessary because it rests on an improper interpretation of the term "pierced."  Pl.'s MOL at 9-10.  In the three opportunities the parties had to raise disputed terms, neither has ever requested construction of the term "pierced."  AFT's attempt to raise the meaning of this term now does not afford a basis for reconsideration of the Court's prior construction of "perforated."

Throughout its Memorandum of law (Dkt. No. 119), AFT argues that the Court committed legal error in improperly relying on extrinsic evidence.  In its September Order, the Court recited and applied the law governing claim construction.  Whatever merit AFT's position exhibits may form the basis of an appeal, but does not justify reconsideration at this juncture.  Accordingly, AFT's Motion (Dkt. No. 117) is denied.

**C.  J&L's Motion for Reconsideration**

J&L has also filed a Motion for reconsideration that relates to the Court's construction of the terms "screening medium" and "perforated."  Dkt. No. 115.  J&L asserts that the Court's construction of these terms implicates the disclosure-dedication rule and that, as a result, the Court erred in finding that triable issues of fact remain as to whether the V-Max's wedgewire construction

5

infringes upon the '940 patent under the doctrine of equivalents. Mem. in Supp. Def.'s Mot. (Dkt. No. 115-1) ("Def.'s MOL"). J&L notes that the parties had not briefed the disclosure-dedication rule, and the Court did not address that rule's applicability; it asks the Court to do so now.

As a preliminary matter, the Court finds that J&L is not estopped from making this argument. AFT argues that J&L could have raised the disclosure-dedication rule in its Motion for summary judgment but that it may not properly do so in a motion for reconsideration. Pl.'s Response (Dkt. No. 124) at 3-5. While it is true that "[a] motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue," Fredericks v. Chemipal, Ltd., No. 06-CV-966, 2007 WL 1975441, at *1 (S.D.N.Y. July 6, 2007), this Court retains discretion to reconsider its prior rulings when relevant controlling precedent is brought to its attention. See Shrader, 70 F. 3d at 257 ("reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked"); Adams v. Cunningham, No. 9:07-CV-0328, 2008 WL 5169551 (N.D.N.Y. Dec. 9, 2008) (reconsideration is appropriate when a court overlooks contrary controlling precedent).

Under the disclosure-dedication rule, "subject matter disclosed but not claimed in a patent application is dedicated to the public." Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562-63 (Fed. Cir. 1991); PSC Computer Prods., Inc. v. Foxconn Int'l, Inc, 355 F.3d 1353, 1360 (Fed. Cir. 2004) ("if one of ordinary skill in the art can understand the unclaimed disclosed teaching upon reading the written description, the alternative matter disclosed has been dedicated to the public"); Mahn v. Harwood, 112 U.S. 354, 361(1884) ("The presumption is . . . that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property if it was not so before"). Where applicable, the

rule prohibits finding either literal infringement or infringement under the doctrine of equivalents. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1107 (Fed. Cir. 1996). Thus,

> [a] patentee may not narrowly claim his invention and then, in the course of an infringement suit, argue that the doctrine of equivalents should permit a finding of infringement because the specification discloses the equivalents. Such a result would merely encourage a patent applicant to present a broad disclosure in the specification of the application and file narrow claims, avoiding examination of broader claims that the applicant could have filed consistent with the specification.

Id. (citations omitted).

The Federal Circuit has determined that a patentee may not recapture under the doctrine of equivalents unclaimed subject matter that the patentee disclosed in the specification but did not claim. Johnson & Johnson Assocs. v. R.E. Serv. Co., 285 F.3d 1046 (Fed. Cir. 2002). This is exactly the scenario in the case of the '940 patent. Therefore, the Court finds its prior determination that a trial is necessary to determine whether wedgewire is equivalent to a perforated barrier was a clear error of law, and a refusal to revisit that prior decision would work a manifest injustice.

The '940 patent's specification discloses a wedgewire screen. '940 patent, Col. 11, Lns. 64-65. However, as documented in the parties' briefings and the Court's September Order, AFT intentionally narrowed the scope of its patent during its prosecution in order to avoid prior art, specifically the Gillespie. See September Order at 15-17. It did so by arguing to the Patent Examiner that the claim terms have particular meanings in the pulp treatment art and articulated those meanings by way of definitions supplied by the Handbook of Pulp and Paper Technology, including the definition of "SCREENING" which, in turn, incorporates the term "perforated barrier." Id. at 15. In light of that history, the Court adopted the Handbook's definition when construing the term "screening medium." Id. at 17. The Court also construed the term "perforated" to mean "pierced or punctured with holes" as it appears in that definition. Id. at 20-21.

