UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADVANCED FIBER TECHNOLOGIES
(AFT) TRUST,

                          Plaintiff,

        -against-                              1:07-CV-1191 (LEK/DEP)

J&L FIBER SERVICES, INC.,

                          Defendant.

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

This patent-infringement action is before the Court on remand from the Federal Circuit Court of Appeals. See Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc. (AFT II), 674 F.3d 1365 (Fed. Cir. 2012). Plaintiff Advanced Fiber Technologies (AFT) Trust ("Plaintiff") appealed from the Court's grant of summary judgment of noninfringement and lack of willfulness in favor of Defendant J&L Fiber Services, Inc. ("Defendant"). Id. at 1367. The Court of Appeals affirmed the grant of summary judgment on willfulness, but reversed the grant of summary judgment of noninfringement because the Court had construed a claim term improperly. Id. at 1367, 1374-75. Both parties have now renewed their Motions for summary judgment, and Plaintiff has filed a Motion to strike an expert report and a declaration and arguments relying thereon. See Dkt. Nos. 150; 161; 170. For the following reasons, the Court denies Plaintiff's Motions to strike and for summary judgment and grants in part Defendant's Motion for summary judgment.

## II.  BACKGROUND[1]

Plaintiff asserts U.S. Patent No. 5,200,072 and its 2007 reissue, U.S. Patent No. RE39,940 (collectively, the "'940 Patent"), which describe a screening device intended to increase the efficiency of filtering paper-pulp stock by reducing clogging. See AFT II, 674 F.3d at 1367. Plaintiff, a Canadian trust, commenced this action against Defendant, a Wisconsin corporation, on November 9, 2007, invoking the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and claiming that Defendant's "V-MAX screen cylinder" infringes the '940 Patent. Dkt. No. 1 ("Complaint"). At issue are the three independent claims of the '940 Patent—claims 1,[2] 10,[3] and

---

[1] Because the background of this case has already been documented by both the Court and the Court of Appeals, the Court recites it here only briefly. For a fuller account, see AFT II, 674 F.3d at 1367-72, or Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc. (AFT I), 751 F. Supp. 2d 348, 353-54 (N.D.N.Y. 2010) (Kahn, J.).

[2] Claim 1 of the '940 Patent reads:
A screen cylinder comprising:
a generally cylindrical screening medium having a plurality of openings therethrough;
a generally cylindrical structural backing plate for structurally supporting said screening medium and having a plurality of openings therethrough; [and]
said screening medium and said structural backing plate lying concentrically one within the other and having respective opposed surfaces in engagement with one another at an interface therebetween whereby said backing plate structurally supports said screening medium;
one of said screening medium and said backing plate having a plurality of circumferentially extending recesses formed in its opposing surface and opening at the opposing surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the respective openings of said screening medium and said backing plate; *and*
a plurality of axially spaced projections spaced one from the other in the axial direction defining said recesses and projecting radially from one of said screening medium and said backing plate at said interface;
the openings in said screening medium being elongated and extending in a generally axial direction substantially normal to the circumferential extent of said recesses.
'940 Patent col.13 ll.24-52.

[3] Claim 10 of the '940 Patent reads:
A screen plate for screening pulp flowing therethrough comprising:

2

18[4]—and various dependent claims. See Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc. (AFT I), 751 F. Supp. 2d 348, 373 & 353 nn.2, 4 (N.D.N.Y. 2010) (Kahn, J.); Dkt. No. 150-1 ("Plaintiff's MSJ Memorandum") at 8-10.

On February 22, 2008, Defendant timely filed its Answer.[5] Dkt. No. 12; see Dkt. No. 7.

---

a screening medium having a plurality of slots therethrough and extending generally parallel to one another, said slots having contoured portions on an inflow side of said screening medium; *and*
a structural backing plate having a plurality of openings therethrough;
said screening medium and said structural backing plate lying in registration one with the other and having respective opposed surfaces in engagement with ne [sic] another at an interface therebetween whereby said backing plate structurally supports said screening medium;
one of said screening medium and said backing plate having a plurality of recesses formed in its opposing surface and opening at the opposite surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the openings of said backing plate and said slots of said screening medium;
whereby pulp may flow sequentially through said slots, said recesses and said openings in said backing plate.