7

By limiting the claims terms during the prosecution of the '940 patent, AFT dedicated to the public the remainder of unclaimed subject matter, including wedgewire construction. AFT may not seek a finding of infringement under the doctrine of equivalents. See Johnson & Johnson, 285 F.3d at 1054-55 ("a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents"); id. at 1056-58 ("as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure") (Rader, J., concurring) (emphasis removed); Toro v. White Consol, 383 F.3d 1326 (Fed. Cir. 2004).

AFT argues that the disclosure-dedication rule only applies to patents where unclaimed subject matter that is expressly excluded from the claims is disclosed as an alternative to the claim limitation. Relying on the Supreme Court's decision in Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 336 U.S. 271 (1949) and Justices Black and Douglas' dissents in Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605 (1950), AFT contends that the disclosure-dedication rule does not apply when the claim language is broad enough to cover the alternative embodiments described in the specification; it claims that the '940 patent's claims are sufficiently broad to cover wedgewire, and thus, wedgewire has not been dedicated to the public. Pl.'s Response (Dkt. No. 124). Essentially, AFT's position is that because the 940 patent's claims recite a "screening medium," a term it argues is broad enough to cover wedgewire, and because the claims do not expressly exclude wedgewire, the specification's mention of wedgewire is not an unclaimed alternative embodiment, and has not been dedicated to the public. Id. This argument overlooks a

relevant fact, namely that the Court has determined that AFT narrowed the claims such that the term "screening medium" as used in the '940 patent is not sufficiently broad to cover wedgewire. September Order at 17, 21. The Court's claim construction is the law of the case, see Toro, 383 F.3d at 1333, and applying those constructions, the '940 patent's claims do not include wedgewire. Thus, wedgewire appears as unclaimed subject matter disclosed in the specification.[2]

The same reasoning applies to a related argument that AFT advances, namely that unclaimed subject matter is dedicated to the public only where that subject matter is identified as an alternative to a claim limitation. Pl.'s Response at 9 (citing Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1379 (Fed. Cir. 2005). AFT asserts that "Defendant's argument fails because it erroneously presupposes that the claims of the '940 Patent expressly recite a limitation that the screening medium be formed of a perforated barrier that is made by *puncturing or piercing*. The claims of the '940 patent express no such limitation." Id. In fact, J&L does not "presuppose" the limitations of the claims. Rather, those limitations track the Court's construction of "screening medium" and "perforated." See September Order. The specification discloses an unclaimed alternative wedgewire construction. That unclaimed alternative embodiment is dedicated to the public.

Finally, AFT argues that application of the disclosure-dedication rule in this case would not advance that rule's purpose of preventing a patentee from presenting a narrow claim during prosecution and then expanding that its rights in subsequent litigation. Pl.'s Response at 9-10. AFT contends that during prosecution of the '940 patent, the Examiner had the opportunity to examine the

---

[2] AFT's reliance on Graver Tank is misplaced, as the cases are readily distinguishable. In Graver Tank, the patentee clearly claimed the subject matter at issue, but the claims were invalidated as overly broad and not narrowed by the specification. 271 U.S. at 276-78. Here, the issue resolved by September Order is whether the claims are broad enough to cover wedgewire.

broad subject matter and compare this with prior art, including the wedgewire screening medium of the Gillespie. Id.  This is incorrect.  The limitations to the claims of the '940 patent are the result of AFT's prosecution strategy to avoid the Gillespie.  AFT narrowed its claims after the Examiner found that the '940 patent was anticipated by the Gillespie.  See September Order at 13-17; O'Brien Decl., Ex. B, Parts 25, 29 (Dkt. No. 60-5).  Now, under the doctrine of equivalents, AFT seeks a broader right than that which the Examiner considered.  Preventing a patentee from doing so is precisely the point of the disclosure-dedication rule.  Johnson & Johnson, 285 F.3d at 1054-55.

Accordingly, the Court finds that its prior determination that triable issues of fact exist as to whether J&L's V-Max cylinder infringes upon AFT's '940 patent was erroneous.  Upon reconsideration, the Court finds that no triable issues remain, as AFT may not seek to recapture at trial any unclaimed subject matter that it disclosed in the specification to the '940 patent.  Under the disclosure-dedication rule, that unclaimed subject matter was dedicated to the public and cannot form the basis for a finding of infringement under the doctrine of equivalents.

## IV. CONCLUSION

In light of the foregoing, it is hereby

**ORDERED**, that AFT's Motion for reconsideration (Dkt. No. 117) is **DENIED**; and it is further

**ORDERED**, that J&L's Motion for reconsideration (Dkt. No. 115) is **GRANTED**, and AFT's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:   January 21, 2011
         Albany, New York

Lawrence E. Kahn
U.S. District Judge