'940 Patent col.14 ll.15-35.

[4] Claim 18 of the '940 Patent reads:
A method of manufacturing a screen for use in screening pulp, said screen being formed of a screening plate and a backing plate, said screening plate having first and second opposite faces, comprising the steps of:
(a) forming elongated, substantially parallel, grooves in said first face, each groove having a side face and a bottom;
(b) forming openings through the bottom of the grooves in said first face and into the screening plate to terminate within the screening plate short of said second face thereof;
(c) forming elongated grooves in the second face of said screening plate inclined relative to the longitudinal extent of the grooves formed in step (a) and to a depth to expose the openings formed in step (b) so that the openings extend entirely through said screening plate, and leave a plurality of ridges in the second face spaced one from the other therealong and extending in a direction inclined relative to the longitudinal extent of said grooves.

'940 Patent col.15 ll.13-33.

[5] Defendant's Answer included a counterclaim for a declaratory judgment of invalidity, but the Court later approved a stipulation of the parties dismissing the counterclaim without prejudice. Dkt. No. 145.

3

Following discovery and the resolution of several other motions, the Court issued a Memorandum-Decision and Order on September 13, 2010, addressing Defendant's Motions for summary judgment and the construction of claim terms, and Plaintiff's Motions for summary judgment as to infringement and validity. AFT I, 751 F. Supp. 3d 348. In AFT I, the Court construed all then-disputed terms of the '940 Patent, including those identified as disputed after the close of discovery. Id. at 354. The Court's constructions were as follows:

> *Screen Plate*: An assembly of a screening medium and a backing plate. Not synonymous with "screening plate," which is synonymous with "screening medium." Id. at 356-58.
>
> *Screening Medium*: A perforated barrier through which stock is passed to remove oversized, troublesome, and unwanted particles from good fiber. Synonymous with "screening plate," which is distinct from "screen plate." Id. at 357-61.
>
> *Backing Plate*: A structural support for the screening medium that includes a metal plate. Id. at 361-63 & n.8.
>
> *Slots* and *Openings*: Limited to openings and slots less than 0.254mm wide. Id. at 363-65 & nn.9-10.
>
> *Engagement With*: To interlock or mesh with. Id. at 365 & nn.11-12.
>
> *Means for Releasably Connecting*: A structure directly connected to two parts that must be broken or removed to permit the separation of the two parts, whereby welds, rivets, screws, adhesives, solder, and equivalents are the only "means for releasably connecting." Id. at 365-71.
>
> *Shrink Fit*: A tight interference fit between mating inner and outer parts made by heating the outer member to expand it or cooling the inner part to contract it so that the outer part can fit onto the inner part.[6] Synonymous with "heat fit." Not a "means for releasably connecting." Id. at 368-70 & nn.13-15.
>
> *Rivet*: A short rod having a head formed on one end and an opposite end formed into a second head to produce a permanent joining of two or more parts. Id. at 370 & n.16.

---

[6] Due to a typographical error, AFT I states "the outer part can fit *into* the inner part." 751 F. Supp. 2d at 369-70.

4

> *Adhesive*: A substance used to bond two or more solids so that they act or can be used as a single piece. Id. at 370-71.

The Court further construed "perforated," as used in its construction of "screening medium," to mean, "Pierced or punctured with holes." Id. at 363.

On the basis of these constructions, the Court: (1) denied Plaintiff's Motion for summary judgment of infringement as to claims 1, 2, 4, 6, 8, 10-15, 18-20, 23, 27, 29, 32, 34, and 37-39, id. at 373-75 & n.17[7]; (2) denied Defendant's Motion for summary judgment of noninfringement as to claims 1, 2, 4, 10, 15, 18-20, 23, 32, and 34, id. at 373-75; (3) granted Defendant's Motion for summary judgment of noninfringement as to claims 3, 5, 33, and 35, id. at 374; (4) held claim 25 invalid, id. at 379 & 375 n.18; and (5) denied both parties' Motions for summary judgment as to the validity of all other claims, id. at 376-79 & n.20. The Court also granted summary judgment in favor of Defendant as to the (non-)willfulness of any infringement. Id. at 379-81.

Both parties then moved for reconsideration of aspects of the Court's decision. Id. at 382. On reconsideration, the Court determined that, as construed, the term "screening medium" in the '940 Patent's claims did not encompass the "wedgewire" construction employed in Defendant's "V-MAX" product, because wedgewire is not "perforated."[8] Id. at 386. Accordingly, the Court granted summary judgment of noninfringement to Defendant on all remaining claims. Id. at 386-87. Plaintiff appealed. AFT II, 674 F.3d at 1367.

On review, the Court of Appeals held that, although the Court correctly limited "screening medium" to a "perforated" barrier, the Court incorrectly relied on dictionary definitions to further

---

[7] Plaintiff did not move for summary judgment of infringement as to claims 3, 5, 7, 9, 16-17, 21-22, 24, 26, 28, 30-31, 33, or 35-36. See AFT I, 751 F. Supp. 2d at 373 & 374 n.17.

[8] Wedgewire is "a screen made by assembling closely spaced parallel wires, not by puncturing or piercing." AFT II, 674 F.3d at 1371.

5

limit "perforated" to require that the barrier have been pierced or punctured. Id. at 1374. Such a definition was inconsistent with the '940 Patent's claims requiring only that the barrier have "a plurality of openings" or "a plurality of slots" and the '940 Patent's brief disclosure of a possible wedgewire embodiment of those claims.[9] Id. at 1374-75. The Court of Appeals then held that, in the context of the '940 Patent, "perforated" meant simply "having holes or openings," and reversed the Court's grant of summary judgment. Id. at 1376. The Court of Appeals also ratified the Court's other appealed constructions, declined to address the Court's denial of summary judgment on the issue of validity, and affirmed the Court's grant of summary judgment to Defendant on the issue of willfulness. Id. at 1377-78.

Following remand, both parties renewed their Motions for summary judgment. See Pl.'s MSJ Mem.; Dkt. Nos. 161-1 ("Defendant's MSJ Memorandum")[10]; 168 ("Plaintiff's MSJ Reply")[11]; 178-1 at 1-31 ("Defendant's MSJ Reply").[12] Defendant also prepared and served on Plaintiff a supplemental expert report on the invalidity of the '940 Patent. See Dkt. Nos. 170-4 ¶¶ 5-7; 170-8 to -11 ("Supplemental Report"). Plaintiff has moved to strike as untimely and prejudicial: (1) the Supplemental Report; (2) a declaration by the same expert in support of Defendant's Motion for

---

[9] A dissenting judge would have held that Plaintiff had abandoned the wedgewire embodiment during prosecution to avoid prior art. AFT II, 674 F.3d at 1378-81 (Dyk, J., dissenting).

[10] Defendant's MSJ Memorandum includes Defendant's Response to Plaintiff's Motion for summary judgment.

[11] Plaintiff's MSJ Reply includes Plaintiff's Response to Defendant's Motion for summary judgment.

[12] Docket Number 178-1 is a corrected version of Defendant's combined Reply in support of its Motion for summary judgment and Response in opposition to Plaintiff's Motion to strike. See Dkt. Nos. 176; 178.

summary judgment and in opposition to Plaintiff's Motion for summary judgment; and (3) Defendant's allegedly new arguments in support of its Motion for summary judgment and in opposition to Plaintiff's Motion for summary judgment. Dkt. Nos. 161-13 to -18 ("Seifert Declaration"); 170-1 ("MTS Memorandum"); 170-4 ¶¶ 5-7; 178-1 at 31-40 ("MTS Response"); 179 ("MTS Reply"). The Court addresses the Motion to strike and then the Motions for summary judgment.

### III. MOTION TO STRIKE

Federal Rule of Civil Procedure 26(a) governs required disclosures, including expert testimony, in civil cases. See also L. Pat. R. 5.3-5.4 (referencing expert reports under FED. R. CIV. P. 26(a)(2)(B)). "[P]arties must supplement these disclosures when required under Rule 26(e)." FED. R. CIV. P. 26(a)(2)(E). A Rule 26(e) supplement must be made "in a timely manner if the party learns that in some material respect the disclosure . . . is incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Id. 26(e)(1)(A). For experts whose reports must be disclosed under Rule 26(a)(2)(B), "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Id. 26(e)(2). Additions or changes to an expert disclosure must be made "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Id.; see id. 26(a)(3)(B) ("Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."). Even if an expert report is late, however, striking it is "one of the most severe sanctions possible." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160 (2d Cir. 2012).

Here, there is no set deadline for pretrial disclosures. In a scheduling Order issued March

31, 2008, the Honorable David R. Homer, U.S. Magistrate Judge, set a projected trial-ready date of June 1, 2009, with pretrial disclosures due no later than thirty days before that date. Dkt. No. 18 at 4-5. On October 8, 2008, Judge Homer amended the projected trial-ready date to November 1, 2009, in light of a pending Motion to change venue. Dkt. No. 25 at 1; see Dkt. No. 21. Over the next 22 months—running well past Judge Homer's projected deadlines—the parties filed and briefed cross-Motions for summary judgment, various Motions to strike, and a Motion for construction of claim terms. See Dkt. Nos. 33; 45; 47-51; 72; 90; 110. The Court finished deciding these Motions on September 13, 2010, AFT I, 751 F. Supp. 2d 348, and scheduled a conference for October 20, 2010, to set new trial deadlines. See Text Entry of Sept. 15, 2010.

On September 27, 2010, the parties filed their Motions for reconsideration, which the Court decided on January 21, 2010. Dkt. Nos. 115; 117; see AFT I, 751 F. Supp. 2d at 381-87. On August 3, 2012, the Court received the Mandate from the Court of Appeals reversing dismissal of Plaintiff's Complaint and remanding for further proceedings. See Dkt. No. 148. No trial schedule was set before Plaintiff kicked off the current round of motions practice with its renewed Motion for summary judgment on September 4, 2012. Dkt. No. 150. See generally Dkt. Because of that pending dispositive motion, the Honorable David E. Peebles, U.S. Magistrate Judge, declined in a telephone conference with the parties on September 14, 2012, to set deadlines. See Text Entry of Sept. 14, 2012. No further action has been taken regarding deadlines in light of the pending Motions. See generally Dkt.

Accordingly, although Defendant's duty to supplement its expert disclosures ceased when the Court granted summary judgment in its favor, that duty resumed when the Court of Appeals reversed that judgment and remanded to the Court, which did not have trial deadlines in place.

8

Plaintiff's Supplemental Report, which is dated August 31, 2012, and was served on September 4, 2012, was therefore timely, and the Seifert Declaration and arguments relying thereon are properly before the Court.[13] Because Plaintiff's Motion to strike is premised on these submissions and contentions being *un*timely and thus in violation of Rule 26, the Motion is denied. See generally MTS Mem.; MTS Reply.

IV.    **MOTIONS FOR SUMMARY JUDGMENT**

   **A. Legal Standard**

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the

---

[13] Moreover, "[i]t is not unusual for experts to make changes in their opinions and revise their analyses and reports frequently in preparation for, and sometimes even during, a trial." Newell P.R., Ltd. v. Rubbermaid Inc., 20 F.3d 15, 22 (1st Cir. 1994), quoted in Allen v. Dairy Farmers of Am., Inc., No. 09-CV-0230, 2013 WL 211303, at *3 n.1 (D. Vt. Jan. 18, 2013).

nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in ruling on a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Discussion

The Court has considered the parties' renewed Motions for summary judgment only insofar as the Mandate of the Court of Appeals compels a result different from that reached in AFT I. See, e.g., United States v. Carr, 557 F.3d 93, 102 (2d Cir 2009) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." (internal quotation marks omitted)); Shaumyan v. O'Neill, 795 F. Supp. 528, 529 (D. Conn. 1992) (construing renewed cross-motions for summary judgment filed after remand as motions for reconsideration limited in scope to the reason for remand and disregarding other arguments); see also Kovacevich v. Kent State Univ., 224 F.3d 806, 835 (6th Cir. 2000) ("District courts *may in their discretion permit* renewed or successive motions for summary judgment . . . ." (emphasis added)), quoted in Brown v. City of Syracuse, 673 F.3d 141, 147 n.2 (2d Cir. 2012). Thus, while the Court of Appeals observed that "validity may be dealt with on remand," AFT II, 674 F.3d at 1377, the Court will do so at trial rather than on renewed Motions for summary judgment, because
10

the Court's prior analysis did not turn on its erroneous construction of "perforated."[14] See AFT I, 751 F. Supp. 2d at 375-79 (denying summary judgment on (in)validity and obviousness grounds).

The Court also adheres to its previous denial of summary judgment for Plaintiff as to claim 18 of the '940 Patent. Id. at 374-75. That wedgewire is "perforated" and therefore is "one type of screening medium" in claims 1 and 10 of the '940 Patent, AFT II, 674 F.3d at 1375-76, does not necessarily mean that claim 18's description of one method of manufacturing a screening medium[15] encompasses manufacturing a *wedgewire* screening medium.[16] The Court previously held that triable issues of fact existed as to whether the wedgewire in Defendant's V-MAX product infringed claim 18 under the doctrine of equivalents, AFT I, 751 F. Supp. 2d at 375, but Plaintiff has now clarified that it is claiming only literal infringement of claim 18. See Pl.'s MSJ Reply at 27 n.3 ("AFT is not arguing infringement under the doctrine of equivalents with respect to independent claim 18.").

Infringement requires proof that a defendant perform each step of a method claim. See Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc., No. 2012-1463, 2013 WL 3984991, at *4 (Fed. Cir. Aug. 6, 2013). Claim 18 of the '940 Patent describes, in part: (1) forming grooves on

---

[14] Similarly, the Court's holding that claim 25 is invalid, see AFT I, 751 F. Supp. 2d at 379 & 375 n.18, and the Court's grant of summary judgment for Defendant on claims 3, 5, 33, and 35, see id. at 374, remain intact.

[15] Claim 18 uses the term "screening plate," but the Court has held that "screening plate" is synonymous with "screening medium" in the '940 Patent. See supra Part II.

[16] By way of analogy, that Gorgonzola, a cow's-milk cheese, is made with *Penicillium* mold and is therefore a blue cheese does not necessarily mean that a recipe for producing blue cheese describes the production of Gorgonzola; for example, it might instead describe the production of Roquefort, a ewe's-milk blue cheese. Likewise, claim 18 might instead describe only one of several ways to make a screening medium and apply only to the metal and ceramic embodiments identified in the '940 Patent. See '940 Patent col.11 ll.63-64, col.15 ll.34-35, 39-40.

one of two faces of a screening medium; (2) forming openings in the bottom of those grooves and into the screening plate but not all the way through; and (3) forming grooves on the other face of the screening medium to a depth to expose those openings such that they extend entirely through the screening medium. See supra note 4; see also '940 Patent col.8 ll.46-47 (noting that the sequence of steps may be started from either face of the screening medium). No reasonable jury could conclude that manufacturing wedgewire, which is "a screen made by assembling closely spaced parallel wires," see supra note 8, literally performs all three steps of claim 18. As the Court previously observed, at no time in the formation of a wedgewire screening medium are openings created from one face that terminate *within* the screening medium short of the other face such that they can then be "exposed" by the formation of another groove.[17] See AFT I, 751 F. Supp. 2d at 375; see also AFT II, 674 F.3d at 1380 (Dyk, J., dissenting); Dkt. No. 161-11 at 92:15-93:15 (testimony of Plaintiff's expert that production of Defendant's V-MAX does not involve a distinct step where a blind groove is made). Accordingly, the Court grants summary judgment for Defendant as to claim 18 and its dependent claims. See Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1383 (Fed. Cir. 2000) (reciting the "fundamental principle of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.'"

---

[17] Plaintiff's argument that all three steps of claim 18 can be performed simultaneously is rebutted by the '940 Patent's explicit reference to a "sequence" and by logic; if all three steps were performed simultaneously, the openings would never be "exposed" because they would have been formed entirely through the screening medium rather than terminating within it. See Pl.'s MSJ Reply at 24-26. The same logic dooms Plaintiff's alternative argument that the steps occur in rapid sequence each time a wire is placed into the wedgewire assembly; even then, the openings never terminate and then become exposed. See id. at 26-27. Moreover, the faces of a wedgewire assembly exist only to the extent wires have already been placed, because the wires make up the faces. Once the wire is placed, however, the job is done; and so Plaintiff's sequential argument is simply a repackaging of its simultaneity argument.

(quoting Wahpeton Canvas Co. v. Frontier, Inc., 870 F.3d 1546, 1553 (Fed. Cir. 1989))).

Additionally, it is now undisputed that at least some V-MAX units have wedgewire screening media with slots or openings less than 0.254mm wide. Dkt. Nos. 150-2 ("Plaintiff's SMF") ¶¶ 4-6; 161-3 ("Response to Pl.'s SMF") ¶¶ 4-6; see AFT I, 751 F. Supp. 2d at 373 (denying summary judgment on claims 1 and 10 of the '940 Patent because no record evidence showed the width of openings or slots found in the V-MAX). The Court grants summary judgment for Defendant as to any V-MAX units whose wedgewire screening media employ slots or openings at least 0.254mm wide. See AFT II, 674 F.3d at 1376 (affirming AFT I's limitation of "slots" and "openings" in the '940 Patent to those less than 0.254mm wide). The Court declines to grant further summary judgment for either party at present, however, due to the following concerns.

The remainder of the parties' ample briefs showcase the sea of troubles that can arise when dispositive motions are filed on the merits prior to final claim construction in a patent case. In such circumstances, parties cannot know for certain which terms of which claims a court ultimately will construe, or how, and so they must either strike out blindly and hope for the best, or attempt to address an overwhelming number of possible scenarios.[18] Moreover, as here, the parties have no meaningful opportunity after final claim construction to re-anchor their positions in light of the constructions adopted by the Court.[19] As a result, they are reduced to basing their arguments on, among other things, whether the other party is raising new arguments or could have anticipated the

---

[18] If the Court had to choose between a plaintiff's construction and a defendant's construction—which it does not, further complicating matters—a set of only five terms to be construed would generate thirty-two possible claim-construction permutations.

[19] It appears that Defendant asked Judge Peebles to reopen deadlines and set a new schedule for precisely this reason. Dkt. No. 154. Judge Peebles declined to do so because Plaintiff's renewed Motion for summary judgment was already pending. See Text Entry of Sept. 14, 2012.

Court's construction.

The Local Patent Rules address this problem by charting a clear course for patent actions that provides for discovery, briefing, and a final decision on claim construction before deadlines even begin to run for merits discovery and expert reports. See L. Pat. R. app. Although the Local Patent Rules became effective only on January 1, 2012, long after this action got underway, they offer a useful framework for the present situation. Therefore, this Memorandum-Decision and Order shall constitute the Court's decision on claim construction under Local Patent Rule 5.5. The parties have 120 days from the filing of this Memorandum-Decision and Order, or a shorter time if they so stipulate, to supplement their expert reports, update discovery responses, and otherwise conduct discovery necessitated by the Court's construction of terms as modified by the Court of Appeals. L. Pat. R. 5.5. The parties may not offer, and contentions may not be amended to include, new theories that would require construction of a term not already construed. A final round of dispositive motions may be filed within 30 days after this discovery closes. Id. 5.6.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 170) to strike is **DENIED**; and it is further

**ORDERED**, that Plaintiff's renewed Motion (Dkt. No. 150) for summary judgment is **DENIED**; and it is further

**ORDERED**, that Defendant's renewed Motion (Dkt. No. 161) for summary judgment is **GRANTED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that discovery is reopened consistent with this Memorandum-Decision and Order, and this action is therefore referred to the Honorable David E. Peebles, U.S. Magistrate

Judge; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED: September 30, 2013
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge